IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1010-O |
| | § | |
| DALLAS MEXICAN CONSULATE GENERAL, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment (Doc. #13) filed January 7, 2009 (the "Motion") and supporting documents. For the reasons explained below, the Motion is GRANTED.

**I.   Background Facts**

Plaintiff Blake Box ("Plaintiff") filed this action against Defendant Dallas Mexican Consulate General ("Consulate" or "Defendant") on June 16, 2008. Plaintiff alleges that the Defendant hired him in 2006 to provide real estate services, specifically, real estate analysis, space planning and various other services related to identifying and securing a new Consulate building for Defendant within Dallas city limits.

Plaintiff further alleges that Defendant violated agreements relating to these services by failing to compensate Plaintiff for his work, by essentially stealing Plaintiff's work product, and by secretly negotiating with another entity to complete the very transaction that Plaintiff engineered. Plaintiff asserts claims for: (1) breach of contract, (2) fraud/fraudulent inducement, (3) breach of fiduciary duty, (4) unjust enrichment, (5) quantum meruit, (6) promissory estoppel, (7) constructive trust, (8) attorneys' fees, and (9) exemplary damages.

Plaintiff filed this Motion under Federal Rule of Civil Procedure 55 seeking actual damages in the amount of $3,094,225.00 and attorney's fees and costs in the amount of $31,464.83.

Before resolving the Motion, the Court must address three threshold issues: (1) whether the Foreign Sovereign Immunities Act ("FSIA") applies, (2) whether the Court has subject matter jurisdiction over the case under FSIA, and (3) whether the Court has personal jurisdiction over the defendant under FSIA.

## II.   Jurisdiction and the Foreign Sovereign Immunities Act ("FSIA")

### A.   Applicability of FSIA

This case is governed by FSIA, 28 U.S.C. §§ 1602-1611. FSIA applies to suits against a foreign state and generally defines "foreign state" as including "an agency or instrumentality of a foreign state..." 28 U.S.C. § 1603(a).

"An 'agency or instrumentality of a foreign state' means any entity— (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof..., and (3) which is neither a citizen of a State of the United States... nor created under the laws of any third country." 28 U.S.C. § 1603(b).

The Defendant in this case is a separate legal entity, is an organ of Mexico, and is neither a citizen of a State of the United States nor created under the laws of a third country. *See Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1517 (9th Cir. 1987) (holding that the Mexican Consulate meets the test for an "agency or instrumentality" and falls within FSIA's definition of a foreign state). Thus, the Defendant is an "agency or instrumentality of a foreign state" and is a "foreign state" for purposes of FSIA. *Id.* Therefore, FSIA governs the case.

### B.   Subject Matter Jurisdiction under FSIA

*1. General Rule- Immunity*

FSIA is the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities. *See* 28 U.S.C. § 1330(a); *Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1017 (2nd Cir. 1991). Generally, FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States..." 28 U.S.C. § 1604. Unless an exception applies in this case, the Defendant is immune from the jurisdiction of this Court.

### 2. Commercial Activity Exception

The commercial activity exception to FSIA immunity applies in this case. Under FSIA, "[a] foreign state shall not be immune from the jurisdiction of the courts of the United States...in any case– ... in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).

Three questions must be answered to determine whether the commercial activity exception applies. *De Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985). First, identify the activity that forms the basis of the suit. *Id.* Next, determine whether the activity is commercial or governmental in nature. *Id.* Finally, determine whether there is a sufficient nexus between the commercial activity and the United States. *Id.*

#### a. The Activity that Forms the Basis of the Suit

In the present case, the underlying activity involved a contract for services related to the purchase or lease of real estate–specifically, of office space–meeting the Defendant's criteria. At Defendant's direction, the Plaintiff searched for and identified a suitable building for the Defendant. At Defendant's instruction, Plaintiff consulted architects, contractors, and city officials about the proposed site. Plaintiff also commissioned space and construction plans and reviewed them with representatives for the Defendant.

As the parties' business relationship evolved, they decided to enter into a joint venture for

the purchase of a particular office complex, and Plaintiff negotiated with the seller on behalf of the joint venture. Defendant represented to Plaintiff that they were waiting for funds from Mexico to complete the transaction, but in fact, without Plaintiff's knowledge or consent, Defendant began negotiations with a third-party investor to complete the real estate transaction. Using Plaintiff's plans and work product, Defendant and the third-party investor successfully completed the very transaction that Plaintiff had engineered. Plaintiff learned of this only after the transaction was complete.

