IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLAKE BOX d/b/a BLAKE BOX, COMPANY, | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1010-O |
| | § | |
| DALLAS MEXICAN CONSULATE GENERAL, | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Dallas Mexican Consulate General's Motion to Set Aside Default Judgment with Brief and Appendix in Support (ECF No. 22) filed March 23, 2010; Plaintiff Blake Box's Response (ECF No. 25) filed April 22, 2010 and Appendix in Support ("Pl. App.") (ECF No. 26); Defendant's Reply (ECF No. 27) filed May 5, 2010; Defendant's Supplemental Document (ECF No. 33) filed August 20, 2010; Plaintiff Box's Supplemental Brief in Opposition to Defendant's Motion to Set Aside (ECF No. 34) filed August 20, 2010; and Defendant's Response to Plaintiff Box's Brief in Opposition (ECF No. 35) filed August 24, 2010.

Having considered the filings, oral argument, and applicable law, the Court finds the motion to set aside the default judgment should be and is hereby **GRANTED** because the Court lacks subject matter jurisdiction.

I.     Factual and Procedural Background

This action arises from an agreement between Plaintiff Blake Box ("Plaintiff" or "Box") and the Dallas Mexican Consulate General ("Defendant" or "Consulate") regarding the purchase of a new consulate building within Dallas city limits. Plaintiff, a licensed real estate broker, asserts that former Ambassador Enriqué Hubbard Urrea ("Ambassador Hubbard") and Hugo Juarez-Carillo

("Juarez"), acting on behalf of the Consulate, hired him in 2006 to provide real estate services, real estate analysis, space planning and other various services related to identifying and securing a new Consulate building.  Initially, the Consulate retained Plaintiff to aid in searching for a lease arrangement.  Plaintiff claims that sometime thereafter, the terms of the agreement changed from services related to leasing a building to services for purchasing a building for the Consulate. Plaintiff further asserts that when the owner of a three-building complex located in Dallas refused to subdivide the property, Ambassador Hubbard and Juarez agreed to enter a joint venture arrangement on behalf of the Consulate under which Plaintiff and his investors would buy the property, subdivide it, and sell back one of the buildings to the Consulate.  Sometime in December 2007, Plaintiff learned that the Consulate purchased the building from a third-party individual.

Plaintiff sued the Consulate on June 16, 2008 asserting claims for breach of contract, fraud/fraudulent inducement, breach of fiduciary duty, unjust enrichment, quantum meruit, promissory estoppel, constructive trust, attorneys' fees, and exemplary damages.  Compl. ¶¶ 22-42, ECF No. 1.  Plaintiff alleges that the Consulate violated agreements relating to his services by failing to compensate him for his work, by essentially stealing his work product, and by secretly negotiating with another entity to complete the very transaction Box engineered.

Defendant was served on July 11, 2008 by delivery of both an English and Spanish translation of the Summons and Plaintiff's Original Complaint to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos, Ave. Juarez #20 (Plaza Juarez), Colonial Centro, 06010 Mexico D.F.  *See* Pl. Req. to Clerk for Entry of Default, ECF No. 7; Aff. of Rick Hamilton, ECF No. 7-3.

When the Consulate failed to answer or otherwise appear, Plaintiff filed a request for the

clerk's entry of default on September 19, 2008.  *Id.*  The clerk made an entry of default on October 20, 2008.  Clerk's Entry of Default, ECF No. 10.  Plaintiff then moved the Court for entry of a default judgment.  Pl.'s Mot. for Default J., ECF No. 13.  The Court held a hearing on Plaintiff's motion on September 30, 2009.  That same day, the Court entered a default judgment against the Consulate for $3,125,689.83 plus interest accruing at the rate of 0.40% per annum.  Mem. Op. & Order, ECF No. 16; Final J., ECF No. 17.

The Consulate filed the instant motion to set aside the default judgment on March 23, 2010. Def. Mot. to Set Aside Default J., ECF No. 22.  The Court held a hearing on August 13, 2010 and allowed the parties to submit additional briefing thereafter.

