IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | § § § | |
| | § | |
| **Plaintiff,** | § § | |
| | § | |
| v. | § § | Civil Action No. 3:08-cv-1010-O |
| | § | |
| DALLAS MEXICAN CONSULATE GENERAL, | § § | |
| | § | |
| **Defendant.** | § § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This case is on remand from the United States Court of Appeals for the Fifth Circuit to

permit the parties to conduct discovery and file additional briefing concerning the Court's

jurisdiction over this lawsuit under the Foreign Sovereign Immunities Act ("FSIA"). *See generally*

*Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880 (5th Cir. 2012).  At this stage of the litigation,

Defendant Dallas Mexican Consulate General's ("Consulate") Motion to Set Aside Default

Judgment (ECF No. 22) is pending before the Court.  Following discovery, Plaintiff Blake Box d/b/a

Blake Box Company ("Box") and the Consulate filed their respective response, reply, sur-reply, and

any supplemental information they wished to be considered.[1]  Therefore, the Motion to Set Aside

---

[1] Before the Court are: the Consulate's Motion to Set Aside Default Judgment and Brief in Support
(ECF No. 22), filed March 23, 2010; Plaintiff's Response to the Consulate's Motion to Set Aside Default
Judgment (ECF No. 69), filed May 8, 2013;  Appendix to Plaintiff's Response to the Consulate's Motion to
Set Aside Default Judgment (ECF No. 70), filed May 8, 2013; the Consulate's Sealed Reply in Support of
Motion to Set Aside Default Judgment (ECF No. 77), filed May 29, 2013; Sealed Appendix to the
Consulate's Sealed Reply in Support of Motion to Set Aside Default Judgment (ECF No. 78), filed May 29,
2013; the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No.

Default Judgment has been fully briefed and is ripe for determination.

## II.   FACTUAL BACKGROUND

Plaintiff Box is a licensed real estate broker who worked with the Consulate in its search for a new Consulate location. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Hugo Juarez-Carillo and former Ambassador Enriqué Hubbard Urrea ("Consulate Officials") hired Box in 2006 to provide various real estate services related to identifying and securing a new Consulate building in Dallas.[2] *See id.* Initially, Box was to help the Consulate Officials secure a lease for the new facility, but the parties decided to look for a property to purchase instead. *See id.* at 3. Ultimately, Box found a building (the "Property") for the Consulate to purchase, which was located at 1210 River Bend Drive and was part of a complex consisting of three buildings. *See id.* When the owner of the three-building complex refused to subdivide the complex to permit the Consulate to acquire the Property it desired, the Consulate Officials agreed to enter a joint venture arrangement with Box whereby Box would buy the complex, subdivide it, and sell back to the Consulate the Property it needed. *Id.* at 4.  Sometime in December 2007, Box learned that the Consulate purchased the Property from a third party, Setco,

---

84), filed July 24, 2013; Supplemental Appendix in Support of the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 85), filed July 24, 2013; Plaintiff's Response to the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 86), filed August 14, 2013; Appendix to Plaintiff's Response to the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 87), filed August 14, 2013; and Plaintiff's Sealed Sur-Reply to the Consulate's Sealed Reply in Support of Motion to Set Aside Default Judgment (ECF No. 89), filed September 17, 2013.

[2] The Court accepts Box's well-pleaded allegations of fact for the merits of Box's claims but not for the existence of subject matter jurisdiction. *See Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002). The only fact that is dispositive of the Rule 60(b)(4) motion, and therefore in dispute, is whether the Consulate Officials had actual authority to transact with Box, not whether the Consulate Officials merely contracted with Box. Accordingly, the Court will disregard the Consulate's attempts to argue the merits of the judgment, including the existence of the joint venture. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012).

in a transaction almost identical to the one Box had arranged. *Id.* at 4-5. Ultimately, the Consulate

Officials refused to pay Box and refused to abide by the terms of the joint venture. *Id.* Therefore,

Box filed this suit against the Consulate on June 16, 2008. *See generally id.*

In his complaint, Box asserted the following causes of action against the Consulate:

(1) breach of contract, (2) fraud/fraudulent inducement, (3) breach of fiduciary duty, (4) unjust

enrichment, (5) quantum meruit, (6) promissory estoppel, (7) constructive trust, (8) attorneys' fees,

and (9) exemplary damages. *See generally id.* These claims arise out of Box's provision of real estate

services *and* the subsequent formation of the joint venture. *See generally id.* The Consulate was

served with summons and Box's Original Complaint on July 11, 2008. Pl.'s Mot. Default J. & Mem.

