IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 3:08-cv-1010-O |
| DALLAS MEXICAN CONSULATE GENERAL, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Dallas Mexican Consulate General's Sealed Motion for New Trial and Reconsideration and Brief in Support ("Motion for Reconsideration") (ECF No. 91), filed November 27, 2013; Plaintiff's Response (ECF No. 92), filed December 18, 2013; and Dallas Mexican Consulate General's Sealed Reply (ECF No. 93), filed December 30, 2013. Having reviewed the motion, related briefing, and the applicable law, the Court finds the Motion for Reconsideration should be and is hereby **GRANTED in part** and **DENIED in part**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case, which are set out fully in the Court's Memorandum Opinion and Order. *See* Mem. Op. & Order, Oct. 30, 2013, ECF No. 90. Accordingly, a brief summary of the pertinent background follows. Plaintiff Blake Box d/b/a Blake Box Company ("Box") is a licensed real estate broker who worked with Defendant Dallas Mexican Consulate General ("Consulate") in its search for a new consulate location in Dallas, Texas. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Box contends he found a

building (the "Property") for the Consulate to purchase, which was located at 1210 River Bend Drive and was part of a complex consisting of three buildings. *See id.* Box further alleges that when the owner of the three-building complex refused to subdivide the complex to permit the Consulate to acquire the Property, the Consulate officials agreed to enter a joint venture arrangement with Box whereby Box and possibly a third-party investor would buy the complex, subdivide it, and sell the Property to the Consulate. *Id.* at 4; *see also* Part III.B.2. *infra*. Ultimately, however, the Consulate purchased the Property from a third-party, Setco. *Id.* at 4-5. Box then filed suit against the Consulate contending the Consulate: (1) failed to pay Box for his real estate services and (2) breached the parties' joint venture agreement. *See generally id.*

After the Consulate failed to file any responsive pleading or otherwise defend the lawsuit, the Clerk of Court entered default against the Consulate. Clerk's Entry Default, ECF No. 10. On January 7, 2009, Box moved for default judgment. *See generally* Pl.'s Mot. Default J. & Mem. Supp., ECF No. 13. After a hearing, the Court granted Box's motion and entered final judgment the same day. Order, Sept. 30, 2009, ECF No. 16; Final J., ECF No. 17. On March 23, 2010, the Consulate filed its Motion to Set Aside Default Judgment (ECF No. 22).

The Consulate asserted that it was immune from suit under the Foreign Sovereign Immunities Act ("FSIA"). Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22. In granting default judgment, the Court relied on the commercial activity exception to the FSIA as its basis for subject matter jurisdiction. The Consulate contended the commercial activity exception did not apply because the Consulate officials lacked actual authority to transact with Box.[1] Mot. Set Aside Default

---

[1] The FSIA is the sole source of subject matter jurisdiction in lawsuits against foreign states. *Dale v. Colagiovanni*, 443 F.3d 425, 427-28 (5th Cir. 2006) (citing *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-39 (1989)). Generally, foreign states are immune from jurisdiction in United States'

J. & Br. Supp. 9-12, ECF No. 22.

Box requested discovery to prove subject matter jurisdiction existed but, after conducting a hearing, the Court denied Box's request to conduct discovery and granted the Consulate's motion. *See* Pl. Suppl. Br. Opp'n Mot. Set Aside Default J. 7-8, ECF No. 34; Order, Dec. 23, 2010, ECF No. 36. The Court agreed that the Consulate was immune from suit under the FSIA because there was no evidence the Consulate officials were authorized to engage in the commercial activity at issue in this case. Order 10-15, Dec. 23, 2010, ECF No. 36; Final J., ECF No. 37.

Thereafter, Box appealed the Court's ruling to the United States Court of Appeals for the Fifth Circuit. Pl.'s Notice Appeal, ECF No. 38. On August 21, 2012, the Fifth Circuit held that this Court abused its discretion in denying Box discovery on the issue of whether the Consulate officials had actual authority to pursue the transaction at issue. *See Box*, 487 F. App'x at 884-85. The Fifth Circuit remanded for limited discovery noting the fact that "the Consulate subsequently purchased the exact property suggests that some form of actual authority might have existed for the transaction." *Id.* at 885 n.6, 886. In compliance with the Fifth Circuit's directive, this Court issued its order finding that the Consulate's original Motion to Set Aside Default Judgment stands and ordering discovery as to whether the Consulate officials had actual authority to engage in commercial

---

courts unless a FSIA exception applies. *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-33 (5th Cir. 1992) (citing 28 U.S.C. § 1605). The "commercial activity" exception is at issue in this case and provides that foreign states are not immune if the action is based upon "commercial activity that has a jurisdictional nexus with the United States." *Id.* at 533 (citing 28 U.S.C. § 1605(a)(1)-(2)).