### b. Commercial or Governmental Nature of the Activity

Commercial activity under FSIA is defined as "either a regular course of commercial conduct or a particular transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d); *MCI Telecomm. Corp. v. Alhadhood*, 82 F.3d 658, 662–63 (5th Cir. 1996). Therefore, we look to the nature of the parties' transactions— here, a real-estate-services-turned-joint-venture agreement— rather than the purpose of the parties' transaction— to secure a Mexican Consulate building.

An activity is commercial in nature for purposes of the exception to FSIA immunity if it "is of a type that a private person would customarily engage in for profit." *MCI Telecomm. Corp.*, 82 F.3d at 663; *see also Walter Fuller Aircraft Sales, Inc. v. Republic of the Phil.*, 965 F.2d 1375, 1384 (5th Cir. 1992) ("courts typically hold that contracts for the procurement of...services are commercial rather than governmental in nature"); *Segni v. Commercial Office of Spain*, 835 F.2d 160, 164–65 (7th Cir. 1987) (employment contract under which employee would market country's wines is commercial); *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 581 (7th Cir. 1989) (contract for purchase of medical services is commercial); *Practical Concepts,*

*Inc. v. Republic of Bol.*, 811 F.2d 1543, 1550 (D.C. Cir. 1987) (contract for developing rural areas is commercial).

In this case, Defendant's actions were commercial in nature for the purposes of the FSIA commercial activity exception. The Plaintiff, a commercial real estate professional, and the Defendant,[1] an entity seeking new office space, reached an agreement whereby Plaintiff, in exchange for financial gain, would assist Defendant in locating and securing suitable real estate. An arrangement of this nature is customarily engaged in by private persons for profit. Moreover, the arrangement is not the type that is peculiarly governmental in nature. *See*, *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, ___F.3d___, 2009 WL 2634575 (5th Cir. 2009) (commercial activities exception does not apply to a contract for personnel to train and provide support to military forces, since the nature of such activity is peculiarly governmental. However, the exception does apply to a contract for repair services for military aircraft components, as the nature of such transaction is commercial rather than uniquely governmental); *see also,Tucker v. Whitaker Travel, Ltd.*, 620 F.Supp. 578, 584 (E.D. Pa. 1985)(foreign government's "decisions whether and how to regulate an industry, [or] police the activities of its citizens... are peculiarly governmental and may not be subjected to scrutiny in the United States courts").

### c. Sufficient Nexus with the United States

Finally, the commercial activity must have a jurisdictional nexus with the United States as outlined by 28 U.S.C. § 1605(a)(2). This prong is met when the suit is based upon: (1) a commercial activity carried on in the United States; (2) an act performed in the United States in connection with a commercial activity elsewhere; or (3) a direct effect in the United States of commercial activity

---

[1] Defendant acted through Assistant Consul Hugo Juarez-Carillo and Ambassador Enrique Hubbard-Arrea during the transactions that form the basis of this lawsuit.

elsewhere. 28 U.S.C. § 1605(a)(2); *De Sanchez*, 770 F.2d at 1391.

In this case, the commercial activities were carried on in Dallas, Texas. Therefore, the commercial activities were carried on in the United States, and the third and final prong to the commercial activity exception to immunity under FSIA is met.

Because the commercial activities exception to sovereign immunity under FSIA applies in this case, Defendants are not immune to this Court's subject matter jurisdiction. However, the Court must also have personal jurisdiction over this defendant.

### C. Personal Jurisdiction under FSIA

Under FSIA, a court has personal jurisdiction over a defendant when the court has subject matter jurisdiction over the case and the defendant was validly served with process in accordance with 28 U.S.C. § 1608. 28 U.S.C. § 1330(b); *Shapiro*, 930 F.2d at 1020. The Court has subject matter jurisdiction in this case as explained *supra*. Therefore, the Court must now determine whether the Defendant was validly served with process.