## II.   Discussion

The Consulate moves to set aside the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b).[1]  The Consulate moves for relief from the judgment on two grounds: first, that it is void under Rule 60(b)(4), and second, that it was the result of mistake, inadvertence, surprise or excusable neglect under Rule 60(b)(1).

### A.  Relief Under Rule 60(b)(4)

The Consulate asserts that the judgment is void under Rule 60(b)(4) based on two grounds: first, that this Court lacked subject matter jurisdiction when the judgment was entered and, second, that the Court lacked personal jurisdiction because of ineffective service of process.

A motion for relief under Rule 60(b)(4) allows a party to receive relief from a final judgment, order, or proceeding if the underlying judgment is void.  Rule 60(b)(4) states, "[o]n a motion and

---

[1]  Rule 55(c) states that a district court may set aside a default judgment "in accordance with rule 60(b)."  Fed. R. Civ. P. 55(c).

upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (4) the judgment is void."  Fed. R. Civ. P. 60(b)(4).  The Fifth Circuit has recognized two circumstances in which a judgment may be set aside under Rule 60(b)(4): (1) if the court lacked subject matter or personal jurisdiction; and (2) if the court acted in a manner inconsistent with due process of law.  *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998), cert. denied, 525 U.S. 1041, S. Ct. 591, 142 L. Ed. 2d 534 (1998).  The Fifth Circuit explains that Rule 60(b)(4) "embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.'"  *Jackson v. FIE Corp.,* 302 F.3d 515, 522 (5th Cir. 2002) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)).  "When . . . the motion is based on a void judgment under Rule 60(b)(4), the district court has no discretion - the judgment is either void or it is not."  *Recreational Props., Inc. v. Sw. Mortgage Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) (citations omitted); *see also Magness v. Russ. Fed'n*, 247 F.3d 609, 619 n. 19 (5th Cir. 2001).  If the judgment is void, "the district court *must* set it aside."  *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind* , 841 F.2d 646, 649 (5th Cir. 1988) (citations omitted).

Plaintiff raises two procedural arguments for why the Consulate's motion should fail.  First, Plaintiff argues that the Consulate's motion is untimely.  Second, Plaintiff argues that the Consulate improperly seeks to raise a factual issue related to jurisdiction, namely the authority of its agents.

Motions brought pursuant to Rule 60(b)(4) have no set time limit.  *Carter,* 136 F.3d at 1006.  "There is no time limit on an attack on a judgment as void.  The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made

within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142-43 (5th Cir. 1996) (quoting *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993)).  Therefore, the Court finds that the Consulate's Rule 60(b)(4) motion is timely.

Next, Plaintiff argues that the Consulate, by its default, admitted the plaintiff's "well-pleaded allegations of fact . . . ."  Pl. Resp. 6, ECF No. 25.  As support for this argument, Plaintiff cites to *Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.*, 401 F.3d 603, 606-607 (5th Cir. 2005).  In *Dial One*, the court denied a Rule 60(b) motion holding that "'[t]hese motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.  Moreover, they cannot be used to argue a case under a new legal theory.'"  401 F.3d at 606-07 (citations omitted).  In *Dial One,* the court denied the motion following a bench trial, not a default judgment.  *See id.*  In addition, a jurisdictional challenge did not form the basis of the motion in *Dial One.*  Therefore, the Court does not find *Dial One* persuasive as to Plaintiff's argument that the Consulate waived its jurisdictional challenge.  Even if a new theory has been raised, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 96 S. Ct. 1202, 47 L. Ed. 2d 435 (1976); *see also Hester Int'l Corp. v. Fed. Rep. of Nigeria*, 879 F.2d 170, 175 (5th Cir. 1989) (analyzing jurisdiction related to a foreign sovereign in the context of a Rule 60(b) motion).

In a related vein, Plaintiff asserts that the factual issue of the extent of authority is not properly before the Court in light of the default judgment.  However, in *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission,* the Second Circuit considered the issue of authority brought up under a Rule 60(b) motion after entry of a default judgment against a foreign

entity.  877 F.2d 189, 194-95 (2d Cir. 1989).  In setting aside the default judgment, the Second Circuit recognized that "a decision concerning subject matter jurisdiction under the FSIA may require the resolution of substantive issues." *Id.* at 195.  Thus, the Court finds that a district court may consider the issue of authority after entry of a default judgment when subject matter jurisdiction is later challenged by the foreign state.