Supp. ¶ 4, ECF No. 13. After failing to file any responsive pleading or otherwise defend the lawsuit,

the Clerk of Court entered default against the Consulate. Clerk's Entry Default, ECF No. 10. On

January 7, 2009, Box moved for default judgment. *See generally* Pl.'s Mot. Default J. & Mem.

Supp., ECF No. 13. After a hearing, the Court granted Box's motion on September 20, 2009, and

entered final judgment the same day. Order, Sept. 30, 2009, ECF No. 16; Final J., ECF No. 17.

On March 23, 2010, the Consulate filed its Motion to Set Aside Default Judgment (ECF No.

22). The Consulate asserted that it was immune from suit under the FSIA because the commercial

activity exception to the FSIA did not apply to the Consulate's agreements with Box. Mot. Set Aside

Default J. & Br. Supp. 9-12, ECF No. 22. Specifically, the Consulate argued that the Consulate

Officials lacked actual authority to enter into the alleged agreements with Box, which is a

prerequisite to applying the FSIA's commercial activity exception. *Id.* Box requested discovery to

prove subject matter jurisdiction existed but, after conducting a hearing, the Court denied Box's

request to conduct discovery and granted the Consulate's motion. *See* Pl. Suppl. Br. Opp'n Mot. Set

Aside Default J. 7-8, ECF No. 34; Order, Dec. 23, 2010, ECF No. 36. The Court agreed that the Consulate was immune from suit under the FSIA because there was no evidence the Consulate Officials were authorized to engage in the commercial activity at issue in this case. Order 10-15, Dec. 23, 2010, ECF No. 36; Final J., ECF No. 37.

Thereafter, Box appealed the Court's ruling to the Fifth Circuit. Pl.'s Notice Appeal, ECF No. 38. On August 21, 2012, the Fifth Circuit held that this Court abused its discretion in denying Box discovery on the issue of whether the Consulate Officials had actual authority to pursue the transaction at issue. *See Box*, 487 F. App'x at 884-85. The Fifth Circuit remanded for limited discovery noting the fact that "the Consulate subsequently purchased the exact property suggests that some form of actual authority might have existed for the transaction." *Id.* at 885 n.6, 886. In compliance with the Fifth Circuit's directive, this Court issued its order finding that the Consulate's original Motion to Set Aside Default Judgment stands and ordering discovery as to whether the Consulate Officials had actual authority to engage in commercial activity. Order, Dec. 7, 2012, ECF No. 49.

Having reviewed the foregoing pleadings and evidence, the Court concludes that the Motion to Set Aside Default Judgment is **DENIED** for the following reasons.

## III.   LEGAL STANDARD

### A.   Relief under Federal Rule of Civil Procedure 60(b)(4)

Under Rule 60(b)(4), a party may obtain relief from a final judgment, order, or proceeding if the underlying judgment is void. Fed. R. Civ. P. 60(b)(4).  A judgment is void and may be set aside under Rule 60(b)(4) if the court lacked subject matter or personal jurisdiction or if the court acted in a manner inconsistent with due process of law. *United Student Aid Funds, Inc. v. Espinosa*, 559

4

U.S. 260, 271 (2010); *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998). Rule 60(b)(4) "embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.'" *Jackson v. FIE Corp.*, 302 F.3d 515, 522 (5th Cir. 2002) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)).

However, "[a] Rule 60(b)(4) challenge to jurisdiction should be sustained only where there is a 'clear usurpation of power' or 'total want of jurisdiction.'" *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 64-65 (2d Cir. 1986)). When a court has both subject matter and personal jurisdiction, the "only inquiry is whether the district court acted in a manner so inconsistent with due process as to render the judgment void." *Id.* at 210 (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996)). Furthermore, "[w]hen . . . the motion is based on a void judgment under [R]ule 60(b)(4), the district court has no discretion—the judgment is either void or it is not." *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) (citations omitted); *see also Magness v. Russ. Fed'n*, 247 F.3d 609, 619 n.19 (5th Cir. 2001). Thus, if the judgment is void, "the district court *must* set it aside." *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988) (citations omitted).