Importantly, courts must determine whether the commercial activity is attributable to the foreign state. *See Dale*, 443 F.3d at 429. Under the FSIA, "foreign state" includes an agent of the foreign state. *See Bd. of Regents of Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp.*, 478 F.3d 274, 278 (5th Cir. 2007) (citing 28 U.S.C.§ 1603(b)). The FSIA, however, requires "actual authority . . . to trigger the commercial activity exception." *Dale*, 443 F.3d at 428.

3

activity. Order, Dec. 7, 2012, ECF No. 49.

After the parties took discovery and fully briefed the motion to set aside default judgment, the Court issued its Memorandum Opinion and Order denying the Consulate's motion. On November 27, 2013, the Consulate filed the instant motion to reconsider. Box filed his response on December 18, 2013, and the Consulate filed its reply on December 30, 2013. Accordingly, this matter has been fully briefed and is ripe for determination.

## II.    LEGAL STANDARD

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 366 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "[It] is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Instead, a Rule 59(e) motion may address manifest errors of law or newly discovered evidence. *Id.*

"A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill.1997)); *cf. Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (defining "manifest error" in appellate review context as "one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." (quoting *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) (internal quotation marks omitted) (citing *Andreiu v. Ashcroft*, 253 F.3d 477, 490 (9th Cir. 2001) (Beezer, J., concurring); *LaCombe v. A–T–O, Inc.*, 679 F.2d 431, 435 (5th Cir. 1982); *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F. Supp. 2d 698, 713 (N.D. Tex. 1998)). Thus,

4

Rule 59(e) allows courts to correct their own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)) (internal quotation marks omitted).

Courts have significant discretion in deciding whether to grant a motion to reconsider under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353, 355 (5th Cir. 1995). Nevertheless, granting a motion for reconsideration is "an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. Thus, in determining whether to grant a motion to reconsider, courts must balance the following judicial imperatives: (1) "the need to bring litigation to an end" and (2) "the need to render just decisions on the basis of all the facts." *Id.*

## III.    ANALYSIS

The Consulate contends the Court committed manifest errors by: (1) applying the arguable basis rather than de novo standard to the 60(b)(4) motion, (2) assuming the joint venture existed, (3) placing the burden of proof on the Consulate rather than Box to disprove the commercial activity exception, and (4) finding actual authority for the provision of services or the joint venture. *See generally* Def.'s Mot. New Trial, ECF No. 91. For these reasons, the Consulate contends the Court should set aside the default judgment for lack of jurisdiction under the FSIA. *Id.* Box argues the Consulate "merely recycles its earlier briefing and argument—and therefore fails to support a new trial or reconsideration . . . ." Pl.'s Resp. 1, ECF No. 92.

For the reasons discussed below, the Court finds that it should have applied the de novo standard and should have evaluated the existence of the joint venture. Accordingly, the Court must reconsider whether the default judgment should be set aside as void. *Shrader v. CSX Transp., Inc.*,

5

70 F.3d 255, 257 (2d Cir. 1995) (explaining motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)).

A.     **Standard of Review for a 60(b)(4) Motion in the FSIA Context**

In determining whether the default judgment should be set aside, the Court applied an arguable basis standard of review. *See* Mem. Op. & Order 4-7, Oct. 30, 2013, ECF No. 90. Shortly after the Court issued its Memorandum Opinion and Order, the United States Court of Appeals for the District of Columbia Circuit decided *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013). In *Bell*, the D.C. Circuit applied the de novo standard to a 60(b)(4) challenge to a default judgment in a FSIA case. *Id.* at 1181 ("A judgment remains void even after final judgment if the issuing court lacked subject-matter jurisdiction, regardless of whether there existed an 'arguable basis' for jurisdiction."). Although this precedent is not controlling, the D.C. Circuit applied existing case law to reach this outcome. *See id.* at 1182 (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 260 (3d Cir. 2008); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 437-40 (6th Cir. 2002); *MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658, 661-64 (5th Cir.1996); *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1469-71 (9th Cir. 1995); *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 (10th Cir. 1990)).