FSIA provides several avenues for serving a defendant. *See* 28 U.S.C. § 1608(a) & (b). The record of this case shows that Plaintiff has complied with at least one method for providing Defendant with valid service under § 1608(b).[2]

Section 1608(b)(2) provides that service may be made, "by delivery of a copy of the summons and complaint...in accordance with an applicable international convention on service of

---

[2] Plaintiff asserts that service was made in accordance with 28 U.S.C. § 1608(a). *See, e.g., Plaintiff's Request to Clerk of Court for Entry of Default*, p. 2–3 (Doc. # 7) filed September 19, 2008. However, subsection (a) applies to service upon a "foreign state" defendant as the term is used in § 1608. Unlike the rest of FSIA, § 1608 differentiates between a "foreign state" defendant and a defendant that is an "agency or instrumentality of a foreign state." The former is to be served under 28 U.S.C. § 1608(a), and the latter is to be served under 28 U.S.C. § 1608(b). As explained in part II.A. of this opinion, the Mexican Consulate is an agency or instrumentality of a foreign state. Therefore, the propriety of service in this case is analyzed under 1608(b), which applies specifically to agencies and instrumentalities of a foreign state.

judicial documents." The applicable international convention here is the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Convention"). *See* Fed. R. Civ. P. 4(j)(1); 28 U.S.C. § 1608(b); The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, November 15, 1966, 20 UST 361, 658 U.N.T.S. 163. Both Mexico and the United States are parties to the Convention.[3] *Id.*

Pursuant to the Convention, Mexico provides that documents being served on it be delivered to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos, Ave. Juarez #20 (Plaza Juarez), Colonial Centro, 06010 Mexico D.F. *See* The Hague Conference on Private International Law Handbook on the Operation of the Hague Service Convention, http://www.hcch.net/index_en.php?act=authorities.details&aid=267 (last visited September 25, 2009) (image of website on file with the Court). Mexico's own website for the Secretaria de Relaciones Exteriores lists this same address at the bottom of its webpage. Mexico Ministry of Foreign Affairs, Secretaria de Relaciones Exteriores, http://www.sre.gob.mx/english/ (last visited September 25, 2009) (image of website on file with the Court).

Defendant was served on July 11, 2008 by delivery[4] of both an English and Spanish translation of the summons and complaint to the address listed above. *Plaintiff's Request to Clerk of Court for Entry of Default*, p.2 (Doc. #7) filed September 19, 2008; *Affidavit of Rick Hamilton*,

---

[3] The United States is an original signatory to the Convention. Mexico acceded to the Convention effective June 1, 2000.

[4] A complete list of the documents delivered, which were submitted in duplicate with Spanish translations, follows: Summons in a Civil Action, Civil Case Cover Sheet, Plaintiff's Original Complaint, Certificate of Interested Persons, Civil Filing Notice, Duty to Serve Notice of Right to Consent, Consent to Proceed Before a U.S. Magistrate Judge, Electronic Transmission of Notice, Privacy Notice, Request for Service Abroad of Judicial of Extrajudicial Documents, Summary of the Document to be Served, Certificate of Service. *Affidavit of Rick Hamilton*, pp. 1–2. (Exhibit B to Doc. #7), filed September 19, 2008.

pp. 1–2. (Exhibit B to Doc. #7), filed September 19, 2008; 28 U.S.C. § 1608(b)(2) & (c)(2).

Therefore, Plaintiff properly served Defendant with valid service of process pursuant to FSIA, 28 U.S.C. § 1608(b)(2) and this Court has personal jurisdiction over the Defendant.

Having determined that FSIA governs this case, and that this Court has both subject matter jurisdiction and personal jurisdiction, we now turn to the substance of the default judgment motion.

### III.   Default Judgment

#### A.   Legal Standard for Entry of Default

Under FSIA, the Defendant has sixty days after being served to file an answer or other responsive pleading to the complaint. 28 U.S.C. § 1608(d). An entry of a default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). In order to obtain an entry of default, a plaintiff may apply to the Clerk of the Court or to the Court. *See* FED. R. CIV. P. 55(b).

In the instant case, Defendant was properly served on June 11, 2008. *See supra.* After Defendant failed to respond or otherwise appear within sixty days, Plaintiff applied to the Clerk of the Court for entry of default on September 19, 2008. *See Plaintiff's Request to Clerk of Court for Entry of Default* (Doc. #7) filed September 19, 2008. The Clerk of the Court correctly issued the Clerk's Entry of Default no earlier than September 20, 2008.[5] *Clerk's Entry of Default* (Doc. #10) filed October 20, 2008; FED. R. CIV. P. 55(a); 28 U.S.C. § 1608(d).