Even though a default judgment was entered, the Court is not required to assume the truth of all facts alleged in the complaint in making its subject matter jurisdiction analysis upon a Rule 60(b)(4) motion. *See Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enter.,* 57 F. Supp. 2d 863, 868-869 (N.D. Cal. 1998).  In setting aside a default judgment, the district court in *Morgan Equip Co.* held that "in the context of an FSIA case: 'a district court may properly look beyond the complaint's jurisdictional allegations and view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists.'"  57 F. Supp. 2d at 868 (quoting *Adler v. Fed. Rep. of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997) (citing *Bowyer v. U.S. Dept. of Air Force,* 875 F.2d 632 (7th Cir. 1989), cert. denied, 493 U.S. 1046, 107 L. Ed. 2d 840, 110 S. Ct. 846 (1990)).  Therefore, the Court finds that if admissible evidence establishes a lack of subject matter jurisdiction, the Court must set aside the default judgment.

### B.    The Foreign Sovereign Immunities Act "FSIA"

This case is governed by the FSIA, 28 U.S.C. §§ 1602-1611.  Title 28 U.S.C. § 1330(a) grants to the federal courts original jurisdiction over suits against a foreign state where the foreign state is not entitled to immunity under §§ 1605-1607 of the FSIA.  Section 1330(b) provides that personal jurisdiction exists as to such claims where service has been made under § 1608.  28 U.S.C. § 1330(b).  Thus, the Court's first inquiry, whether subject matter jurisdiction exists, entails application of the substantive provisions of the FSIA to determine whether an exception to sovereign

immunity applies.  *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983). Subject matter jurisdiction, or competence, cannot be waived; even if the foreign state has not appeared the district court must determine whether immunity is unavailable under the FSIA.  *Id.* at 494, n.20.

        1.     Legal Standard

The FSIA provides the sole source of subject matter jurisdiction in suits against a foreign state.  *Dale v. Colagiovanni,* 443 F.3d 425, 427-28 (5th Cir. 2006); *see also Argentine Rep. v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434-39, 109 S. Ct. 683, 102 L. Ed. 2d 818 (1989). "The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts." *Byrd v. Corporacion Forestal y Industrial De Olancho S.A.,* 182 F.3d 380, 388 (5th  Cir. 1999) (quoting *Moran v. The Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994) (citing 28 U.S.C. § 1604)).  "However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply." *Id.*  Therefore, the Consulate is subject to jurisdiction if one of the FSIA's exceptions apply.

The party seeking immunity bears the initial burden of establishing a prima facie showing that it qualifies as a foreign state under the FSIA.  *Morgan,* 57 F. Supp. at 869 (citing *Phaneuf v. Rep. of Indon.*, 106 F.3d 302, 305 (9th Cir. 1997); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1463 (9th Cir. 1995), cert. denied, 516 U.S. 869 (1995) (citations omitted)).  Once the prima facie case is established, the burden shifts to the plaintiff to offer evidence that an exception to the FSIA applies.  *Phaneuf*, 106 F.3d at 307.  If the plaintiff meets this standard, the burden shifts back to the party seeking immunity to demonstrate by a preponderance of the evidence that the exception does not apply.  *Id.*

        2.  Foreign State/Agency or Instrumentality of a Foreign State

The FSIA defines some entities as "foreign states", and others as "agencies or instrumentalities of foreign states". 28 U.S.C. § 1603. Section 1603(a) provides: "A 'foreign state', except as used in Section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)."  28 U.S.C. § 1603(a). Section (b) defines an "agency or instrumentality" of a foreign state as:

> any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the law of any third country.