1.    Rule 60(b)(4) Standard of Review

A judgment is not void simply because it may have been erroneous. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *see also Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938)) ("[E]rror in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want

5

of jurisdiction."). Likewise, a Rule 60(b)(4) motion is not a substitute for appeal. *Kansas City S. Ry. Co.*, 624 F.2d at 825 n.4. "[I]f a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997) (citing *Kansas City S. Ry. Co.*, 624 F.2d at 825 n.4); *see also Elgin Nat'l Watch Co. v. Barrett*, 213 F.2d 776, 779-80 (5th Cir. 1954); *Holston Inv. Inc. B.V.I. v. LanLogistics, Corp.*, 766 F. Supp. 2d 1327, 1329-30 (S.D. Fla. 2011) (noting higher standard of review applies to Rule 60(b)(4) motion unless defendant files timely appeal).

Accordingly, when analyzing a Rule 60(b)(4) motion that asserts a court lacked subject matter jurisdiction, a court must determine whether it at least had an "arguable basis" for exercising its jurisdiction. *See United Student Aid Funds, Inc.*, 559 U.S. at 271 (acknowledging that federal courts apply the arguable basis standard to Rule 60(b)(4) motions); *Pierce v. Kyle*, No. 12-15675, 2013 WL 4477856, *2 (11th Cir. Aug. 22, 2013) (applying arguable basis standard); *Wendt v. Leonard*, 431 F.3d 410, 413 (4th Cir. 2005) (same); *Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005) (same); *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 187 (2d Cir. 2003) (same); *In re G.A.D., Inc.*, 340 F.3d 331, 336 (6th Cir. 2003) (same); *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) ("[Rule 60(b)(4)] is narrowly tailored, such that a lack of subject matter jurisdiction will not always render a final judgment 'void.' Only when the jurisdictional error is 'egregious' will courts treat the judgment as void."); *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) (applying arguable basis standard); *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997) (same); *see also* 12 *Moore's Federal Practice* § 60.44 (Matthew Bender 3d ed.). *Contra Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*, 441 F. App'x 822, 824-25 (3d Cir.

6

2011) ("'[C]lear usurpation standard' for vacating an order affirming an arbitration award only applies in circumstances in which the parties have had their day in court on the issue of jurisdiction such that re-litigation of the issue is barred by principles of res judicata."). Thus, courts should grant a Rule 60(b)(4) motion "only if the absence of jurisdiction was so glaring as to constitute a 'total want of jurisdiction' or a 'plain usurpation of power' so as to render the judgment void from its inception." *Kocher*, 132 F.3d at 1230 (citing *Kansas City S. Ry. Co.*, 624 F.2d at 825).

Here, as noted by the Fifth Circuit, the Consulate was aware of the lawsuit in time to file an appeal but chose not to do so. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 n.10 (5th Cir. 2012). Instead, the Consulate chose to proceed by way of a Rule 60(b)(4) motion. Accordingly, the Consulate's Motion to Set Aside Default Judgment should be granted only if the Court concludes it had no arguable basis to believe the FSIA conferred subject matter jurisdiction over this lawsuit.[3] *See Kocher*, 132 F.3d at 1230.

## 2.  Burden of Proof

It is not entirely clear who bears the burden of proof on subject matter jurisdiction in the specific context of a Rule 60(b)(4) motion. *See Jackson v. FIE Corp.*, 302 F.3d 515, 520-21 & n.6 (5th Cir. 2002) (noting the district court placed the burden on the defendant in a Rule 60(b)(4) challenge to personal jurisdiction but declining to reach the issue as it was not challenged on appeal); *Semtek Intern., Inc. v. Info. Satellite Sys.*, No. 09-10183-RWZ, 2012 WL 831475, at *3-4 (D. Mass. Mar. 9, 2012) (placing "high burden" on defendant to establish that prior default judgment was void

---

[3]  The Parties briefed the arguable basis standard of review before the Fifth Circuit, but the Fifth Circuit did not address this issue given its decision to remand to permit discovery. Br. Appellant at 17, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 2603742 at *18; Br. Appellee at 17, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 9522997 at *17-18. Alternatively, if the appropriate standard is *de novo*, the Court finds that it would reach the same result.

under Rule 60(b)(4) asserting lack of subject matter jurisdiction under the FSIA). Ordinarily, under the FSIA, once a defendant alleges that it is a "foreign state," the plaintiff must produce facts showing that the commercial activity exception applies, "but the defendant retains the ultimate burden of proof on immunity." *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 390 n.14 (5th Cir. 1991)). Even if a foreign state does not appear, however, the district court must still determine whether immunity is available under the FSIA. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 492 n.20 (1962).