The Fifth Circuit has not addressed this issue but has expressed an analogous sentiment in a different context. In *MCI Telecommunications Corp. v. Alhadhood*, the Fifth Circuit explained that, by deferring a jurisdictional challenge, the foreign sovereign "only loses its right to defend on the

merits." 82 F.3d 658, 662 (5th Cir. 1996); *see also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Rep. of Venez.*, 575 F.3d 491, 503 (5th Cir. 2009) ("[I]n disputes involving foreign sovereigns, this Court has long favored the resolution of legal issues on the merits where possible." (citing *MCI Telecommunications Corp.*, 82 F.3d at 662)). In light of this, the Court finds that the Fifth Circuit will likely follow the D.C. Circuit's approach in *Bell*. Accordingly, the Court finds that the proper standard of review for a 60(b)(4) challenge based on the FSIA is de novo.[2]

### B.      Existence of the Joint Venture

Box asserts claims arising out of:  (1) his provision of real estate services and (2) the parties' alleged joint venture. Under the FSIA commercial activity exception, the Court has jurisdiction over Box's claims if the action is based upon "commercial activity that has a jurisdictional nexus with the United States." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing 28 U.S.C. § 1605(a)(1)-(2)). Activity of an agent is only attributable to the foreign state if the agent was acting with actual authority. *Dale v. Colagiovanni*, 443 F.3d 425, 428-29 (5th Cir. 2006). In analyzing whether the Consulate officials had actual authority to enter into a joint venture with Box, the Court assumed the existence of the joint venture. *See generally* Mem. Op. & Order, Oct. 30, 2013, ECF No. 90. Thus, the Consulate now argues that the Court erred in assuming the existence of the joint venture because the foreign state cannot give actual authority for a transaction that did not exist. Moreover, the Consulate contends that the evidence does not support a finding of actual authority for the joint venture. The Court discusses each argument in turn.

---

[2] The Court reaches the same result as to the provision of services under the de novo standard of review, *see* Part III.D. *infra*, and vacates its finding as to the joint venture claim for an independent reason discussed in Part III.B. *infra*.

7

1.     Did the Court Err in Accepting the Existence of the Joint Venture?

In denying the motion to set aside the default judgment, the Court expressed that it accepted Box's well-pleaded allegations of fact for the merits of Box's claims but not for the existence of subject matter jurisdiction. *See* Mem. Op. & Order 2 n.2, Oct. 30, 2013, ECF No. 90 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002)). In application, however, the Court assumed the existence of the joint venture. *See generally id.* The Consulate contends "the question of whether the joint venture existed, and in what form it existed, is intrinsic to the analysis of actual authority. The Consulate could never have authorized a joint venture that never existed and even if a joint venture did exist, the terms of the venture are critical to deciding what, if anything was authorized." Def.'s Mot. Recons.9, ECF No. 91.

Ordinarily, by defaulting, a defendant admits the plaintiff's well-pleaded factual allegations. *See, e.g.*, *Jackson*, 302 F.3d at 524 (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In reviewing a 60(b)(4) motion in the FSIA context, however, the Court is not required to accept the jurisdictional allegations in the complaint as true when those allegations are disputed by admissible evidence. *See Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enter.*, 57 F. Supp. 2d 863, 868-69 (N.D. Cal. 1998) ("If the Court were to assume the truth of the disputed factual allegations in Morgan's complaint, the Court might affirm an earlier decision that it lacked subject matter jurisdiction to render.").

In *Morgan*, the United States District Court for the Northern District of California relied on cases in the motion to dismiss context. *See id.* (citing *Adler v. Fed. Rep. of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)); *see also Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C. Cir. 2004) ("If

8

the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the FSIA exceptions to immunity invoked by the plaintiff. But if the defendant challenges the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." (citations omitted) (internal quotation marks omitted)); *O'Bryan v. Holy See*, 556 F.3d 361, 376-77 (6th Cir. 2009) (explaining that foreign sovereign could make a factual attack to prove that a FSIA exception did not apply).