---

[5]The Default is actually dated September 20, 2008, but was not entered on the docket until October 21, 2008. From a review of the docket, and given the fact that September 20, 2008 was a Saturday when the Clerk of the Court typically does not make entries, it appears that the Default was actually signed on October 20 rather than September 20. However, either date falls outside of the Defendant's 60 day window to enter an appearance, and the entry of default was proper regardless of whether the Clerk signed it on September 20 or October 20.

### B. Entry of a Default Judgment under the FSIA

Because the Defendant is in default, the Court will next examine whether entry of a default judgment should follow. Before granting a default judgment in this case, this Court will look both to generally applicable default judgment law and to FSIA's statutory requirement for the entering of a default judgment under FSIA. We explore each in turn.

*1. Default Judgments Generally in the Fifth Circuit*

Under the Federal Rules of Civil Procedure, a court may enter a judgment by default against a party who has failed to respond or appear. FED. R. CIV. P. 55(b)(2). A default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). However, the Fifth Circuit has held that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Based on that legal premise, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

A district court in the Fifth Circuit looks to the following six factors when considering whether to grant a default judgment: (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a default; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if the court would think it was obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998) (holding that a district court did not commit an abuse of discretion when denying a motion for default judgment when the factors on balance weighed against granting the motion).

As of the date of this Order, Defendant has offered no suggestion that its failure to appear

is the product of "a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. In fact, the Defendant has seemingly ignored the complaint.[6] The Defendant has failed to appear and defend the suit as required by law. Defendant has offered no suggestion that entry of a default judgment is unduly prejudicial or unwarranted or too harsh. Through its failure, the Defendant has, by default, admitted the Plaintiff's well-pleaded allegations of fact. *See, e.g. Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In light of these admissions, there are no remaining material issues of fact in this case. Further, a review of the record shows that the grounds for the default judgment are clearly established. In light of the facts and procedural history of this case, the Court would not feel obligated to set aside a default judgment on Defendant's motion.

Thus, the Court is of the opinion that the general procedural prerequisites to entering default judgment are satisfied. We now turn to an additional prerequisite to entry of a default judgment under FSIA.

### 2. Default Judgment under FSIA

A default judgment may be entered against a foreign state if, after having been served in accordance with FISA, the state fails to make a timely answer or other responsive pleading to the complaint. *Jackson v. Peoples Republic of China*, 550 F. Supp. 869, 874 (N.D. Ala. 1982); 28 U.S.C. § 1608(e). However, FSIA imposes an additional requirement before a default judgment

---

[6] In addition to proper service of the complaint, the record shows that Plaintiff attempted to resolve the subject of this litigation with Defendant and Defendant's Counsel both before suit was filed and again before default judgment was sought. *See Letters dated March 11, 2008 to March 26, 2008 between attorney Edward Jason Dennis, Ambassador Enrique Hubbard Arrea, and attorney Pablo Alvarado* (Exhibits C – G to Doc. #7) filed September 19, 2008; *Letter from Attorney Edward Jason Dennis to Attorney Pablo Alvarado dated August 18, 2008* (Exhibits H-1 – H-5 to Doc. # 7) filed September 19, 2008. Additionally, the evidence before the Court suggests that Defendant had actual knowledge of the pending suit no later than June 22, 2008, as evidenced by statements of Eduardo Rea, a spokesman for Defendant, in the Dallas Morning News. *See* Alejandro Martinez, *Firm Sues Mexican Consulate, Claim Says Government Reneged on Real Estate Deal, Used Third Party*, Dallas Morning News, June 22, 2008, at 5B.

may be entered. Specifically, FSIA mandates that, "[n]o judgment by default shall be entered by a court of the United States...against...an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Accordingly, a simple failure to reply cannot be the sole basis of a default judgment against a foreign state or its instrument. *Singleton v. Guangzhou Ocean Shipping Co.*, No. 90-5063, 1992 WL 160441, at *1 (E.D. La. Jan. 21, 1992).

Plaintiff's Original Complaint asserts a number of claims.[7]  *Plaintiff's Original Complaint* (Doc. #1) filed June 16, 2008. After reviewing the Plaintiff's well-pleaded complaint and the evidence before the Court, the Court finds that the Plaintiff has established, based in part on the various promises, representations, and agreements made between the parties over the course of their lengthy relationship, claims for breach of contract, fraud/fraudulent inducement, breach of fiduciary duty, quantum meriut, promissory estoppel, and attorneys' fees by evidence satisfactory to this Court. Additionally, the Court specifically finds that default judgment is proper under Article 15 of the Convention. Therefore, entry of default judgment is appropriate.