28 U.S.C. § 1603(b).

The FSIA draws a distinction between a foreign state and an agency or instrumentality of a foreign state with regard to service of process.  *See* 28 U.S.C. § 1608(a) & (b); *Magness,* 247 F.3d at 615-16.  Proper service upon a foreign state, detailed in § 1608(a), is only satisfied by strict compliance, whereas service upon an agency or instrumentality of a foreign state, detailed in section § 1608(b), can be accomplished through substantial compliance.  *Id.*

The parties dispute whether the Consulate is a foreign state or an agency or instrumentality of a foreign state.  Plaintiff argues that the Consulate is an agency or instrumentality of a foreign state, relying on the Court's previous order granting Plaintiff's motion for default judgment.  *See* Memo. Op. & Order 2, ECF No. 16.  The Consulate disagrees and argues that it is properly characterized as a foreign state under the FSIA.

In *Gray v. Permanent Mission of People's Republic of Congo,* the district court, after reviewing the legislative history of the FSIA, concluded that a consulate is a "foreign state".  *See* 443 F. Supp. 816, 820 (S.D.N.Y.), *aff'd,* 580 F.2d 1044 (2d Cir. 1978).  "[T]he House Report states that "such buildings [including diplomatic and consular missions] are those of the foreign state

-8-

itself." *Id.* (citing to H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. 15, reprinted in [1976] U.S. Code

Cong. & Admin. News 6604, 6614 ("House Report").  Further, "[t]he legislative history of the FSIA

states:

> As a general matter, entities which meet the definition of an 'agency or instrumentality' of a foreign state could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name."

*Gerritsen v. Escobar y Cordova*, 721 F. Supp. 253, 257-58 (C.D. Cal. 1988) (citing 1976 United

States Administrative News & Code at 6614) (quotations omitted).  In *Gerritsen*, the district court

held that the Mexican Consulate in Los Angeles must be served in strict compliance under Section

1608(a) of the FSIA, the provision governing service upon a "foreign state".  *Id.*

Finally, in *Marlowe v. Argentine Naval Com.* the court held that the Argentine Naval

Commission ("ANC"), headquartered in Washington, D.C., qualified as a "foreign state" under the

FSIA based on the ANC's role in its government.  604 F. Supp. 703, 706-07 (D.D.C. 1985).  Citing

to *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 398 (E.D. Va. 1984), the court recognized

that the ANC maintained an office in the District of Columbia staffed exclusively by active duty

Argentine Naval officers who were treated as diplomatic agents and reported directly to the

Argentine ambassador.  *Id.*  In addition, all contracts were negotiated at the express decision and

directive of the Argentine Navy itself, and ANC's offices were located in a building owned by

Argentina which flew the Argentine flag.  *Id.*  The court concluded that ANC was "part and parcel

of the Argentine Navy thereby qualifying as a foreign state or a political subdivision of the

Argentine government."  *Id.* at 707 (citations omitted).

In this case, Plaintiff provides no basis for differentiating the Consulate's existence as

separate from the United Mexican States.  The Consulate is more like the Congo Mission in *Gray* and the ANC in *Marlowe,* rather than the commercially-related entities listed as examples of agencies or instrumentalities in the FSIA's legislative history.  *See Gerritsen*, 721 F. Supp. at 257-58 (citing to legislative provision listing examples of agencies or instrumentalities).  Therefore, the Court vacates its previous holding that the Consulate is an "agency or instrumentality of a foreign state" and finds that the Consulate is a "foreign state" under the FSIA.

### 3.  Commercial Activity Exception

As a foreign state, the Consulate is immune from suit unless one of the FSIA's exceptions apply.  Section 1605(a) lists the exceptions to the general rule of immunity under the FSIA.  28 U.S.C. § 1605 (a)(1)-(6).  Plaintiff asserts that subject matter jurisdiction exists in this case based on the commercial activity exception.  *See* 28 U.S.C. § 1605(a)(2).  The commercial activity exception provides that a foreign state shall not be immune in any action:

> . . . based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

In the Fifth Circuit, a district court must address three questions in order to determine whether the commercial activity exception applies.  *De Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985).  First, the Court must identify the activity that forms the basis of the suit.  *Id.*  Next, the Court must determine whether the activity is commercial or governmental in nature.  *Id.*  Finally, the Court must determine whether there is a sufficient nexus between the commercial activity and the United States.  *Id.*

-10-

The Court previously found that all three prongs in *De Sanchez* were met when granting Plaintiff's motion for default judgment. Mem. Op. & Order 3-6, ECF No. 16. The Court therefore concluded that subject matter jurisdiction existed based on the commercial activity exception. *Id.* The Consulate does not move to set aside the Court's default judgment on any of these findings.