In light of the "arguable basis" standard, the Court finds that, in this context, the burden is properly placed on the defendant.[4] *See In re Diet Drugs Prods. Liab. Litig.*, 434 F. Supp. 2d 323, 333 (E.D. Pa. 2006) ("The burden on [the Rule 60(b)(4)] movants here is a heavy one because of the strong interest in the finality of judgments."). However, the Court's decision would be the same even if the burden is properly placed on Plaintiff.

### B.     Foreign Sovereign Immunities Act

The FSIA is the sole source of subject matter jurisdiction in lawsuits against foreign states. *Dale v. Colagiovanni*, 443 F.3d 425, 427-28 (5th Cir. 2006) (citing *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-39 (1989)). Generally, foreign states are immune from jurisdiction in United States' courts unless a FSIA exception applies. *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-33 (5th Cir. 1992) (citing 28 U.S.C. § 1605). The "commercial

---

[4] The Parties also briefed the appropriate burden of proof for consideration by the Fifth Circuit, but the Fifth Circuit did not address this issue given its disposition of the case. Br. Appellant at 17, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 2603742 at *17; Br. Appellee at 19, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 9522997 at *19.

activity" exception is at issue in this case and provides that foreign states are not immune if the action is based upon "commercial activity that has a jurisdictional nexus with the United States." *Id.* at 533 (citing  28 U.S.C. § 1605(a)(1)-(2)). Commercial activity means:

> either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

*Id.* (citing 28 U.S.C. § 1603(d)). A sufficient "jurisdictional nexus" can be demonstrated in one of the three following ways: "(1) a commercial activity carried on in the United States; (2) an act performed in the United States in connection with a commercial activity carried on outside the United States; or (3) a commercial activity carried on outside the United States that has a direct effect in the United States." *Id.* (citing *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 386 (5th Cir. 1991)). Importantly, courts must determine whether the commercial activity is attributable to the foreign state. *See Dale*, 443 F.3d at 429. Under the FSIA, "foreign state" includes an agent of the foreign state. *See Bd. of Regents of Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp.*, 478 F.3d 274, 278 (5th Cir. 2007) (citing 28 U.S.C.§ 1603(b)).

The FSIA requires "actual authority . . . to trigger the commercial activity exception."[5] *Dale*, 443 F.3d at 428. When a government agent's actions are limited by statute, any action beyond those limitations is not attributable to the foreign state. *Doe v. Qi*, 349 F. Supp. 2d 1258, 1282 (N.D. Cal. 2004). Thus, the Court must determine whether the Consulate Officials were acting within their "official mandate" when they transacted with Box. *Id.* (citing *In re Estate of Ferdinand Marcos,*

---

[5] The Consulate does not dispute that the Consulate Officials are agents of the Mexican government; rather, the Consulate contends that the Consulate Officials did not have actual authority to transact with Box. Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22.

*Human Rights Litig.*, 25 F.3d 1467, 1472 n.8 (9th Cir.1994)).

## IV.     MOTION TO SET ASIDE DEFAULT JUDGMENT

The Consulate contends that the default judgment entered in this case is void because the Court lacked subject matter jurisdiction to consider the case. Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22.  The Consulate argues jurisdiction does not exist because it is a foreign state generally immune from suit under the FSIA and that the commercial activity exception to immunity does not apply because the Consulate Officials did not have actual authority to transact with Box. *Id.*; *see also Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-33 (5th Cir. 1992) (citing 28 U.S.C. § 1605). Box, on the other hand, contends that the Consulate Officials had actual authority or, at minimum, that there is an arguable basis for the Court to find actual authority. *See generally* Pl.'s Resp. Mot. Set Aside Default J., ECF No. 69; *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (acknowledging that federal courts apply the arguable basis standard to Rule 60(b)(4) motions). Specifically, Box points to the subsequent purchase of the same property under similar conditions as an indication that the Consulate Officials were authorized to pursue the transaction with him. Pl.'s Resp. Mot. Set Aside Default J. 17, ECF No. 69

### A.     Scope of Review

In entering default judgment, the Court found that it had subject matter jurisdiction under the commercial activity exception. Mem. Op. & Order 2-6, Sep. 30, 2009, ECF No. 16. It is undisputed that this action is based upon the facilitation of real estate services and the formation of a joint venture between Box and the Consulate—commercial activity that occurred in the United States. *See id.*; Final J., Sept. 30, 2009, ECF No. 17 (awarding $87,500 for services rendered by Box to the Consulate; $6,725 in costs expended by Box on behalf of the Consulate; and $3,000,000 in

10

lost profits on the joint venture agreement). The only issue for the Court to determine at this stage is whether the Consulate Officials had actual authority to transact with Box. *See generally Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880 (5th Cir. 2012). If they had authority to do so, there was an arguable basis for the exercise of subject matter jurisdiction. Importantly, the Court may not re-examine the merits of any of Box's claims. *See id.* at 887. Instead the scope of review is limited to determining whether the Court had an arguable basis to conclude that the commercial activity exception to the FSIA conferred subject matter jurisdiction.