Although the Fifth Circuit has not addressed this precise issue, it has held that a defendant may attack the merits for the purpose of establishing that a court lacked personal jurisdiction to enter judgment. *Jackson*, 302 F.3d at 524-29. Moreover, in the motion to dismiss context, the Fifth Circuit has also held that a court is not required to accept the jurisdictional allegations in the complaint as true when the defendant makes a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. Unit A Sept. 1981) ("Unlike in a facial attack where jurisdiction is determined upon the basis of the allegations of the complaint, accepted as true when a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."). Accordingly, the Court finds that the

Fifth Circuit would likely support the rationale of *Morgan*.[3] Here, the Consulate presented a factual attack as to the existence of the joint venture. *See generally* Def.'s Reply, ECF No. 77. Accordingly, the Court should have inquired into whether a joint venture was actually formed and will do so now.

2.    Did the Alleged Joint Venture Exist?

In light of the foregoing, the Court reviews whether a joint venture existed between Box and the Consulate under a de novo standard of review. If the parties did not enter into a joint venture, there is no commercial activity upon which the Court may invoke the commercial activity exception to the FSIA. In other words, the Court only has jurisdiction over the claims arising out of the purported joint venture if: (1) a joint venture was actually formed between the Consulate and Box and (2) the Consulate officials had actual authority to enter into the joint venture. The Consulate centered its attack on the permissiveness of joint ventures under Mexican law. *Id.* at 5-6 (stating Mexican law requires joint venture agreement to be in writing and does not allow joint ventures with foreign entities).[4] The Court, however, finds that the inquiry begins and ends with the creation of the alleged joint venture. Accordingly, the Court must first determine the relevant law governing the formation of the purported joint venture.

The Consulate contends that the Procedures Manual for the Acquisition and/or Leasing of

---

[3]   Although the Fifth Circuit rejected the Consulate's attempt to argue the merits of this case, the Fifth Circuit's discussion related to the Consulate's 60(b)(1) and 60(b)(6) challenges. 487 F. App'x at 887 ("Litigating such substantive arguments at this late hour is untimely and unfair."). In fact, the Fifth Circuit distinguished an attack on the merits from an attack rooted in the Court's jurisdiction. *Id.* (citing *Jackson*, 302 F.3d at 522).

[4] As noted previously, these requirements are not found in the Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the "Procedures"), which the Consulate offers as the sole source of authority for the purchase of property. *See* Mem. Op. & Order 11 n.7, Oct. 30, 2013, ECF No. 90. The Court need not reach this issue, however, as it resolves the question of whether the Consulate gave actual authority for the joint venture on the issue of formation.

10

Real Property Assets Abroad (the "Procedures") is the sole source of actual authority for the purchase of real property.[5] *See* Mot. Set Aside Default J. 6, ECF No. 22. The Procedures, however do not address the formation of a joint venture. When the proponent of foreign law fails to prove the foreign law, the law of the forum controls. *See Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006-07 (5th Cir. 1990); *see also Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Bostrom*, 347 F.2d 168, 174 n.3 (5th Cir. 1965) ("Modern commentators are more or less in general agreement that the law of the forum should apply when foreign law is not proved." (citing Nussbaum, The Problem of Proving Foreign Law, 50 Yale L.J. 1018 (1941); Currie, On the Displacement of the Law of the Forum, 58 Cal. L. Rev. 964 (1958); Ehrenzweig, Conflict of Laws 366 (1962); Nussbaum, Proving the Law of Foreign Countries, 3 Am. J. Comp. L. 60 (1954); Stern, Foreign Law in the Courts: Judicial Notice and Proof, 45 Calif. L. Rev. 23 (1957)). Accordingly, the Court will apply Texas law on the issue of whether a joint venture was formed.

A joint venture must be based on an express or implied agreement, and its existence is a question of law for the court. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 319 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 879 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). In addition to the intention of the parties, the elements of a joint venture are: "(1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise." *Smith v. Deneve*, 285 S.W.3d 904, 913

---

[5] The Consulate also originally referenced the Internal Standards for the Administration of Mexican Representation's Real Property Assets Abroad ("Standards"), but the Court finds that the Standards were not in effect at the time of the transaction between Box and the Consulate officials. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 102-03, ECF No. 78-1.