### C.     Damages

Having determined that entry of a default judgment is proper in this case, the Court must determine the proper measure of damages.

The Federal Rules of Civil Procedure provide that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). In other words, the relief prayed for in a complaint cabins the relief available on default judgment. FSIA provides that if a defendant does not enjoy immunity under FSIA, as the defendant in this case does

---

[7]As stated above, Plaintiff asserts claims for: (1) breach of contract, (2) fraud/fraudulent inducement, (3) breach of fiduciary duty, (4) unjust enrichment, (5) quantum meruit, (6) promissory estoppel, (7) constructive trust, (8) attorneys' fees, and (9) exemplary damages.

not, then the defendant is liable in the same manner and amount as a private individual. 28 U.S.C. § 1606.

In its Motion, the Plaintiff requests the Court enter judgment for actual damages in the amount of $3,094,225 and reasonable and necessary attorneys' fees in the amount of $31,464.83,[8] and costs of court. Motion at 7; *Affidavit of Edward Dennis*, (Doc. #12) filed January 6, 2009 at pp. 2–3.

Plaintiff breaks down his claim for actual damages as a request for $87,500 in value of services rendered by Plaintiff to Defendant, $6,725 in costs expended by Plaintiff on behalf of Defendant, and $3,000,000 in lost profits on the joint venture agreement. Motion at 7; *Affidavit of Blake Box*, (Doc. #11) filed January 6, 2009, at 5–6.

Plaintiff has submitted records and an affidavit in support of its suit. *See I.d.*; *Affidavit of Edward Dennis* (Doc. #12) filed January 6, 2009. Further, the Court held a hearing on the Motion on September 30, 2009 where the Plaintiff presented further evidence to support the requested damages. *See*, *Testimony of Edward Dennis* at September 30, 2009 hearing; *Testimony of Blake Box* at September 30, 2009 hearing; Exhibits 1– 8 filed in open court at September 30, 2009 hearing.

After considering the record, including the Plaintiff's well-pleaded complaint, the affidavits submitted, and the evidence put forth at the hearing, the Court finds that the requested relief is reasonable, appropriate, and supported by the evidence.

Specifically, the Court finds that Plaintiff's request for $87,500 in value of services rendered and $6,725 in costs expended on behalf of Defendant are reasonable and supported by the evidence. *See Affidavit of Blake Box* (Doc. #11) filed January 6, 2009. Also, Plaintiff's request for $3,000,000

---

[8]This amount includes attorney fees by Edward Jason Dennis and William Kendall, as well as reimbursement of costs. *See Testimony of Edward Dennis* at September 30, 2009 hearing.

in compensation for his joint venture interest is reasonable and supported by the evidence. *See Testimony of Blake Box* at September 30, 2009 hearing; Exhibits 2-8 from September 30, 2009 Hearing*; Affidavit of Blake Box* (Doc. #11) filed January 6, 2009.

Additionally, while the award of attorney's fees is a matter of the court's discretion, the Court finds that Plaintiff should be awarded attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. § 38.001 (permitting the recovery of reasonable attorneys' fees, in addition to the amount of a valid claim and costs, if the claim is for, among other things, rendered services, performed labor, furnished material, or an oral contract). Plaintiff's attorney submitted an affidavit attesting the reasonableness of the request and provided an itemized accounting of the work done on behalf of Plaintiff and the rate charged. *Affidavit of Edward Dennis* (Doc. #12) filed January 6, 2009; *Billing Statements*, Exhibit 1 presented at September 30, 2009 hearing; *Testimony of Attorney Edward Jason Dennis* at September 30, 2009 hearing. In addition to the itemized billing records of Mr. Dennis, Mr. Dennis testified to the reasonableness of the rate charged by attorney William Kendall and of the 54 hours of work that Mr. Kendall has spent on the case. The Court is of the opinion that Plaintiff's requests are reasonable, supported by the evidence, and should be, and are hereby, granted.

### III.   Conclusion

Based on the foregoing analysis of facts and legal principles, the Court concludes that the Plaintiff's Motion for Default Judgment against Dallas Mexican Consulate General should be **GRANTED.** Accordingly, the Court will enter a default judgment consistent with its findings herein.

**SO ORDERED** on this **30th** day of **September, 2009**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**