Rather, the Consulate moves to set aside the default judgment based on the issue of authority. The Fifth Circuit holds that a "plaintiff must demonstrate that the agent acted with the actual authority of the state to trigger the commercial activity exception." *Dale,* 443 F.3d at 428-29. Apparent authority is insufficient. *Id.* at 429. In *Dale*, the Fifth Circuit held that a plaintiff could not hold the Vatican liable for an insurance scheme by one of its agents based on the Vatican representative's apparent authority. *Id.* at 428-29. The Fourth and Ninth Circuit have also concluded that conduct by an agent acting with apparent authority is insufficient to trigger the commercial activity exception and give a basis for jurisdiction. *Id.; see Velasco v. Gov't of Indonesia*, 370 F.3d 392, 399-400 (4th Cir. 2004); *Phaneuf,* 106 F.3d at 307-308.

The Consulate argues that Ambassador Hubbard and Juarez had no actual authority to bind the Consulate or the government of Mexico to any agreements with Plaintiff. Plaintiff asserts that actual authority is not required when suing an agency or instrumentality of a foreign state. Plaintiff also asserts that even if the Consulate is not considered an agency or instrumentality, Ambassador Hubbard and Juarez had actual authority to enter into the agreements with him based on the subsequent purchase of the building from another seller.

Plaintiff urges the Court to interpret *Dale* as only requiring actual authority when a plaintiff sues a foreign state as opposed to an agency or instrumentality of a foreign state. Having determined that the Consulate is a "foreign state" under the FSIA, the Court finds that this argument is no longer applicable. *See supra* at 8. Even if the Consulate were an agency or instrumentality, *Dale* does not

-11-

distinguish cases involving suit against an agency or instrumentality versus a foreign state on agency grounds. *See Dale*, 443 F.3d at 429. Rather, *Dale* distinguishes cases addressing the presumption of separate, juridical status of governmental instrumentalities, which do not address agency in the commercial activity exception context. *Id.* at 429 (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983); *Hester,* 879 F.2d at 176-81. Therefore, the Court finds that actual authority is required in order for the commercial activity exception to apply.

Having found that actual authority is required, the Court must determine whether the agents had actual authority to enter into any agreements with Plaintiff. In *First Fidelity Bank,* Antigua sought relief from a default judgment under Rule 60(b)(4), arguing that the court lacked subject matter jurisdiction because its ambassador lacked authority to waive its sovereign immunity. 877 F.2d at 194-95. The Second Circuit set aside the default judgment on the basis of Rule 60(b)(6), concluding that Antigua should have an opportunity to defend on the merits. *Id.* at 196. Not having sufficient information about the facts regarding authority, the parties were ordered to proceed to discovery and possibly trial before the district court could rule on either substance or jurisdiction. *Id.* at 196-97.

Unlike the case in *First Fidelity*, it is clear from the evidence submitted by the Consulate that Ambassador Hubbard and Juarez did not have actual authority to bind the Consulate to any agreements with Plaintiff. Plaintiff essentially claims two agreements were made: one to provide broker services and another to facilitate the purchase of the property from Plaintiff and his investors – the joint venture agreement. *See* Pl. Compl. ¶ 23, ECF No. 1. In order for the Consulate to enter into an agreement for services or a joint venture for the purchase of property, the agreement would have to be approved by the appropriate authorities in Mexico. Bernal Decl. ¶¶ 8-11, Def. App. 2-3,

-12-

ECF No. 22-2.[2]  The approval process to acquire or lease property is set out in detail in (a) the

Internal Standards for the Administration of Mexican Representation's Real Property Assets Abroad

(the "Standards") and (b) the Procedures Manual for the Acquisition and/or Leasing of Real Property

Assets Abroad (the "Procedures").  Bernal Decl. ¶¶ 9-11, Def. App. 2-3, ECF No. 22-2; Def. App.