### B.   The Consulate Officials Had Actual Authority to Engage in a Commercial Activity on the Consulate's Behalf

The Court concludes that the Mexican government authorized the Consulate Officials to engage in a commercial activity that forms the basis of Box's claims. The Consulate contends that the Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the "Procedures") is the sole source of actual authority for the purchase of real property.[6] *See* Mot. Set Aside Default J. 6, ECF No. 22. The Consulate further argues that Box and the Consulate Officials failed to comply with the Procedures in relation to the purchase of the Property and, therefore, this failure deprived the Consulate Officials of actual authority to transact with Box.[7] *See id.* at 4-7.

---

[6] The Consulate also originally referenced the Internal Standards for the Administration of Mexican Representation's Real Property Assets Abroad ("Standards"), but the Court finds that the Standards were not in effect at the time of the transaction between Box and the Consulate Officials. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 102-03, ECF No. 78-1.

[7] The Consulate relies heavily on the Procedures for its contention that the Consulate Officials lacked actual authority, yet the Consulate's corporate representative, Ivonne Lopez Guzman, testified that the steps set forth in the Procedures "are not followed chronologically." *See id.* (Guzman depo.), App. 112, ECF No. 78-1. On one hand, the Consulate asserts that the Procedures are the ultimate source of authority. *See* Reply Supp. Mot. Set Aside Default J. 4, ECF No. 77. On the other hand, the Consulate contends that the steps in the Procedures are not followed in the order set forth in the Manual *and* that there are additional requirements to purchase real property, which are not in the Procedures. *See id.* at 6-7 (stating the following additional

The Court, however, finds the Consulate's description of the authorization required to transact with Box to be too narrow. The sole issue before the Court is whether the Consulate Officials had actual authority to engage in a commercial activity—not just whether the Consulate Officials had actual authority to purchase the Property from Box. This lawsuit is based upon the facilitation of real estate services *and* the formation of a joint venture. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Thus, the Court will look to the Procedures to determine whether the Consulate Officials had actual authority to contract with Box for the provision of real estate services *or* for the joint venture. Importantly, this finding corresponds with the FSIA in that the crucial inquiry is whether this Court had an arguable basis for finding that the Consulate Officials had actual authority to engage in *a commercial activity* on the Consulate's behalf. *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing 28 U.S.C. § 1603(d)). Accordingly, the Court may look to the entire "course of commercial conduct." *See* 28 U.S.C. § 1603(d).

### 1.     The Procedures

The general objective of the Procedures is to "[e]stablish a standards guide that allows the Mexican Representation holder abroad . . . to follow a [sic] ordered and systematic procedure for the acquisition and/or leasing of property abroad."[8] App. Consulate's Reply Supp. Mot. Set Aside

---

requirements not in the Procedures: (1) any agreement must also be in writing; (2) Mexican officials cannot obtain approval to purchase property from someone other than the present owner; (3) the Mexican government cannot enter joint ventures; and (4) although the Procedures contemplate authorization of a "maximum" purchase price, the Consulate could not purchase Property for less than that amount authorized). From the Consulate's point of view, the Procedures are flexible when it benefits the Consulate but rigid when it pertains to Box.  This inconsistency diminishes the Consulate's credibility when it argues the Procedures must be followed precisely before authority exists.

   [8] The Procedures, as cited and quoted by the Court, are the translations from Spanish to English supplied by the Consulate. *See* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 212, ECF No. 78-1 (affidavit of accuracy).