(Tex. App.—Dallas 2009, no pet.) (citing *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981)); *Ingram v. Deere*, 288 S.W.3d 886, 894 (Tex. 2009) (citing *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978)) (stating intention of the parties is a "prime element" in determining whether a joint venture exists).

Generally, joint ventures are indistinguishable from partnerships on the question of formation, and both are governed by the rules applicable to partnerships. *Id.*; *Ingram*, 288 S.W.3d at 894 n.2; Tex. Bus. Orgs. Code Ann. § 152.051(b) (stating "an association of two or more persons to carry on a business for profit as owners creates a partnership" regardless of whether the association is called a "joint venture"); *see also Pitts & Collard, L.L.P.*, 369 S.W.3d at 319 (citing *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 713 (Tex. App.—Houston [1st Dist.] 1988, writ denied)); *Harrington v. Harrington*, 742 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1987, no writ)) ("A joint venture is similar to a partnership, but it is ordinarily limited to a particular transaction or enterprise.").

The Texas Business Organizations Code ("TBOC") sets forth the following factors, which indicate the existence of a partnership:

> (1) receipt or right to receive a share of profits of the business;
>
> (2) expression of an intent to be partners in the business;
>
> (3) participation or right to participate in control of the business;
>
> (4) agreement to share or sharing:
>
> > (A) losses of the business; or
> >
> > (B) liability for claims by third parties against the business; and

> (5) agreement to contribute or contributing money or property to the
> business.

Tex. Bus. Orgs. Code Ann. § 152.052(a).[6]

The "most important factors" are the sharing of profits and control over the business. *See Ingram*, 288 S.W.3d at 896; *Big Easy Cajun Corp. v. Dall. Galleria Ltd.*, 293 S.W.3d 345, 348 (Tex. App.—Dallas 2009, pet. denied).  Courts, however, must examine the totality of the circumstances to determine whether a partnership exists.  *Rojas v. Duarte*, 393 S.W.3d 837, 841 (Tex. App.—El Paso 2012, pet. denied) (citing *Ingram*, 288 S.W.3d at 898).  No single factor is determinative and evidence in support of these factors is to be considered on a "continuum":

> On one end of the continuum, a partnership exists as a matter of law
> when conclusive evidence supports all five statutory factors. . . .  On
> the other end of the continuum, a partnership does not exist as a
> matter of law when there is no evidence as to any of the five factors,
> and conclusive evidence of only one factor will normally be
> insufficient to establish the existence of a partnership. . . . Points on
> the evidentiary continuum between these two ends are where the
> challenge lies in applying the totality-of the circumstances test."

*Rojas*, 393 S.W.3d at 841 (citations omitted); *see also Ingram*, 288 S.W.3d at 898 (explaining "difficulty of uniformly applying a totality-of-the-circumstances test"); *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 166 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (noting all factors should be considered and no single factor is determinative) (citing *Ingram*, 288 S.W.3d at 896-97).

In his affidavit in support of damages, Box attested that he formed "a partnership with a selected equity source" to purchase the three-building complex and planned to "simultaneously spin

---

[6] On January 1, 2010, the Texas Revised Partnership Act ("TRPA") expired and the TBOC now applies to all partnerships regardless of their formation date. *See Ingram*, 288 S.W.3d at 894 n.4. The TBOC's rules for determining partnership formation "are substantially the same" as those under the TRPA. *Id.*; *see also Malone v. Patel*, 397 S.W.3d 658, 670 n.4 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

off [the Property] to the Consulate for purchase so that they could use that single building as the

Dallas Mexican Consulate." Aff. Box ¶ 7, ECF No. 11. Box further attested:

> I created a partnership with Provident Realty Advisors for the express
> purpose of purchasing the River Bend Complex as part of a joint
> venture with the Consulate to enable the Consulate to obtain [the
> Property] . . . . Upon completion of the purchase of the River Bend
> Complex, the joint venture would immediately sell [the Property] to
> the Dallas Mexican consulate for $3,800,000, while the joint venture
> partnership would retain ownership interest in the two remaining
> buildings making up the River Bend Complex.