14, 47, 57, ECF No. 22-2.  The mandatory standards provide that any transaction involving the

acquisition or disposition of property requires the authorization of the Chief Clerk of the General

Office of Real Property Assets and Material Resources in Mexico.[3]  Bernal Decl. ¶ 10, Def. App.

3, ECF No. 22-2; Def. App. 22, 25, ECF No. 22-2.  The Procedures state that a Mexican

representative abroad "must not sign any letter of intent, pure and financial sales and leasing

contracts, without the opinion of Legal Counsel and the authorization of the Chief Clerk on behalf

of the General Office of Real Property Assets and Material Resources."  Bernal Decl. ¶ 11, Def.

App. 3, ECF No. 22-2; Def. App. 55, ¶ 25, ECF No. 22-2.  Bernal testifies that the Chief Clerk never

approved of any agreements with Plaintiff.  Bernal Decl. ¶ 12, Def. App. 3, ECF No. 22-2.

Plaintiff provides no evidence of authorization or approval from the Chief Clerk, nor does

he aver that such approval exists.  In contrast, Plaintiff states that Consulate officials were allegedly

"indicating that our joint venture was still in the works" and that officials were advising that "the

Dallas Mexican Consulate was waiting for final approval from Mexico."  Box Aff. ¶ 11, Pl. App.

90-91, ECF No. 26.  An email from Juarez to Plaintiff on May 25, 2007 states: "Today we sent all

---

[2] Alberto Bernal Acero ("Bernal") currently serves as the Deputy Consul General of the Dallas Mexican Consulate. *Id* at ¶ 2. Mr. Bernal took the position of Acting Consul General when Ambassador Hubbard left the position of Head of the Mission on October 7, 2009. *Id.* at ¶ 4. Mr. Bernal served as Acting Consul General of the Consulate from October 7, 2009 to November 16, 2009. *Id.* at ¶ 3.

[3] Specifically, the Standards provide: "All acquisition of property as well as leasing or any other transaction involving the disposition of property, regardless of the amount they represent, will require the OM's [i.e., Chief Clerk] authorization." Def. App. 25, ECF No. 22-2.

the documents to our offices in Mexico City.  Lets hope for the best."  Pl. App. 10, ECF No. 26.

Thus it is clear that the agents did not have actual authority to enter into any agreements with

Plaintiff without authorization from Mexico.

Plaintiff argues that the subsequent purchase and sale of the property from the third-party

seller confirms that the agents had actual authority to complete the sale.  But this does not establish

that the agents had actual authority to enter into any agreements with Plaintiff, nor does it establish

that any such agreements received the requisite approval from Mexico.

Therefore, the Court finds that the Consulate has met its burden of demonstrating by a

preponderance of the evidence that the agents did not have actual authority to enter into any

agreements with Plaintiff.  Absent actual authority, the Court must dismiss the case without

prejudice for lack of subject matter jurisdiction.

### C.      Other Grounds for Relief

The Consulate also moves to set aside the default judgment under Rule 60(b)(4) based on

a lack of personal jurisdiction, arguing that service was not completed in proper compliance with

the FSIA.  In addition, the Consulate moves to set aside the default judgment under Rule 60(b)(1)

for mistake, inadvertence, surprise, or excusable neglect.

Having found that dismissal is appropriate for lack of subject matter jurisdiction, the Court

need not reach the Consulate's alternate grounds for setting aside the default judgment.

### III.    Conclusion

Because the Consulate is immune from suit under the FSIA and the commercial activity

exception does not apply, Plaintiff's claims against the Consulate are **DISMISSED WITHOUT**

**PREJUDICE** for lack of subject matter jurisdiction.

Because the Court did not place the burden on Plaintiff to establish subject matter

-14-

jurisdiction, Plaintiff's alternative request to conduct discovery to prove subject matter jurisdiction

is **DENIED.**

       **SO ORDERED** on this **23rd** day of **December, 2010.**


                                _____

                                 Reed O'Connor
                                 **UNITED STATES DISTRICT JUDGE**