Default J. Ex. 3 (Procedures), App. 217, ECF No. 78-1. The Policies section of the Procedures states: "The holder of the Mexican Representation Abroad will exercise the ownership rights and obligations of the property's acquisition . . . on behalf of the Ministry." *Id.* at 221. The Policies further provide: "In Order to formally begin any transaction for the property's acquisition . . . the budget resources authorized . . . must be taken into account." *Id.* Lastly, the Policies state that "[t]he Mexican Representations Abroad Holder must not sign any letter of intent, pure and financial sales and leasing contracts, without the opinion of Legal Counsel and the authorization of the Chief Clerk on behalf of the General Office of Real Property Assets and Material Resources." *Id.*

Thereafter, the Procedures contain twenty-eight steps for the "acquisition and/or leasing of real property assets abroad." *Id.* at 222-28. The steps include submitting a formal request, ensuring technical specifications are met, securing a budget and, if the negotiations are successful, allocating funds and obtaining legal review prior to the execution of a contract.[9] *See generally id.*

In this case, the facts demonstrate that the Consulate submitted a formal request to acquire a new building, which outlined three potential properties under step one of the Procedures. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 271, ECF No. 78-2. GDRIM[10] issued a technical report and concluded that the Property was the most suitable location pursuant to step two. *Id.* at 275-82. GDIRM provided that the Property "will be submitted to the consideration of the superiors starting the negotiations for its acquisition immediately, beginning with making an appraisal." *Id.* at 282. GDIRM also noted that it would be necessary to investigate the Property to determine whether it was subject to debts, lawsuits, or mortgages. *Id.* In steps five through seven,

---

[9] A more comprehensive outline of the steps can be found in the appendix to this order.

[10] The Court assumes that, in translation, the GDIRM is the equivalent of the DGBIRM.

13

the appropriate Mexican officials *authorized* the Consulate "to start the activities prior to the acquisition" of the Property. *Id.* at 285-89. These authorized activities included "expenses and the retention or hiring of what needs to be hired; the things that need to be, or that are needed during the process of purchase." App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1. Notably, this authorization placed no limitation on whom the Consulate Officials may engage to complete these tasks nor did it exclude engaging Box. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 274, ECF No. 78-2. The Consulate also conducted a cost-benefit study and report regarding the Property pursuant to step nine. *Id.* at 291-378.

In step ten, the General Director notified the Consulate that "to start the acquisition process, it is necessary to do an appraisal . . ." *Id.* at 380-81. Pursuant to steps eleven and twelve, Mexican officials made inquiries into the availability of resources to acquire the Property and confirmed the resources existed. *Id.* at 383-89. In step sixteen, the Consulate submitted the appraisal for the Property, and the Deputy General Director commented:

> [T]he amount indicated in the appraisal . . . will be applied for the acquisition of the property located at 1210 River Bend Drive, Dallas, Texas [(the Property)]. Such being the case, I would appreciate the confirmation of the agreement of the owner with this figure.

*Id.* at 391-92. Finally, in step seventeen the Consulate submitted the proposed real estate agreement for legal review, which indicated that the Consulate intended to purchase the Property from Setco rather than Box. *Id.* at 394.

### 2.   Actual Authority for a Commercial Activity

A review of the undisputed facts demonstrates that Box provided real estate services to the

14

Consulate Officials. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Specifically, Box searched for properties that the Consulate could lease and, at the Consulate's direction, later searched for a property for the Consulate to purchase. *Id.* at 3. After Box located the Property, the appropriate Mexican officials determined it was the best location for the Consulate's needs. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 275-82, ECF No. 78-2. Box identified prospective sites, enlisted contractors, met with city officials, and was involved in negotiations. *See* Pl.'s Original Compl. 3, ECF No. 1. When the owner of the complex refused to subdivide to allow for the individual purchase of the Property, Box and the Consulate Officials agreed to enter a joint venture whereby Box would facilitate the Consulate's acquisition of the Property. *See id.* at 4.

The Mexican government indisputably authorized the Consulate to pursue the acquisition of a the Property. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 285-89, ECF No. 78-2 (authorizing the Consulate "to start the activities prior to the acquisition"); *id.* Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1 (stating authorization for preliminary activities includes "expenses and the retention or hiring of what needs to be hired; the things that need to be, or that are needed during the process of purchase"). The evidence shows this authorization was not limited to hiring a particular individual or entity. The Consulate points to the draft contract, submitted under step seventeen of the Procedures, as an indication that the Consulate Officials only had authority to deal with Setco. *See* Consulate's Reply Supp. Mot. Set Aside Default J. 6-7, ECF No. 77. However, the evidence shows that prior to the contract with Setco, the Consulate Officials were given full authority for all preliminary activities and this authorization did not exclude hiring Box *or* specify the hiring of some other entity or person. *See* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1. Instead, the evidence clearly shows that the

15

Consulate Officials were authorized to hire *whomever* needed to be hired *to complete the things that needed to be completed* to purchase the Property. *See id.* Pursuant to this authorization, the Consulate Officials engaged Box to carry out these necessary preliminary activities to acquire the Property. Based on the foregoing, the Court finds that the Consulate Officials had actual authority to engage Box as the Consulate's real estate broker in its pursuit of a new Consulate location, which was a commercial activity carried on in the United States under the provisions of the FSIA.