*Id.* ¶ 9. Lastly, Box attested, "as part of the joint venture agreement, I would have retained the other

two buildings comprising the River Bend Complex . . . . My interest in the joint venture that would

have owned the other two building [sic] was 50%." *Id.* ¶ 15.

On the face of his affidavit it is not clear whether Box formed a joint venture with the third-

party investor or the Consulate or both entities. In his April 8, 2013 deposition, Box testified that his

partner in the joint venture was Provident Realty Advisers ("PRA") and no one else. App. Def.'s

Reply Ex. 7 (Box Dep.), App. 780, ECF No. 78-10. In a later deposition, Box testified "PRA was

going to buy all three buildings," and "we put together the investor group to purchase all three

buildings relying on, of course, the Mexican Consulate to subsequently follow through and, in the

joint venture, purchase one of the three buildings." Suppl. App. Def.'s Suppl. Br. Ex. 1 (Box Dep.),

App. 12, ECF No. 85. Box then clarified that the Consulate was not purchasing the property *from*

the joint venture but as a part of the joint venture.[7] *Id.* at 20. Box testified, "[t]he joint venture was

between me and my company and the Consulate to purchase one building. The other two buildings

would be retained by Provident Realty Advisors, the investor group." *Id.* at 25; *see also id.* at 27

---

[7] Box's differing explanations of the alleged joint venture causes the Court to discount his credibility
on this issue.

("The investor group was prepared to execute a contract and close and subsequently close in reliance upon, you know, the Consulate being able to acquire the [Property]."); *id* at 28 ("Provident Realty Advisors, PRA River Bend, would purchase all three buildings and then subsequently sell one of three."). Box testified that his objective in the joint venture was to "find an investor group to purchase the three buildings in order for the joint venture—the Consulate to be able to attain or obtain the [Property]." *Id.* at 51.

The party seeking to prove the existence of the joint venture bears the burden of proving the matter. *See, e.g.*, *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 195 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Ben Fitzgerald Realty Co. v. Muller*, 846 S.W.2d 110, 120 (Tex. App.—Tyler 1993, writ denied); *Gutierrez v. Yancey*, 650 S.W.2d 169, 171 (Tex. App.—San Antonio 1983, no writ)). Further, the proponent must present evidence that *both* parties expressed an intent to be partners. *See Ingram*, 288 S.W.3d at 900; *Rojas*, 393 S.W.3d at 842; *Westside Wrecker Serv.*, 361 S.W.3d at 168; *see also* Tex. Bus. Org. Code § 152.052(a)(2) ("Factors indicating that persons have created a partnership include *the persons' . . . expression of an intent to be partners . . . .*" (emphasis added)). Evidence of expressions of intent include "the parties' statements that they are partners, one party holding the other party out as a partner on the business's letterhead or name plate, or in a signed partnership agreement." *Ingram*, 288 S.W.3d at 900.

Box has not shown any expression by the Consulate of an intent to enter a joint venture with him. He could not produce any writing demonstrating a joint venture among himself, the Consulate, and PRA to purchase the three-building complex. *See* Suppl. App. Def.'s Suppl. Br. Ex. 1 (Box Dep.), App. 14-18, 23, ECF No. 85. Box did submit an email from a Consulate official that alludes to the need to subdivide the complex: "Fortunately an investor appeared who is going to acquire the

real estate package and agreed to sell each building separately . . . ." App. Pl.'s Resp. Ex. 4 (Email), App. 74, ECF No. 70-1. This email, however, is consistent with the finding that the Consulate merely agreed to purchase the Property, not to enter a joint venture with the purpose of acquiring the three-building complex. Although the absence of this factor is not determinative, the Court finds that Box has failed to present evidence on the remaining factors as well.

The transaction most clearly outlined by Box, *see* note 6 *supra*, entails Box and the third-party investor purchasing the three-building complex and selling the Property to the Consulate. Box and/or the third-party investor would retain an interest in the remaining two buildings. Suppl. App. Def.'s Suppl. Br. Ex. 1 (Box Dep.), App. 25, ECF No. 85 ("The other two buildings would be retained by Provident Realty Advisors, the investor group."); Aff. Box ¶ 15, ECF No. 11. ("[A]s part of the joint venture agreement, I would have retained the other two buildings comprising the River Bend Complex . . . . My interest in the joint venture that would have owned the other two building [sic] was 50%."). The Consulate would not have any interest in the remaining two buildings. Thus, based on the foregoing factors, the joint venture, if any, was between Box and the third-party investor, not Box and the Consulate.