### 3.    Extent of Subject Matter Jurisdiction

The Court recognizes that this scenario is complicated in that the transaction which forms the basis of this action constitutes two distinct activities: (1) the provision of real estate services and (2) the formation of a joint venture that was intended to acquire real estate. While the Court finds that the Consulate Officials had actual authority to engage in all preliminary activities in pursuit of a new Consulate location (i.e., the retention of Box as the Consulate's real estate broker to acquire the Property), the joint venture poses a more difficult question because its purpose was to acquire real property. The Court need not reach, however, whether fulfilling the purpose of the joint venture falls within the scope of the Consulate Officials' actual authority, as the Court has determined the general authorization given to the Consulate for all activities leading up to the acquisition of the Property would include the retention of Box as a real estate broker.[11]   Therefore, the commercial

---

[11] Even if the Court needed to decide whether forming the joint venture to obtain the Property was authorized, the Court would conclude that the Consulate was authorized to do so. The facts show the Consulate could not obtain the Property it desired outright, and it is undisputed that the only way the Consulate could acquire the Property it desired was to agree to structure the transaction as Box, and later Setco, did. Therefore, the Consulate agreed to form the joint venture with Box because it appeared to be the only way to obtain the Property. This agreement between Box and the Consulate Officials easily fits within Mexico's express authorization that directed the Consulate to complete the things needed to be completed to purchase the Property, in this instance to form a joint venture with Box. *See* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1. As stated above, the things that needed to be completed and the identities of those whom the Consulate would engage to complete them were

16

activity exception provides an arguable basis for the Court's exercise of subject matter jurisdiction over this lawsuit.

The Consulate asserts that these facts are similar to cases in which courts have found government agents lacked actual authority, but the Court finds this situation to be distinguishable. Specifically, the cases cited by the Consulate deal with scenarios in which the single activity at issue was not authorized. *See generally Allfreight Worldwide Cargo Inc. v. Ethiopian Airlines Enter.*, 307 F. App'x 721 (4th Cir. 2009) (execution of contract); *Dale v. Colagiovanni*, 443 F.3d 425 (5th Cir. 2006) (plan to purchase insurance companies); *Velasco v. Gov't of Indon.*, 370 F.3d 392 (4th Cir. 2004) (issuance of promissory notes).[12] Here, the Court is tasked with determining whether actual authority to engage in *a* commercial activity permits the exercise of subject matter jurisdiction over the entire transaction at issue. With no clear direction on this point, the Court will look to other situations for guidance.[13]

In *Saudi Arabia v. Nelson*, the United States Supreme Court explained that the "based upon"

---

not specified or limited. That Box's substantive cause of action for breach of the joint venture to actually acquire the Property may have encountered difficulties on the merits cannot be litigated here. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012); *see also Kocher*, 132 F.3d at 1230. Based on the facts of this case, the only activity not authorized was the actual purchase of the Property from Box.

[12] It is also notable that the cases cited by the Consulate were not decided in the context of a Rule 60(b)(4) motion.

[13] In *Stena Rederi AB v. Comision de Contratos*, the Fifth Circuit noted:

> [W]e need not resolve the troublesome question whether the FSIA authorizes pendent claim jurisdiction; *i.e.*, whether the FSIA permits the district court to exercise jurisdiction over all of the plaintiff's claims so long as the plaintiff can establish a commercial activities jurisdictional nexus to at least one of its claims.

923 F.2d 380, 389 n.12 (5th Cir. 1991). The Fifth Circuit's discussion dealt with the jurisdictional nexus between the claims and commercial activity rather than the issue of actual authority. Nonetheless, the Court finds this footnote merits mention as it deals with pendent claim jurisdiction under the FSIA.

17

language of the commercial activity exception requires that the commercial activity form the basis of the lawsuit. *See* 507 U.S. 349, 356-57 (1993); *see also* 28 U.S.C. § 1605(a)(2) (stating the commercial activity exception applies when "the action is based upon a commercial activity carried on in the United States by the foreign state"). The Supreme Court cited with approval a Fifth Circuit case that stated the proper focus is on the "gravamen of the complaint." *Saudi Arabia*, 507 U.S. at 357 (citing *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 (5th Cir. 1985)). In other words, the commercial activity exception applies so long as the commercial activity constitutes one element of the plaintiff's claim. *Id.* at 357 (citing *Santos v. Compagnie Nationale Air Fr.*, 934 F.2d 890, 893 (7th Cir. 1991)); *see also Kirkham v. Societe Air Fr.*, 429 F.3d 288, 295-96 (D.C. Cir. 2005). Thus, in regard to the nexus required between the commercial activity and the claims asserted, courts recognize that the scope of subject matter jurisdiction may be broader than the commercial activity itself.