Notably, the Procedures require legal review prior to the execution of any contract for the purchase of real property. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 226-28, ECF No. 78-1. Accordingly, the Consulate was not authorized to enter a contract for the purchase of the Property absent approval by the legal department. *Id.* at 221 ("The Mexican Representations Abroad Holder [sic] must not sign any letter of intent, pure and financial sales and leasing contracts, without the opinion of Legal Counsel and the authorization of the Chief Clerk on behalf of the General Office of Real Property Assets and Material Resources."). As

16

discussed more fully in the Court's Memorandum Opinion and Order, the Consulate officials never submitted any contract to purchase the Property from Box or PRA, the third-party investor, for legal review. *See* Mem. Op. & Order. 13-16, Oct. 30, 2013, ECF No. 90. Instead, the Consulate obtained approval for a contract to purchase the Property from Setco. Mot. Set Aside Default J. Ex. 5 (Steps), App. 394, ECF No. 78-3.

Based on the foregoing, it is apparent why Box framed his claim as a joint venture rather than a straight purchase of the Property from Box—the Consulate officials lacked actual authority under the Procedures to enter into a contract for the Purchase of the property from Box. Nevertheless, Box bears the burden of proving that a joint venture existed, and he has failed to do so. Because a joint venture between Box and the Consulate was never formed, the Consulate could not have received actual authority for the transaction. Thus, the formation of the joint venture was not commercial activity that would except this claim from the FSIA's general provision of immunity, and the Court must dismiss this claim for lack of subject matter jurisdiction.

### C.      Burden of Proof

The Consulate also challenges the Court's allocation of the burden of proof. Although the Court alluded to the arguable basis standard in placing the burden on the Consulate, the Court finds that the Consulate nevertheless bears the ultimate burden under the de novo standard of review. "The FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies, and once shown, the sovereign bears the ultimate burden of persuasion to show the exception does not apply." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013) (citation omitted); *see also See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing *Stena Rederi AB v.*

17

*Comision de Contratos*, 923 F.2d 380, 390 n.14 (5th Cir. 1991)). Here, Box met his initial burden

of showing the commercial activity exception applied. The burden then shifted to the Consulate to

show the exception did not apply. Accordingly, the Court finds that the burden of proof was properly

placed on the Consulate.

### D.      Actual Authority for the Provision of Real Estate Services

Lastly, the Consulate argues the Court erred in finding the Consulate had actual authority to

engage Box as a real estate agent. For the reasons set forth in the Court's Memorandum Opinion and

Order, the Court rejects this argument. *See* Mem. Op. & Order. 13-16, Oct. 30, 2013, ECF No. 90;

*see also* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 285-89, ECF

No. 78-2 (authorizing the Consulate "to start the activities prior to the acquisition" of the Property);

*id.* Ex. 2 (Guzman Dep.), App. 72-74, ECF No. 78-1 (stating authorized activities included

"expenses and the retention or hiring of what needs to be hired; the things that need to be, or that are

needed during the process of purchase."). Because the Consulate presents no manifest error or newly

discovered evidence, its motion for reconsideration must be denied on this ground. *See Templet v.*

*HydroChem Inc.*, 366 F.3d 473, 478 (5th Cir. 2004) (stating a 59(e) motion "is not the proper vehicle

for rehashing evidence, legal theories, or arguments that could have been offered or raised before the

entry of judgment." (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

## IV.      CONCLUSION

Based on the foregoing, the Court concludes that it should have applied a de novo standard

of review to the 60(b)(4) motion and should have inquired into the existence of the joint venture.

Because these errors change the Court's decision, the Motion for Reconsideration is **GRANTED**

**in part** and **DENIED in part**. The Memorandum Opinion and Order denying the motion to set aside

18

default judgment is **VACATED in part**.

The default judgment entered against the Consulate on the joint venture claim is set aside.

The default judgment entered against the Consulate on the provision of real estate services stands.

The final judgment entered in this case is **VACATED**. An amended final judgment will issue

separately.

**SO ORDERED** on this **14th day** of **March, 2014**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

19