The Court also emphasizes the procedural posture of this action. While one district court doubted whether the FSIA authorizes "pendent claim jurisdiction," the Court cannot approach this issue in the same manner because the Consulate did not timely appear in this suit. *See Dar El-Bina Eng'g & Contracting Co., Ltd. v. Rep. of Iraq*, 79 F. Supp. 2d 374, 386 n.97 (S.D.N.Y. 2000). Because of the procedural posture of this case, the Court's sole task is deciding the Rule 60(b)(4) motion. Under Rule 60(b)(4), a judgment is void for lack of subject matter jurisdiction only if the Court acted in "'*total* want of jurisdiction.'" *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 64-65 (2d Cir. 1986)) (emphasis added). Thus, the Court's inquiry ended the moment it determined it had an arguable basis for the exercise of subject matter jurisdiction based on the retention of Box as a real estate broker. *See supra*

18

Part IV.B.2. The Court risks overstepping the Fifth Circuit's mandate by conducting any inquiry beyond whether an arguable basis existed for the exercise of subject matter jurisdiction . *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012).

For these reasons, the Court concludes that its finding that the Consulate Officials had actual authority to retain Box as the Consulate's real estate broker is a sufficient arguable basis for the exercise of subject matter jurisdiction over this lawsuit. This commercial activity, which occurred in the United States, forms the basis of Box's lawsuit and, as such, warrants application of the FSIA's commercial activity exception.[14] That the Consulate may have had meritorious defenses to Box's claims is irrelevant given the Consulate's decision to refrain from defending itself after being notified of this lawsuit. *See Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997). Accordingly the Motion to Set Aside Default Judgment is **DENIED**.

## VI.    CONCLUSION

For these reasons, the Court finds that it had an arguable basis for the exercise of subject matter jurisdiction under the commercial activity exception of the Foreign Sovereign Immunities Act. Accordingly, it is **ORDERED** that the Motion to Set Aside Default Judgment is **DENIED** and the Default Judgment entered in this case stands.

**SO ORDERED** on this **30th day** of **October, 2013**.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**

---

[14] As noted in footnote 11, the Consulate Officials and Box were also authorized to enter into the joint venture.  Therefore, this activity would independently support application of the commercial activity exception. The only activity the Consulate had no authority to engage in with Box was the actual purchase of the Property.

**APPENDIX**

The twenty-eight steps in the Procedures can be summarized as follows:

- In step one, the General Office of Real Property Assets and Material Resources (DGBIRM) receives the Mexican Representative Abroad's (RME) written application for the acquisition of real property. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 223, ECF No. 78-1.

- In step two, DGBIRM issues a technical report that determines whether the property "complies with the basic requirements." *Id.*

- If the property covers the basic requirements, the Procedures skip to step five in which the Associate General Office of Real Estate ("Associate General") "[p]resents the proposal's analysis to the Chief Clerk for his approval." *Id.* at 223-24.

- In step six, the Chief Clerk receives the Associate General's request for authorization, and the Chief Clerk conveys his decision in writing. *Id.* at 224.

- In step seven, the Associate General receives notice from the Chief Clerk regarding the acquisition of the property. *Id.*

- If the acquisition was approved by the Chief Clerk, the Procedures skip to step nine, which entails a written request for budget resources. The Procedures note that "[o]btaining the resources to perform the acquisition is essential to initiate any formal transaction with the property's owner." *Id.*

- In step ten, the Associate General requests that the RME perform an appraisal of the property and, in step eleven, the General Office of Programming, Organization, and Budget receives the written transaction authorization request of budgetary resources. *Id.* at 225.

- Step twelve also involves a written request for authorization of budget resources, and if the resources are authorized, the Procedures skip to step sixteen. *Id.* at 225-26. At this point, the Associate General "[i]nform[s] the RME of the authorization and maximum sales and/or leasing price, in order to carry out the last negotiation with the property owner regarding the price and sales price conditions and indicate that once the agreement is closed to remit the sales contract project . . . ." *Id.* at 226.

- Generally, the remaining steps entail legal review and execution of the final sales contract. *Id.* at 226-28.

20