**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1010-O |
| | § | |
| DALLAS MEXICAN CONSULATE GENERAL, | § | |
| | § | |
| | § | |
| Defendant. | | |

**APPENDIX IN SUPPORT OF DALLAS MEXICAN CONSULATE GENERAL'S
NOTICE OF RESPONSE IN OPPOSITION TO
PLAINTIFF'S NOTICE OF FILING PROPOSED ORDER**

| Exhibit | Description |
|---|---|
| A | Petition for Writ of Certiorari filed in U.S. Supreme Court on December 23, 2015. |

Respectfully submitted,

/s/ Debra J. McComas

Debra J. McComas
State Bar No. 00794261
Richard D. Anigian
State Bar No. 01264700
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  (214) 651-5000
Telecopier:  (214) 651-5940

**ATTORNEYS FOR DEFENDANT
DALLAS MEXICAN CONSULATE
GENERAL**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served on the following attorneys of record to the above cause in accordance with the Federal Rules of Civil Procedure on the 29th day of December, 2015:

Edward Jason Dennis
Samuel B. Hardy, IV
LYNN TILLOTSON PINKER & COX, LLP
2100 Ross Avenue
Suite 2700
Dallas, TX 75201
Fax:  (214) 981-3839

/s/ Debra J. McComas

Debra J. McComas

# Exhibit A

No. _____

# In the Supreme Court of the United States

---

DALLAS MEXICAN CONSULATE GENERAL,

*Petitioner*,

v.

BLAKE BOX,

doing business as Blake Box Company,

*Respondent.*

---

*On Petition for Writ of Certiorari to the
United States Court of Appeals for the Fifth Circuit*

---

## PETITION FOR WRIT OF CERTIORARI

---

Debra J. McComas
 *Counsel of Record*
HAYNES AND BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, Texas 75219-7673
(214) 651-5000
debbie.mccomas@haynesboone.com

*Attorney for Petitioner*

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

i

# QUESTIONS PRESENTED

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA") grants foreign sovereigns and their instrumentalities immunity from suit in the United States, unless one of a limited number of statutory exceptions applies. The first clause of the commercial-activity exception provides, *inter alia*, that United States courts have subject-matter jurisdiction over claims that are "based upon a commercial activity carried on in the United States *by the foreign state.*" *Id.* § 1605(a)(2) (emphasis added). Courts have routinely held that for commercial activity to be "carried on in the United States by a foreign state," the foreign state must authorize the activity. *See, e.g., Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir. 2006).

The questions presented by this Petition are:

1. Whether evidence showing the non-existence of the alleged commercial activity may be considered in determining if a foreign state has authorized an activity under the first clause of the commercial-activity exception to the FSIA, 28 U.S.C. § 1605(a)(2).

2. Whether entry of a default judgment forecloses consideration under Rule 60(b)(4) of the Federal Rules of Civil Procedure of evidence showing the lack of authority for an alleged commercial activity under the first clause of the commercial-activity exception to the FSIA.

3. Whether the law-of-the-case doctrine bars consideration of facts developed after the case is remanded by the circuit court for jurisdictional discovery.

ii

## PARTIES TO THE PROCEEDINGS
## AND RULE 29.6 CORPORATE
## DISCLOSURE STATEMENT

Petitioner-Defendant is Dallas Mexican Consulate General ("Consulate"), an arm of the United Mexican States. Pursuant to Supreme Court Rule 29.6, the Consulate states that it is not a corporation and does not issue stock. Therefore, there is no parent or publicly-held company owning 10% or more of the corporation's stock.

Respondent-Plaintiff is Blake Box, an individual doing business as Blake Box Company ("Box").

iii

**TABLE OF CONTENTS**

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . .  i

PARTIES TO THE PROCEEDINGS AND RULE 29.6 CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . vii

PETITION FOR A WRIT OF CERTIORARI . . . . . . 1

OPINIONS BELOW . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATUTORY PROVISIONS INVOLVED . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . 3

REASONS FOR GRANTING THE PETITION . . . . 9

I.   THE FIFTH CIRCUIT IMPROPERLY STRETCHED THE BOUNDS OF THE FSIA BY REFUSING TO CONSIDER EVIDENCE SHOWING NO ACTUAL AUTHORITY FOR A NON-EXISTENT COMMERCIAL ACTIVITY, CREATING A CIRCUIT SPLIT AND ADDING TO CONFUSION AMONG THE CIRCUIT COURTS. . . . . . . . . . . . . . . . 10

     A. The Fifth Circuit's refusal to consider evidence disproving a commercial activity because that evidence may also reach the merits extends jurisdiction beyond the bounds of the FSIA. . . . . . . . . . . . . . . . . . 10

iv

B. The Fifth Circuit's deference to facts established on default in determining whether the commercial-activity exception to FSIA immunity applies improperly prioritizes discretionary rules over the statutory immunity mandated by the FSIA, expands a Circuit split, and warrants correction by this Court. . . . . . 17

II.   THE FIFTH CIRCUIT IMPROPERLY EXPANDED THE LAW-OF-THE-CASE DOCTRINE TO PRECLUDE REVIEW OF JURISDICTION, EVEN WHEN NEW EVIDENCE AND FACT FINDINGS ARE DEVELOPED ON REMAND, CREATING CONFUSION AMONG THE CIRCUITS AND WARRANTING CORRECTION BY THIS COURT. . . . . . . . . . . . . . . . . . . . . . . . 23

A. There is confusion among the circuits as to how law of the case applies to questions of jurisdiction. . . . . . . . . . . . . . . . . . . . . . 24

B. At a minimum, law of the case should not preclude review of new evidence and factual findings bearing on jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . 28

III.  THE FOREIGN POLICY IMPLICATIONS AND RADICAL EXPANSION OF JURISDICTION OVER FOREIGN STATES COUNSELS FOR IMMEDIATE REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

v

APPENDIX

Appendix A   Opinion and Judgment in the United
States Court of Appeals for the Fifth
Circuit
(August 19, 2015) . . . . . . . . . . . . . App. 1

Appendix B   Memorandum Opinion and Order in
the United States District Court for
the Northern District of Texas Dallas
Division
(March 14, 2014)  . . . . . . . . . . . App. 20

Appendix C   Final Judgment in the United States
District Court for the Northern
District of Texas Dallas Division
(March 14, 2014)  . . . . . . . . . . . App. 43

Appendix D   Memorandum Opinion and Order in
the United States District Court for
the Northern District of Texas Dallas
Division
(October 30, 2013)  . . . . . . . . . . App. 45

Appendix E   Opinion in the United States Court of
Appeals for the Fifth Circuit
(August 21, 2012) . . . . . . . . . . . App. 72

Appendix F   Memorandum Opinion and Order in
the United States District Court for
the Northern District of Texas Dallas
Division
(December 23, 2010)  . . . . . . . . App. 87

vi

Appendix G   Final Judgment in the United States
             District Court for the Northern
             District of Texas Dallas Division
             (December 23, 2010)  . . . . . . . . App. 106

Appendix H   Memorandum Opinion and Order in
             the United States District Court for
             the Northern District of Texas Dallas
             Division
             (September 30, 2009) . . . . . . . . App. 108

Appendix I   Final Judgment in the United States
             District Court for the Northern
             District of Texas Dallas Division
             (September 30, 2009) . . . . . . . . App. 125

Appendix J   Order Denying Rehearing in the
             United States Court of Appeals for the
             Fifth Circuit
             (September 24, 2015) . . . . . . . . App. 127

Appendix K   Statutory Provision Involved

             28 U.S.C. § 1605 . . . . . . . . . . . App. 129

vii

## TABLE OF AUTHORITIES

### Cases

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) . . . . . . . . . . . 26, 28

*Am. Telecom Co., L.L.C. v. Republic of Lebanon*,
  501 F.3d 534 (6th Cir. 2007) . . . . . . . . . . . . . . 34

*Anderson v. City of Bessemer City, N.C.*,
  470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . . . . . . 30

*Araya-Solorzano v. Gov't of Republic of Nicaragua*,
  562 F. App'x 901 (11th Cir. 2014) . . . . . . . . . . . 22

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) . . . . . . . . . . . . . . . 10, 11, 32

*Arizona v. California*,
  460 U.S. 605 (1983) . . . . . . . . . . . . . . . . . . . . . . 24

*Arriba Ltd. v. Petroleos Mexicanos*,
  962 F.2d 528 (5th Cir. 1992) . . . . . . . . . . . . . . . 35

*Bank Markazi, The Cent. Bank of Iran v. Peterson*,
  No. 14-770 (2014) (petition granted
  Oct. 1, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Bell Helicopter Textron, Inc. v. Islamic Republic of
  Iran*,
  734 F.3d 1175 (D.C. Cir. 2013) . . . . . . . . . . 21, 34

*Bishop v. Smith*,
  760 F.3d 1070 (10th Cir. 2014) . . . . . . . 24, 25, 27

*Brewer v. Socialist People's Republic of Iraq*,
  890 F.2d 97 (8th Cir. 1989) . . . . . . . . . . . . . . . . 35

viii

*Butler v. Sukhoi Co.*,
  579 F.3d 1307 (11th Cir. 2009) . . . . . . . . . . . . . 34

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . 25, 26

*Conkwright v. AC&S Inc.*,
  106 F.3d 407 (9th Cir. 1996) (unpublished
  decision) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Dale v. Colagiovanni*,
  443 F.3d 425 (5th Cir. 2006) . . . . . . . . . . . . . . . . i

*Demahy v. Schwarz Pharma, Inc.*,
  702 F.3d 177 (5th Cir. 2012) . . . . . . . . . . . . . . . 29

*DiLaura v. Power Auth. of State of N.Y.*,
  982 F.2d 73 (2d Cir. 1992) . . . . . . . . . . . . . . . . . 27

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) . . . . . . . . . . . . . . . . . . . . . 32

*Enahoro v. Abubakar*,
  408 F.3d 877 (7th Cir. 2005) . . . . . . . . . . . . . . . 19

*In re Estate of Ferdinand E. Marcos Human Rights
  Litig.*,
  978 F.2d 493 (9th Cir. 1992) . . . . . . . . . . . . . . . 19

*In re Estate of Ferdinand Marcos, Human Rights
  Litig.*,
  25 F.3d 1467 (9th Cir. 1994) . . . . . . . . . . . . . . . 19

*Ferreira v. Borja*,
  93 F.3d 671 (9th Cir. 1996) (per curiam) . . . . . 25

*Filetech S.A. v. France Telecom S.A.*,
  304 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . 13

ix

*First Fid. Bank, N.A. v. Gov't of Antigua &*
*Barbuda-Permanent Mission,*
877 F.2d 189 (2d Cir. 1989) . . . . . . . . . . . *passim*

*First Nat'l City Bank v. Banco Para el Comercio*
*Exterior de Cuba,*
462 U.S. 611 (1983) . . . . . . . . . . . . . . . . . . . . . . 32

*Free v. Abbott Labs., Inc.,*
164 F.3d 270 (5th Cir. 1999) . . . . . . . . . . . . . . . 25

*Gibbons v. Udaras na Gaeltachta,*
549 F. Supp. 1094 (S.D.N.Y. 1982) . . . . . . . . . . 33

*Greenpeace, Inc. v. France,*
946 F. Supp. 773 (C.D. Cal. 1996) . . . . . . . . . . . 16

*Gregorian v. Izvestia,*
871 F.2d 1515 (9th Cir. 1989) . . . . . . . . . . . . . . 35

*Guevara v. Republic of Peru,*
608 F.3d 1287 (11th Cir. 2010) . . . . . . . . . . . . . 30

*Int'l Hous. Ltd. v. Rafidain Bank Iraq,*
893 F.2d 8 (2d Cir. 1989) . . . . . . . . . . . . . . . . . 35

*Jackson v. FIE Corp.,*
302 F.3d 515 (5th Cir. 2002) . . . . . . . . . . . . . . . 20

*Jackson v. People's Republic of China,*
794 F.2d 1490 (11th Cir. 1986) . . . . . . . . . . 21, 22

*Jerez v. Republic of Cuba,*
775 F.3d 419 (D.C. Cir. 2014), *cert. denied,*
136 S. Ct. 38 (2015) . . . . . . . . . . . . . . . . . . 21, 34

*Joseph v. Office of the Consulate Gen. of Nigeria,*
830 F.2d 1018 (9th Cir. 1987) . . . . . . . . . . . 15, 16

x

*LaShawn A. v. Barry,*
    69 F.3d 556 (D.C. Cir. 1995) . . . . . . . . . . . . . . . 29

*LaShawn A. v. Barry,*
    87 F.3d 1389 (D.C. Cir. 1996) (en banc) . . . 25, 29

*Liu v. Republic of China,*
    892 F.2d 1419 (9th Cir. 1989) . . . . . . . . . . . . . 16

*MCI Telecomms. Corp. v. Alhadhood,*
    82 F.3d 658 (5th Cir. 1996) . . . . . . . . . . . . . . . 35

*Ministry of Def. & Support for Armed Forces of*
    *Islamic Republic of Iran v. Elahi,*
    546 U.S. 450 (2006) . . . . . . . . . . . . . . . . . . . . . 32

*Ministry of Def. & Support for Armed Forces of*
    *Islamic Republic of Iran v. Elahi,*
    556 U.S. 366 (2009) . . . . . . . . . . . . . . . . . . . . . 31

*OBB Personenverkehr AG v. Sachs,*
    No. 13-1067, __ S. Ct. __ (2015) . . . . . . . . . . . . 31

*Permanent Mission of India v. City of New York,*
    551 U.S. 193 (2007) . . . . . . . . . . . . . . . . . . . . . 31

*Phaneuf v. Indonesia,*
    106 F.3d 302 (9th Cir. 1997) . . . . . . . . . . . . . . . 4

*Phx. Consulting Inc. v. Republic of Angola,*
    216 F.3d 36 (D.C. Cir. 2000) . . . . . . . . . . . . 21, 34

*Powerex Corp. v. Reliant Energy,*
    551 U.S. 224 (2007) . . . . . . . . . . . . . . . . . . . . . 31

*Practical Concepts, Inc. v. Republic of Bolivia,*
    613 F. Supp. 863 (D.D.C. 1985), *vacated,*
    *Practical Concepts,* 811 F.2d 1543 . . . . . . . 20, 21

xi

*Practical Concepts, Inc. v. Republic of Bolivia*,
  811 F.2d 1543 (D.C. Cir. 1987) . . . . . . . 17, 20, 21

*Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*,
  123 F.3d 111 (3d Cir. 1997) . . . . . . . . . . . . 26, 28

*"R" Best Produce, Inc. v. DiSapio*,
  540 F.3d 115 (2d Cir. 2008) . . . . . . . . . . . . . . . 20

*Red Rock v. Henry*,
  106 U.S. 596 (1883) . . . . . . . . . . . . . . . . . . . . . . 11

*Republic of Argentina v. NML*,
  134 S. Ct. 2250 (2014) . . . . . . . . . . . . . . . . . . . 31

*Republic of Argentina v. Weltover*,
  504 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . 32, 33

*Republic of Austria v. Altman*,
  541 U.S. 677 (2004) . . . . . . . . . . . . . . . . . . . . . 32

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) . . . . . . . . . . . . . . . . . . . . . 31

*Republic of Phillippines v. Pimentel*,
  553 U.S. 851 (2008) . . . . . . . . . . . . . . . . 11, 12, 31

*Robinson v. The Gov't of Malaysia*,
  269 F.3d 133 (2d Cir. 2001) . . . . . . . . . . . . *passim*

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) . . . . . . . . . . . . . . . . . . . . . 31

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) . . . . . . . . . . . . . . . 10, 32, 33

*S.C. State Ports Auth. v. Silver Anchor, S.A.*,
  23 F.3d 842 (4th Cir. 1994) . . . . . . . . . . . . . . . . 29

xii

*Schoeps v. Freistaat Bayern,*
   611 F. App'x 32 (2d Cir. 2015) . . . . . . . . . . . . . . 13

*Shakman v. Dunne,*
   829 F.2d 1387 (7th Cir. 1987) . . . . . . . . . . 27, 28

*Simpson v. Socialist People's Libyan Arab Jamahiriya,*
   326 F.3d 230 (D.C. Cir. 2003) . . . . . . . . . . . . . 34

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.,*
   204 F.3d 384 (2d Cir. 2000) . . . . . . . . . . . . 34, 35

*United States v. Tynen,*
   78 U.S. (11 Wall.) 88 (1871) . . . . . . . . . . . . . . . 11

*United States v. U.S. Smelting Ref. & Min. Co.,*
   339 U.S. 186 (1950) . . . . . . . . . . . . . . . . . . . . . 24

*Velasco v. Indonesia,*
   370 F.3d 392 (4th Cir. 2004) . . . . . . . . . . . . . . . 4

*Verlinden B.V. v. Cent. Bank of Nigeria,*
   461 U.S. 480 (1983) . . . . . . . . . . . . . . . . . . 13, 32

*Zappia Middle E. Constr. Co., Ltd. v. Abu Dhabi,*
   215 F.3d 247 (2d Cir. 2000) . . . . . . . . . . . . . . . 12

**Statutes**

28 U.S.C. § 1254(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §§ 1602 *et seq.* . . . . . . . . . . . . . . . . . . . . . i, 2

28 U.S.C. § 1603(d) . . . . . . . . . . . . . . . . . . . . . . . . 30

28 U.S.C. § 1605(a)(2) . . . . . . . . . . . . . . . . . . . i, 2, 33

28 U.S.C. § 1605(a)(3) . . . . . . . . . . . . . . . . . . . . . . 12

xiii

## Rules

FED. R. CIV. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . 13

FED. R. CIV. P. 19 . . . . . . . . . . . . . . . . . . . . . . . 11, 12

FED. R. CIV. P. 52(a)(6) . . . . . . . . . . . . . . . . . . . . . 30

FED. R. CIV. P. 60(b)(4) . . . . . . . . . . . . . . . . . *passim*

FED. R. CIV. P. 60(b)(6) . . . . . . . . . . . . . . . . . . . . 5, 22

SUP. CT. R. 29.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

## Other Authorities

George K. Foster, *When Commercial Meets Sovereign: A New Paradigm for Applying the Foreign Sovereign Immunities Act in Crossover Cases*, 52 HOUS. L. REV. 361 (2014) . . . . . . . . . . 33

H.R. Rep. No. 94-1487 (1976) . . . . . . . . . . . . . . . . . 33

Jeffrey Jacobson, *Trying to Fit A Square Peg into A Round Hole: The Foreign Sovereign Immunities Act and Human Rights Violations*, 19 WHITTIER L. REV. 757 (1998) . . . . . . . . . . . . . . . . . . . . . . . 32

Jonathan C. Lippert, *Vulture Funds: The Reason Why Congolese Debt May Force A Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. INT'L L. REV. 1 (2008) . . . . . . . . . . . . . . . . . . . . . . . 33

RESTATEMENT (FIRST) OF JUDGMENTS §§ 5–7 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . 21

RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 459 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 17

xiv

Joseph M. Terry, *Jurisdictional Discovery Under the Foreign Sovereign Immunities Act*, 66 U. CHI. L. REV. 1029 (1999) . . . . . . . . . . . . . . . . . . . . . . 12

Wright & Miller, 18B FED. PRAC. & PROC. § 4478 (2d ed. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Dallas Mexican Consulate General submits this petition for a writ of certiorari to review the judgment of the United States Court of Appeals for the Fifth Circuit.

## OPINIONS BELOW

This Petition comes to the Court after two appeals to the Fifth Circuit Court of Appeals.

The district court's original opinion setting aside the default judgment is unreported and reproduced at Appendix ("App.") 108. The opinion was issued by the Honorable Reed O'Connor, U.S. District Court for the Northern District of Texas.

The Fifth Circuit opinion remanding the case for additional jurisdictional discovery is unreported and reproduced at App. 72. The opinion is per curiam, with the panel consisting of Judges Haynes, Elrod, and Reavley.

The district court's opinion after remand, again setting aside the default judgment in substantial part, is unreported and reproduced at App. 45. The opinion was issued by the Honorable Reed O'Connor, U.S. District Court for the Northern District of Texas.

The Fifth Circuit's panel per curiam opinion directly at issue before this Court—the opinion reversing the district court's last order setting aside the default judgment—is unreported and reproduced at App. 1. The panel consisted of Judges Smith, Elrod, and King.

The denial of the petition for panel rehearing is unreported and reproduced at App. 127.

2

## JURISDICTION

The Fifth Circuit issued its opinion on August 19, 2015. App. 1. The petition for rehearing was denied on September 24, 2015. App. 127. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTORY PROVISIONS INVOLVED

This case involves the interplay between Rule 60(b)(4) of the Federal Rules of Civil Procedure and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"), and in particular, the first clause of the commercial-activity exception to the FSIA, 28 U.S.C. § 1605(a)(2).

The first clause of the commercial-activity exception to the FSIA provides:

(a)    A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; . . . .

28 U.S.C. § 1605(a)(2). The Appendix reproduces the relevant statute in its entirety.

Rule 60(b)(4) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

(b)    **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative

3

> from a final judgment, order, or
> proceeding for the following reasons:
>
> . . .
>
> (4) the judgment is void; . . . .

FED. R. CIV. P. 60(b)(4).

## STATEMENT OF THE CASE

This case comes to the Court after a second appeal to the United States Court of Appeals for the Fifth Circuit. Because the Fifth Circuit's ultimate ruling relates back to a default judgment entered against the Consulate, the following summary encompasses the complete procedural history of the parties' dispute.

Respondent Blake Box, a licensed real estate broker, sued the Dallas Mexican Consulate General ("Consulate") after it moved into a new building. Respondent alleged that consular officials had earlier agreed orally to enter into a joint venture with him, whereby he and his investors would buy the three-building complex in which the Consulate's new building was situated and then sell one of those buildings back to the Consulate. Respondent's claims included breach of contract, fraud/fraudulent inducement, breach of fiduciary duty, unjust enrichment, and quantum meruit.

Service through the Mexican authorities was rejected as improper because the request for service did not comply with the provisions of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Therefore, the Consulate was never served and it did not answer

4

or appear in the case. Respondent then moved for default judgment. Before entering the default judgment, the district court required Respondent to address the FSIA's application.  Respondent claimed that the first clause of the commercial-activity exception applied. Accepting that argument, the district court entered a default judgment against the Consulate for approximately $3 million.

After the time for appeal had passed, the Consulate moved to set aside the default judgment under Rule 60(b)(4) for, *inter alia*, lack of subject-matter jurisdiction under the FSIA. The Consulate contended that the alleged commercial activity was not "carried on in the United States *by the foreign state*" because the Mexican government never authorized the alleged joint venture claimed by Respondent.[1] The Consulate supported its motion with affidavit testimony and evidence reflecting the procedures necessary for the Mexican government to approve a real property purchase. The affidavit averred that the Mexican government never approved any transaction with Respondent.

Respondent countered that the Consulate's purchase of the same property from a different seller under conditions similar to those alleged was evidence

---

[1] A circuit split exists on the question of whether actual or apparent authority is sufficient to show activity carried on by the foreign state. *Compare Velasco v. Indonesia*, 370 F.3d 392, 400 (4th Cir. 2004) (requiring actual authority) *and Phaneuf v. Indonesia*, 106 F.3d 302, 308 (9th Cir. 1997) (same) *with First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 193 (2d Cir. 1989) (requiring apparent authority). Here, the parties do not contest application of the actual authority standard.

5

of actual authority for the alleged transaction. Respondent also requested jurisdictional discovery.

The district court granted the Consulate's motion, concluding that it lacked subject-matter jurisdiction, and set aside the default judgment without allowing discovery. App. 87. Respondent appealed.

On appeal, the Fifth Circuit held that the district court abused its discretion "in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority." App. 86. Accordingly, the Fifth Circuit reversed the district court's order setting aside the default judgment and remanded for jurisdictional discovery.[2] App. 86.

On remand, the parties engaged in discovery focused on whether actual authority existed for the transaction Respondent alleged. The Consulate produced its entire file regarding the authorization process for the purchase of its new building, and it presented two consular officials for deposition. Respondent was also deposed, and certain evidence was discovered from third parties. The parties then supplemented their pleadings with this newly-discovered evidence.

---

[2] The Fifth Circuit rejected all alternative grounds for setting aside the default judgment, including challenges to service of process in contravention of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, and for good cause under Rule 60(b)(6) of the Federal Rules of Civil Procedure. App. 81-86.

6

In reevaluating the Consulate's Rule 60(b)(4) motion, the district court originally applied an "arguable basis" standard of review. App. 51-53. Under that standard, the court held that the commercial-activity exception applied because there was at least an "arguable basis" to support Respondent's theory. App. 53. The Consulate moved for reconsideration, contending that the district court applied the wrong legal standard and failed to account for newly-discovered evidence showing that the Consulate could not have approved Respondent's alleged transaction because that transaction never even existed and thus, could not have been submitted to the Mexican government for its approval. App. 28. The Consulate further argued that the evidence did not support a finding of actual authority for the joint venture. App. 28.

On reconsideration, the district court addressed both of the Consulate's arguments. App. 28. The district court ultimately agreed with the Consulate and set aside the default judgment on all counts, save one claim for real estate services in an amount less than $100,000, which is not at issue here. App. 28. At the outset, the district court found that Respondent's inconsistent stories about the details of the joint venture "cause[] the Court to discount his credibility on this issue." App. 37. The district court further criticized Respondent for failing to present evidence supporting his alleged joint venture. Based on the newly-discovered evidence and Respondent's lack of credible evidence, the court found the following:

7

- "[Respondent] has not shown any expression by the Consulate of an intent to enter a joint venture with him." App. 38.

- "[Respondent] could not produce any writing demonstrating a joint venture among himself, the Consulate, and [other investors] to purchase the three-building complex." App. 38.

- "[T]he joint venture, if any, was between [Respondent] and the third-party investor, not [Respondent] and the Consulate." App. 39.

- "[T]he Procedures [issued by the Mexican government] require legal review prior to the execution of any contract for the purchase of real property. Accordingly, the Consulate was not authorized to enter a contract for the purchase of the Property absent approval by the legal department." App. 39 (citation omitted).

- "[T]he Consulate officials never submitted any contract to purchase the Property from [Respondent] or . . . the third party investor, for legal review." App. 40.

- "[T]he Consulate officials lacked actual authority under the Procedures to enter into a contract for the Purchase of the property from [Respondent]." App. 40.

In light of these findings, the district court reached two conclusions: (1) the Consulate lacked actual authority to enter into a contract for the purchase of

8

property from Respondent, and (2) the Consulate could not have received actual authority for the alleged transaction because no joint venture was ever formed between Respondent and the Consulate. App. 40. Respondent again appealed.

The Fifth Circuit reversed the district court's order setting aside the default judgment (the "Decision"). App. 1. The per curiam, unpublished Decision purports to rest on law-of-the-case principles: The court held that the existence of a joint venture became law of the case after the first appeal and, therefore, the district court exceeded the scope of the mandate by considering on remand whether the alleged joint venture that formed the basis of the commercial activity could have existed. App. 7-10. The Fifth Circuit's application of these principles, however, largely turns on its underlying conclusion that the default judgment resolved the facts of the case—for merits *and* jurisdictional purposes—and could never be revisited, even in light of the newly-discovered evidence developed during jurisdictional discovery. App. 11-16. The operative portion of the Decision is as follows:

> [W]hether the Consulate Officials had authority from the Mexican government to form a joint venture is a separate question from whether they exercised that authority in their dealings with Box. Simply put, here, the first question was answered by the district court on remand in [the portion of its first opinion on remand that was superseded by the order granting the Consulate's motion for reconsideration] and the second question was defaulted by the Consulate.

9

App. 16; *see also* App. 13 ("Here, it is not just that the facts would be viewed in the light most favorable to Box in later proceedings, but they have been conclusively admitted through the Consulate's default.").

The Consulate moved for rehearing, which was denied.

## REASONS FOR GRANTING THE PETITION

Relying on default judgment and law-of-the-case principles, the Fifth Circuit refused to consider evidence showing not only the absence of actual authority by the Consulate for Respondent's alleged commercial activity, but also the non-existence of the alleged commercial activity itself. The Fifth Circuit's ruling leads to the absurd result of holding a foreign sovereign to a judgment for which no jurisdiction could possibly exist. The FSIA's broad grant of immunity does not countenance such a result.

Had the Fifth Circuit deferred to the district court's fact findings and the evidence it ordered the parties to develop on remand, it necessarily would have concluded that Respondent failed to show commercial activity carried on by a foreign state, as required by the FSIA. The obligation to assess the existence of an exception to FSIA immunity supersedes facts otherwise deemed for purposes of default judgment. The Fifth Circuit's Decision to the contrary improperly prioritizes common-law principles and discretionary rules above the absolute immunity afforded by the FSIA and conflicts with the FSIA, this Court's prior precedent, and other circuit courts that have addressed the question.

10

I.  **THE FIFTH CIRCUIT IMPROPERLY STRETCHED THE BOUNDS OF THE FSIA BY REFUSING TO CONSIDER EVIDENCE SHOWING NO ACTUAL AUTHORITY FOR A NON-EXISTENT COMMERCIAL ACTIVITY, CREATING A CIRCUIT SPLIT AND ADDING TO CONFUSION AMONG THE CIRCUIT COURTS.**

   A. **The Fifth Circuit's refusal to consider evidence disproving a commercial activity because that evidence may also reach the merits extends jurisdiction beyond the bounds of the FSIA.**

As this Court has emphasized, the FSIA is the *"sole* basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (emphasis added). Immunity under the FSIA is broad and absolute unless the plaintiff is able to show application of one of the narrow exceptions. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state."). By citing to default judgment and law-of-the-case principles to excuse its refusal to consider evidence developed after remand for jurisdictional discovery, the Fifth Circuit contradicted this Court's precedent that the FSIA is the "sole basis" for obtaining jurisdiction over a foreign state. The Decision also created a circuit split.

11

This Court has stressed the need to give full effect to foreign sovereign immunity to promote comity interests. *Republic of Phillippines v. Pimentel*, 553 U.S. 851, 866 (2008). Applying this mandate, the Court has prioritized the protection of sovereign immunity over other rules governing lawsuits in U.S. courts. For instance, in considering the interplay of the Federal Tort Claims Act and the FSIA, this Court held,

> We think that Congress' decision to deal comprehensively with the subject of foreign sovereign immunity in the FSIA, and the express provision in § 1604 that 'a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605-1067,' preclude a construction of the Alien Tort Statute that permits the instant suit.

*Amerada Hess Shipping Corp.*, 488 U.S. at 438 (citing *Red Rock v. Henry*, 106 U.S. 596, 601-02 (1883) and *United States v. Tynen*, 78 U.S. (11 Wall.) 88, 92 (1871)).

Similarly, in addressing the interplay between necessary parties under Rule 19 of the Federal Rules of Civil Procedure and foreign sovereign immunity, this Court held that "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Pimentel*, 533 U.S. at 867. In *Pimentel*, this meant that once foreign sovereign immunity was established for certain defendants, the entire lawsuit had to be dismissed to avoid adjudicating issues that impacted the immune foreign sovereigns. *Id.* This

12

Court recognized that "Rule 19 cannot be applied in a vacuum, and it may require some preliminary assessment of the merits of certain claims," but once foreign sovereign immunity is established, it is error to adjudicate claims against that foreign sovereign. *Id.* at 868.

Consistent with these authorities, commentators have recognized that "[i]n some instances, to assert jurisdiction under the FSIA, plaintiffs must proffer evidence identical to that needed to prove the substantive claim." Joseph M. Terry, *Jurisdictional Discovery Under the Foreign Sovereign Immunities Act*, 66 U. CHI. L. REV. 1029, 1037 (1999). Certain circuit courts to address the question follow this principle and reach the merits as necessary to address whether an exception to foreign sovereign immunity applies, even at the beginning of a case.

For instance, the Second Circuit has a long-established precedent of reaching the substantive merits as necessary to determine whether sovereign immunity applies. *See Robinson v. The Gov't of Malaysia*, 269 F.3d 133, 143 (2d Cir. 2001) ("Courts are therefore regularly called upon to inquire into substantive state or federal law to resolve the threshold question of subject matter jurisdiction under the FSIA.").[3] The Second Circuit explained in *Robinson*

---

[3] *See also Zappia Middle E. Constr. Co., Ltd. v. Abu Dhabi*, 215 F.3d 247, 250-52 (2d Cir. 2000) (holding that the application of the FSIA's "expropriation" exception, 28 U.S.C. § 1605(a)(3), required a determination whether the defendant's conduct violated international law and, in that case, whether principles of corporate law permitted the plaintiff to pierce the corporate veil of a foreign state-owned corporation even though the same question would

13

that "every suit against a foreign sovereign 'necessarily raises questions of substantive law at the very outset,' namely, whether the court possesses federal subject-matter jurisdiction under one of the FSIA's exclusive statutory bases." *Robinson*, 269 F.3d at 139 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 [492] (1983)). Thus, the Second Circuit concluded, "federal courts therefore inquire at the 'threshold of every action' against a foreign state whether the exception to sovereign immunity that the plaintiff alleges permits the exercise of federal jurisdiction." *Id.* at 139 (quoting *Verlinden*, 461 U.S. at 493).

Applying these principles in the context of a Rule 12(b)(1) challenge to subject-matter jurisdiction under the FSIA, the *Robinson* court recognized that "[i]nevitably, the jurisdiction and merits inquiries overlap to the extent that each requires examination of the applicable substantive law." 269 F.3d at 142.

---------------

have been presented on the merits); *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 194 (2d Cir. 1989) (reviewing New York agency law in the context of a motion to vacate a default judgment pursuant to Rule 60(b)(4) for lack of subject-matter jurisdiction under the FSIA's commercial-activity exception to decide whether Antigua's ambassador could bind its government by his signature on loan papers, even though the plaintiff would have been required to meet the same standard and make the same factual showing to prevail on the merits); *see also Schoeps v. Freistaat Bayern*, 611 F. App'x 32 (2d Cir. 2015) (requiring deference to the district court's fact findings after a three-day evidentiary hearing on whether activity occurred in the United States so as to invoke the FSIA immunity); *Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180 (2d Cir. 2002) (addressing the merits in deciding whether Filetech's conduct had a direct effect on U.S. competitors so as to invoke the FSIA's commercial-activity exception).

14

Applying New York tort-law principles, the *Robinson* court considered the ultimate substantive merits question in determining whether foreign sovereign immunity applied. In that case, the government of Malaysia had purchased a building where a security guard slipped and fell on materials left by a contractor. In considering whether to apply the non-discretionary tort exception to FSIA immunity, the court considered whether Malaysia, as a property owner, could be liable in tort for the plaintiff's injuries. Because the plaintiff failed to prove any conduct by the government of Malaysia that would impose a tort duty on it as the property owner, the non-commercial tort exception to FSIA immunity did not apply. *Id.* at 146.

The Second Circuit explained its reasons for reaching the merits as follows:

> To sustain federal jurisdiction on generic allegations of "negligence . . . caused by" a "dangerous and defective condition," . . . absent an assertion or evidence of a factual predicate for such jurisdiction, would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints—and then to rely on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law. This is at odds with the goal of the FSIA to enable a foreign government to obtain an early dismissal when the substance of the claim against it does not support jurisdiction.

*Robinson*, 269 F.3d at 146.

15

Then-Circuit-Judge Sotomayor wrote a concurring opinion in *Robinson* that criticized the majority's reliance on facts outside the pleadings. Judge Sotomayor explained:

> the distinction between the sufficiency of Robinson's allegations and whether those allegations have any merit is important because there is good reason to believe that jurisdiction under the non-discretionary tort exception—at least insofar as the "tort" is concerned—turns on a plaintiff's allegations, not on their ultimate merit.

*Id.* at 148.

The *Robinson* majority nevertheless agreed with other courts, including the Ninth Circuit, that have looked to the merits of a claim when necessary to address jurisdiction. *Id.* at 144 (citing *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1025-26 (9th Cir. 1987)). In *Joseph*, the Ninth Circuit applied principles of respondeat superior in deciding whether to invoke an exception to FSIA immunity against a foreign sovereign based on the acts of its employees. Specifically, the Ninth Circuit held "[t]he 'scope of employment' provision of the tortious activity exception essentially requires [1] a finding that the doctrine of respondeat superior applies to the tortious acts of individuals" and [2] assessing the evidence to determine whether the individual accused of tortious behavior was acting within the scope of his office or employment, even though a court trying the case on the merits would have to decide the same question to

16

determine whether the government would be liable for the acts of its employees. 830 F.2d at 1025-26.[4]

In contrast to the Second and Ninth Circuits, the Fifth Circuit draws a thin line on consideration of substantive merits in determining jurisdiction under the FSIA. Here, the Fifth Circuit refused to consider the district court's finding of no actual authority for commercial activity because it believed those findings spoke to the merits. App. 11-16. The circuit court ultimately couched its Decision in terms of law-of-the-case and refused to permit any inquiry into the merits because the facts were "conclusively admitted through the Consulate's default." App. 13. The court acknowledged the Consulate was challenging "the very existence" of the joint venture, but it would not look past the "defaulted" existence of the joint venture, nor would it allow reconsideration of that fact or the other facts found by the district court reflecting a lack of actual authority in light of the newly-discovered evidence. App. 12-13. At bottom, the Fifth Circuit held that from the moment the default judgment was entered, the Consulate forever forfeited the ability to challenge the existence of Respondent's cause of action, even if that question also impacts subject-matter jurisdiction. This conclusion is at odds with the FSIA,

---

[4] *See Liu v. Republic of China*, 892 F.2d 1419, 1425-31 (9th Cir. 1989) (analyzing facts relevant to respondeat superior even though the same facts went to "the merits of the appeal" for the underlying claim); *see also Greenpeace, Inc. v. France*, 946 F. Supp. 773, 782-84 (C.D. Cal. 1996) (plaintiffs' attempts to prove the takings exception to immunity depended entirely upon their ability to prove the underlying substantive question of whether the taking was substantial and nonfrivolous).

17

this Court's precedent, and the approach of other circuit courts and warrants review by this Court.

**B. The Fifth Circuit's deference to facts established on default in determining whether the commercial-activity exception to FSIA immunity applies improperly prioritizes discretionary rules over the statutory immunity mandated by the FSIA, expands a Circuit split, and warrants correction by this Court.**

Justice Sotomayor's concurrence in *Robinson* criticized the majority for looking beyond the pleadings to determine sovereign immunity at the commencement of a lawsuit. Even if this Court were to accept Justice Sotomayor's reasoning, those same concerns are not present where, as in this case, jurisdiction is challenged for the first time after entry of default judgment.

"[D]efault judgments are disfavored, especially those against foreign sovereigns." *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) (citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 459 cmt. c & reporters' n.1 (1987)). This disfavor is warranted because, as Justice Ginsburg previously recognized, "[w]hen a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d

18

1543, 1551-52 (D.C. Cir. 1987) (Ginsburg, J.) (quoting Br. for the United States as *Amicus Curiae*).

In keeping with these principles, a district court must cautiously evaluate the extent to which any "defaulted" facts affect its jurisdictional analysis when a foreign sovereign seeks to set aside a default judgment based on immunity under the FSIA. Yet district courts currently face conflicting guidance about the weight, if any, they should give to the facts alleged in a complaint when a defaulting party challenges jurisdiction under the FSIA.

The Fifth and Ninth Circuits have concluded that a default judgment can conclusively establish facts relevant to jurisdiction under the FSIA, meaning that a defaulting party cannot later attack those facts when it challenges the court's jurisdiction. Conversely, the D.C., Second, and Eleventh Circuits have endorsed de novo review, holding that a court may reconsider facts for jurisdictional purposes under the FSIA, even if the same facts would be deemed admitted on the merits.

To begin, the Fifth Circuit in this case allowed jurisdiction over the Consulate because it concluded that whether the consular officials exercised authority from the Mexican government in their dealings with Respondent was a fact "*defaulted* by the Consulate." App. 16 (emphasis added). The court attempted to mask the significance of this conclusion by stating earlier in its opinion that a district court must "assess the merits insofar as they weigh on jurisdiction." App. 13. But that statement does not square with the court's analysis or its holding, which relied on facts "defaulted by the Consulate" to permit the exercise of jurisdiction. *See id.* ("Here, it is not just that the facts

19

would be viewed in the light most favorable to Box in later proceedings, *but they have been conclusively admitted through the Consulate's default.*" (emphasis added)).

The Ninth Circuit has also relied on facts admitted by default to reject a non-appearing defendant's challenge to jurisdiction under the FSIA. *See In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 978 F.2d 493, 498 (9th Cir. 1992) ("*Marcos I*"). *Marcos I* involved claims against Imee Marcos-Manotoc, the daughter of a former Philippine President. *Id.* at 495. After a default judgment was entered against Marcos-Manotoc, she moved to vacate the judgment, arguing that the conduct she was alleged to have committed was on behalf of the Republic of the Philippines, so FSIA immunity applied. *Id.* at 495, 497. On appeal, the Ninth Circuit looked to the facts established as a result of the default judgment to analyze the FSIA issue. *Id.* at 496. It held that *by way of the default*, Marcos-Manotoc "admitted acting on her own authority, not on the authority of the Republic of the Philippines"; therefore, her acts could not have been the acts of an agent or instrumentality of a foreign state within the meaning of the FSIA. *Id.* at 498; *see In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1470 (9th Cir. 1994) ("*Marcos II*") (discussing *Marcos I* and acknowledging that the court "held that upon default" facts were established to preclude the application of the FSIA); *see also Enahoro v. Abubakar*, 408 F.3d 877, 882 (7th Cir. 2005) (construing *Marcos I* to hold that "*[b]ecause Marcos–Manotoc was in default*, she was said to have admitted that she acted on her own authority . . . , she was not entitled to immunity.

20

That also meant that there was also no jurisdiction under the FSIA . . . ." (emphasis added)).

Other circuit courts have taken a different approach.[5] The D.C. Circuit has endorsed de novo review in FSIA-based challenges to a default judgment. In *Practical Concepts, Inc. v. Republic of Bolivia*, the district court issued a default judgment against the Republic of Bolivia, and Bolivia later challenged the judgment on jurisdictional grounds. 811 F.2d at 1545. The district court followed "[t]he traditional rule . . . that a judgment rendered in excess of the court's jurisdiction is void and a legal nullity." *Practical Concepts, Inc. v. Republic of Bolivia*, 613 F. Supp. 863,

---

[5] More broadly, outside the FSIA context, circuit courts (including the Fifth Circuit) have held that a default judgment does not concede the merits for purposes of conducting a jurisdictional analysis. *See, e.g.*, *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 125 (2d Cir. 2008) ("[T]he establishment of those facts, via the default judgment, for purposes of his liability, does not establish those same facts for purposes of personal jurisdiction."); *Jackson v. FIE Corp.*, 302 F.3d 515, 529, 531 (5th Cir. 2002) (holding that even if a defendant knowingly allows a default judgment to be rendered against it, the defendant may still employ Rule 60(b)(4) to contest a factual finding that was relevant to both the rendering court's jurisdiction and the merits of the default judgment). The Fifth Circuit attempted to distinguish *Jackson*, reasoning that unlike the facts in *Jackson*, the fact of the joint venture's non-existence here does not bear on jurisdiction. But to disregard the lack of any joint venture in determining what was authorized is to disregard the non-existence of the underlying alleged commercial-activity and, therefore, allows the default to swallow the jurisdictional inquiry altogether. Moreover, the Fifth Circuit's narrow view of what can constitute a "jurisdictional fact" is at odds with the analysis in *Robinson* and the decisions aligned with it. *See supra* Part I.A.

21

867 (D.D.C. 1985), *vacated*, *Practical Concepts*, 811 F.2d 1543 (citing RESTATEMENT (FIRST) OF JUDGMENTS §§ 5–7 (1942)). In an opinion written by then-Circuit-Judge Ginsburg, the D.C. Circuit held that "the district court . . . properly allowed *full consideration* of [the] jurisdictional objection." 811 F.2d at 1545 (emphasis added). Had the D.C. Circuit concluded that facts established by the default judgment could establish jurisdiction, it would not have held that the district court properly gave "full consideration" to Bolivia's jurisdictional objections under de novo review. *See also Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014), *cert. denied*, 136 S. Ct. 38 (2015) (reasoning that a defendant that has not appeared "is always free . . . to assert a jurisdictional attack later . . . and to have its jurisdictional objections considered de novo" (citation omitted)); *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1182 (D.C. Cir. 2013) (concluding that non-appearing foreign sovereigns are entitled to de novo review of jurisdictional challenges when appearing for the first time); *cf. Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) ("When the defendant has thus challenged the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.").

The Eleventh Circuit has likewise held that courts should examine jurisdictional issues under the FSIA "free of any inferences that might flow from the existence" of a default judgment. *Jackson v. People's*

22

*Republic of China*, 794 F.2d 1490, 1496 n.3 (11th Cir. 1986). As the Eleventh Circuit put it, in the FSIA context: "The interests of justice require that these jurisdictional questions be determined in the context of adversarial proceedings." *Id.* (internal quotation omitted); *see also Araya-Solorzano v. Gov't of Republic of Nicaragua*, 562 F. App'x 901, 905 & n.4 (11th Cir. 2014) (holding that a district court properly gave weight to materials outside the pleadings when ruling on Nicaragua's motion to vacate a default judgment for lack of subject-matter jurisdiction under the FSIA).

Finally, the Second Circuit has approved fully exploring substantive and jurisdictional issues when a foreign sovereign challenges a default judgment based on the FSIA. *First Fid. Bank*, 877 F.2d at 192-96. In an appeal concerning a motion to vacate a default judgment for lack of subject-matter jurisdiction under the FSIA's commercial-activity exception, the Second Circuit held that the district court should have considered factual submissions to resolve a dispute as to whether the defendant engaged in sufficient commercial activity to permit jurisdiction. *See id.* at 195-96. Rather than suggesting that the default judgment conclusively established any facts material to the jurisdictional analysis, the Second Circuit emphasized the importance of considering de novo the facts regarding the conduct at issue. *Id.* at 196.[6]

---

[6] Because the court had "doubts about the facts," it did not declare the default judgment void under Rule 60(b)(4) but instead reached those facts under Rule 60(b)(6); however, the procedural mechanism for reaching the *outcome* is much less important than the *analysis*, which for jurisdictional purposes gave no weight to facts established by default. *See id.* at 196.

23

These conflicting authorities implicate an issue of broad importance for FSIA jurisprudence. Courts are regularly required to analyze the application of the FSIA after a default judgment has been entered, demonstrating the prevalence of this issue and the corresponding importance of providing guidance to the lower courts. Moreover, a foreign sovereign that does not appear in an action should not face differing consequences of default in one circuit versus another.

Acting on its prerogative to review cases in which the circuit courts are conflicted and an important issue of federal law is presented, the Court should grant the petition as to this issue.

## II. THE FIFTH CIRCUIT IMPROPERLY EXPANDED THE LAW-OF-THE-CASE DOCTRINE TO PRECLUDE REVIEW OF JURISDICTION, EVEN WHEN NEW EVIDENCE AND FACT FINDINGS ARE DEVELOPED ON REMAND, CREATING CONFUSION AMONG THE CIRCUITS AND WARRANTING CORRECTION BY THIS COURT.

To support its rigid application of default judgment principles to override evidence of no commercial activity, the Fifth Circuit also did damage to the law-of-the-case doctrine by ignoring the district court's findings based on the very evidence developed in the jurisdictional discovery it ordered. The Fifth Circuit's application of this discretionary doctrine adds to the existing confusion among the circuit courts about whether law of the case applies to matters of jurisdiction—and more specifically, to jurisdictional

24

fact questions—and provides an independent basis for this Court to grant review.

Law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). But as this Court has held, law of the case is a "rule of practice," not a limit on the court's power; it is based on the policy that "when an issue is once litigated and decided, that should be the end of the matter." *United States v. U.S. Smelting Ref. & Min. Co.*, 339 U.S. 186, 198 (1950). The well-recognized exceptions to law of the case follow that rationale, and generally permit reconsideration if one of three circumstances exists: (1) the evidence developed on remand is substantially different; (2) there is a change in controlling law; or (3) the decision was clearly erroneous and would work a manifest injustice. *See* Wright & Miller, 18B FED. PRAC. & PROC. § 4478 (2d ed. 2015).

### A. There is confusion among the circuits as to how law of the case applies to questions of jurisdiction.

While there is a general consensus among federal courts on the basic contours of the law-of-the-case doctrine, there is considerable confusion over how the doctrine should apply—if at all—to questions of jurisdiction.

A number of circuits have rejected an outright "jurisdictional exception" to law of the case, finding that the doctrine should apply to matters of jurisdiction just as it does to any other issue. *See, e.g., Bishop v.*

25

*Smith*, 760 F.3d 1070, 1084 (10th Cir. 2014) (collecting cases).[7]

These cases typically look to dicta from this Court's opinion in *Christianson v. Colt Indus. Operating Corp.* for support. 486 U.S. 800 (1988). There, the Federal Circuit transferred a patent case to the Seventh Circuit after concluding it lacked jurisdiction; the Seventh Circuit later revisited the issue of jurisdiction and transferred the case back to the Federal Circuit. This Court put an end to such "jurisdictional ping-pong," and held that the Seventh Circuit should not have reconsidered the transfer decision. 486 U.S. at 817-18. In so doing, the Court noted the following in a footnote:

> There is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction. Perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice.

486 U.S. at 816 n.5.

---

[7] *See also Free v. Abbott Labs., Inc.,* 164 F.3d 270, 272-73 (5th Cir. 1999) (following other circuits that "have . . . refused to recognize a 'jurisdiction exception' to the law of the case doctrine"); *LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996) (en banc) ("[T]his court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction . . . ."); *Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996) (per curiam) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction.").

26

However, the Third and Fourth Circuits have rejected an overly-broad reading of that footnote and have held that law of the case does *not* preclude reconsideration of a court's jurisdiction. *See Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 516 n.9 (4th Cir. 2003); *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 118 (3d Cir. 1997). The Third Circuit distinguished *Christianson* this way:

> Despite the Court's dicta in *Christianson*, we do not think the Supreme Court intended in one footnote to eviscerate, in all instances, the federal courts' prerogative to revisit important jurisdictional questions. Rather, we think *Christianson's* commentary on the law of the case and jurisdiction applies only within the context of transfer cases.

*Magnesium Elektron*, 123 F.3d at 118. These courts instead focus on their "bedrock obligation" to continually satisfy themselves of jurisdiction and therefore find that the prudential goals underlying law of the case—judicial economy and finality—must yield to allow reconsideration of such important questions. *Id.* at 117-18; *see also Am. Canoe Ass'n*, 326 F.3d at 515-16. In fact, the Third Circuit in *Magnesium Elektron* expressly declined to follow opinions from the Ninth and D.C. Circuits holding that law of the case applies to subject-matter jurisdiction. *See* 123 F.3d at 118. ("[W]e recognize that two sister circuits have held that the law of the case doctrine applies to subject matter jurisdiction. Nevertheless, we conclude that the concerns implicated by [issues of subject-matter jurisdiction] . . . trump the prudential goals of

27

preserving judicial economy and finality." (citations omitted)).

Other circuits fall somewhere in the middle, concluding that jurisdiction is indeed different from any other inquiry, and that as a result, law of the case should apply in a "somewhat weaker fashion" to jurisdictional questions. *Bishop*, 760 F.3d at 1085 (acknowledging "the longstanding rule that while there is no categorical exclusion from the law of the case doctrine for jurisdictional issues, a slightly more flexible methodology is called for in the jurisdictional context"); *Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1987) ("[C]ourts are significantly less constrained by the law of the case doctrine with respect to jurisdictional questions."); *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 77 (2d Cir. 1992) ("[S]ubject matter jurisdiction is particularly suited for reconsideration.").

As discussed above, the Fifth Circuit in the present case gave no deference to the jurisdictional nature of the dispute before it. Instead, it found that the facts are developed by virtue of the default judgment and cannot be revisited despite an express remand for jurisdictional discovery. The Fifth Circuit's Decision adds to an already confused body of law on when the law-of-the-case doctrine should apply in the context of jurisdictional challenges, particularly in the context of the FSIA, which is the sole basis for jurisdiction over foreign sovereigns.

28

### B. At a minimum, law of the case should not preclude review of new evidence and factual findings bearing on jurisdiction.

The Fifth Circuit's holding is particularly confusing in light of the newly-discovered evidence supporting the district court's findings of no authority for the joint venture that allegedly formed the basis for commercial activity. Regardless of whether a court refuses to recognize an exception to law of the case in the context of a jurisdictional challenge, most courts typically acknowledge that reconsideration is appropriate, and even required, where new evidence is developed on remand that bears directly on the question of jurisdiction. *See, e.g., Am. Canoe Ass'n,* 326 F.3d at 516 (finding district court abused its discretion in failing to reconsider standing after defendants developed and "presented evidence going to the standing issue that had not been previously considered by the district court"); *Magnesium Elektron*, 123 F.3d at 117-118 (holding law of the case not applicable in view of new evidence "which had a direct bearing on the issue of standing" and new factual findings that "undermine[d] an earlier conclusion"); *see also Conkwright v. AC&S Inc.*, 106 F.3d 407, at *1 (9th Cir. 1996) (unpublished decision) ("The law of the case doctrine does not apply because the district court considered substantially different facts on remand."); *Shakman*, 829 F.2d at 1392-93 (concluding that court was "not only free to reexamine the holding of the earlier panel [on standing] but obliged to do so" in light of new facts and new controlling law).

29

The Fifth Circuit joined a minority of courts that rigidly apply law of the case[8] to avoid consideration of new evidence developed on remand that casts doubt on the court's jurisdiction. *See, e.g., LaShawn*, 87 F.3d at 1394 (applying an "even stronger than usual version of the law-of-the-case doctrine," despite further factual development that bore on the question of pendent jurisdiction[9]) (en banc); *S.C. State Ports Auth. v. Silver Anchor, S.A.*, 23 F.3d 842, 845, 847 (4th Cir. 1994) (finding that law of the case precluded review of whether maritime contract existed for purposes of admiralty jurisdiction, even though first panel remanded for further development of the factual record).

The Fifth Circuit's Decision is particularly inappropriate here because the panel originally remanded for the specific purpose of jurisdictional discovery on actual authority. App. 86. It was natural to assume that the district court would (and should) reconsider issues of actual authority implicated by that discovery. Yet, in the second appeal, the panel rendered its original mandate for jurisdictional discovery irrelevant by holding that law of the case precluded any consideration of the district court's new fact

---

[8] The Fifth Circuit's opinion discusses this issue in the context of both "law of the case" and "the mandate rule." App. 9-10. But the mandate rule is simply a "specific application of the general doctrine of law of the case" and is subject to the same exceptions. *See, e.g., Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184-85 (5th Cir. 2012).

[9] The context of this factual development is discussed in the second panel opinion. *LaShawn A. v. Barry*, 69 F.3d 556, 566 (D.C. Cir. 1995).

30

findings based on newly-discovered evidence showing no actual authority for, or the non-existence of, a joint venture. App. 9-10.[10]

The application of the law-of-the-case doctrine to bar review of facts developed on remand stands in direct contrast to the Eleventh Circuit's decision in *Guevara v. Republic of Peru*, which refused to apply law of the case in circumstances involving immunity under the FSIA. 608 F.3d 1287 (11th Cir. 2010). In *Guevara*, the Eleventh Circuit reconsidered the question of sovereign immunity, despite an earlier opinion finding that Peru had engaged in "commercial activity" under 28 U.S.C. § 1603(d), because Peru had challenged other components of § 1603(d) "based on the facts that had been developed on remand." *Id.* at 1304, 1306-07. The Eleventh Circuit reached that decision over a dissent that would have adopted the Fifth Circuit's rule, *i.e.*, that law of the case prevents any reconsideration of new aspects of an exception to FSIA immunity, notwithstanding new factual developments on remand. *Id.* at 1312 (Cox, J., dissenting).

---

[10] In doing so, the Fifth Circuit also ignored the clear directive that a district court's findings of fact must not be set aside unless clearly erroneous. FED. R. CIV. P. 52(a)(6). The Fifth Circuit never identified any clear error in the district court's finding of no actual authority. Consequently, the Fifth Circuit should not have disregarded these findings. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 566, 577 (1985) (concluding that the court of appeals erred in reversing a district court decision because it "misapprehended and misapplied the clearly-erroneous standard" and the record "contain[ed] nothing that mandate[d] a finding that the District Court's conclusion was clearly erroneous").

31

This case presents the opportunity for this Court to resolve confusion among the circuit courts on the very important issue of when, and to what extent, law of the case prevents consideration of newly-developed jurisdictional facts.

### III.   THE FOREIGN POLICY IMPLICATIONS AND RADICAL EXPANSION OF JURISDICTION OVER FOREIGN STATES COUNSELS FOR IMMEDIATE REVIEW.

In the relatively brief period since the FSIA was passed, the Court has granted *certiorari* seventeen times to resolve questions arising under the Act.[11] This

---

[11] *See* Pet. for Writ of Cert., *Bank Markazi, The Cent. Bank of Iran v. Peterson*, No. 14-770 (2014) (petition granted Oct. 1, 2015) (addressing constitutionality of legislation authorizing attachment of property in a single lawsuit when attachment would not be authorized under FSIA); *OBB Personenverkehr AG v. Sachs*, No. 13-1067, __ S. Ct. __ (2015) (addressing meaning of exception to immunity under the FSIA for conduct "based upon" a commercial activity); *Republic of Argentina v. NML*, 134 S. Ct. 2250 (2014) (addressing the scope of immunity from asset discovery under the FSIA); *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) (finding that a foreign official is not a "foreign state" entitled to immunity under the FSIA); *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009) (addressing Terrorism Risk Insurance Act of 2002 as an exception to FSIA immunity); *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009) (addressing state-sponsored terrorism exception to the FSIA); *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) (addressing the impact of foreign sovereign immunity on the rights of parties under the procedural rules governing joinder of parties); *Powerex Corp. v. Reliant Energy*, 551 U.S. 224 (2007) (addressing whether the FSIA impacts the ability to challenge a remand decision); *Permanent Mission of India v. City of New York*, 551 U.S. 193 (2007) (addressing immovable property exception to FSIA

32

Court has repeatedly emphasized the importance of foreign sovereign immunity, noting that it promotes comity and that actions against foreign sovereigns in U.S. courts "raise sensitive issues concerning the foreign relations of the United States . . . ." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486, 493 (1983); *see also* Jeffrey Jacobson, *Trying to Fit A Square Peg into A Round Hole: The Foreign Sovereign Immunities Act and Human Rights Violations*, 19 WHITTIER L. REV. 757, 757 (1998).

The FSIA was adopted to introduce uniformity into the process of determining sovereign immunity, *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622, n.11 (1983)—a goal that

---

immunity); *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi*, 546 U.S. 450 (2006) (finding error in presumption that foreign ministry of Iran was an agency or instrumentality subject to attachment under the FSIA); *Republic of Austria v. Altman*, 541 U.S. 677 (2004) (addressing retroactive application of the FSIA); *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) (addressing when a corporation can be deemed an instrumentality of a foreign state under the FSIA); *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) (addressing whether allegations of injuries based on wrongful retention by Saudi government were "based upon" a commercial activity as an exception to the FSIA); *Republic of Argentina v. Weltover*, 504 U.S. 607 (1992) (assessing whether government participation in foreign bond market was a commercial activity under the FSIA); *Argentine Republic v. Amerada Hess*, 488 U.S. 428 (1989) (finding non-commercial tort exception to the FSIA did not apply); *Verlinden v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983) (addressing whether jurisdiction exists for a foreign plaintiff to sue a foreign sovereign in the United States under the FSIA); *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) (addressing a foreign state's immunity under the FSIA for counterclaims).

33

Congress considered "desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences." H.R. Rep. No. 94-1487, p. 13 (1976). Despite the goal of uniformity, the FSIA has often been criticized for its lack of clarity. For instance, one court described the FSIA as a "remarkably obtuse" document, a "statutory labyrinth that, owing to the numerous interpretive questions engendered by its bizarre structure and its many deliberately vague provisions, has during its brief lifetime been a financial boon for the private bar but a constant bane of the federal judiciary." *Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094, 1105-06 (S.D.N.Y. 1982).

The specific exception to FSIA immunity at issue here—the commercial-activity exception under 28 U.S.C. § 1605(a)(2)—is "[t]he most significant of the FSIA's exceptions . . . ." *Republic of Argentina v. Weltover*, 504 U.S. 607, 611 (1992). It is also the most litigated. Jonathan C. Lippert, *Vulture Funds: The Reason Why Congolese Debt May Force A Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. INT'L L. REV. 1, 12 (2008). But the commercial-activity exception, like much of the rest of the FSIA, is not a model of clarity. This Court previously explained that the definition of a commercial activity is "too 'obtuse' to be of much help . . . ." *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993). And case law addressing this exception is "muddled and contradictory." George K. Foster, *When Commercial Meets Sovereign: A New Paradigm for Applying the Foreign Sovereign Immunities Act in Crossover Cases*, 52 HOUS. L. REV. 361, 365 (2014).

34

Despite the acknowledged significance of foreign sovereign immunity and the extensive precedent addressing the FSIA and the commercial-activity exception specifically, circuit courts remain split and confused about how to apply the exception. Most notably in this case, the Fifth Circuit refused to consider critical evidence found by the district court showing the absence of authority for (and even the non-existence of) the alleged commercial activity. In reaching its Decision, the Fifth Circuit stretched FSIA jurisdiction beyond its intended reach and prioritized common law and discretionary rules over the FSIA's absolute bar to jurisdiction where the statutory exceptions are not satisfied. The Fifth Circuit's Decision reflects a conflict among the circuits regarding what evidence should be considered in determining whether an exception to FSIA immunity applies and begs for clarification and correction by this Court.

Because this case arises from a default judgment, it offers this Court a unique vehicle to address this important question. Indeed, while the circuit courts struggle generally with the extent to which they may address merits questions in resolving questions of immunity under the FSIA, nowhere is that struggle more evident than in the context of a default judgment.[12] This case, therefore, affords the Court an

---

[12] *See, e.g., Jerez v. Republic of Cuba*, 775 F.3d 419 (D.C. Cir. 2014); *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013); *Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009); *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534 (6th Cir. 2007); *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230 (D.C. Cir. 2003); *Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000); *Transatlantic*

35

opportunity to resolve the issue of when, and to what extent, merits facts can be addressed in the context of a jurisdictional challenge not only at the commencement of the suit but also after default judgment has been entered. The answer to this important question has broad significance for the many cases in which courts are required to analyze the application of the FSIA, both generally and in a post-default posture.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be granted.

Respectfully Submitted,

Debra J. McComas
  *Counsel of Record*
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7673
(214) 651-5000
debbie.mccomas@haynesboone.com

*Attorney for Petitioner*

Dated: December 23, 2015.

──────────────

*Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384 (2d Cir. 2000); *MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658 (5th Cir. 1996); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528 (5th Cir. 1992); *Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8 (2d Cir. 1989); *Brewer v. Socialist People's Republic of Iraq*, 890 F.2d 97 (8th Cir. 1989); *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189 (2d Cir. 1989); *Gregorian v. Izvestia*, 871 F.2d 1515 (9th Cir. 1989).



**APPENDIX**

i

**APPENDIX**

**TABLE OF CONTENTS**

Appendix A  Opinion and Judgment in the United States Court of Appeals for the Fifth Circuit
(August 19, 2015) . . . . . . . . . . . . App. 1

Appendix B  Memorandum Opinion and Order in the United States District Court for the Northern District of Texas Dallas Division
(March 14, 2014) . . . . . . . . . . . App. 20

Appendix C  Final Judgment in the United States District Court for the Northern District of Texas Dallas Division
(March 14, 2014) . . . . . . . . . . . App. 43

Appendix D  Memorandum Opinion and Order in the United States District Court for the Northern District of Texas Dallas Division
(October 30, 2013) . . . . . . . . . . App. 45

Appendix E  Opinion in the United States Court of Appeals for the Fifth Circuit
(August 21, 2012) . . . . . . . . . . . App. 72

Appendix F  Memorandum Opinion and Order in the United States District Court for the Northern District of Texas Dallas Division
(December 23, 2010) . . . . . . . . App. 87

ii

Appendix G  Final Judgment in the United States
            District Court for the Northern
            District of Texas Dallas Division
            (December 23, 2010) . . . . . . . . App. 106

Appendix H  Memorandum Opinion and Order in
            the United States District Court for
            the Northern District of Texas Dallas
            Division
            (September 30, 2009) . . . . . . . . App. 108

Appendix I  Final Judgment in the United States
            District Court for the Northern
            District of Texas Dallas Division
            (September 30, 2009) . . . . . . . . App. 125

Appendix J  Order Denying Rehearing in the
            United States Court of Appeals for the
            Fifth Circuit
            (September 24, 2015) . . . . . . . . App. 127

Appendix K  Statutory Provision Involved

            28 U.S.C. § 1605 . . . . . . . . . . . . App. 129

App. 1

_____

## APPENDIX A
_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

### No. 14-10744 & 14-10953

### [Filed August 19, 2015]
_____

| | |
|---|---|
| BLAKE BOX, doing business as Blake Box Company, | ) <br> ) <br> ) |
| Plaintiff–Appellant, | ) <br> ) |
| v. | ) <br> ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) <br> ) <br> ) |
| Defendant–Appellee. | ) <br> ) |

_____

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-1010

Before KING, SMITH, and ELROD, Circuit Judges.

PER CURIAM:[*]

_____

[*] Pursuant to Fifth Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Cir. R. 47.5.4.

App. 2

Following a dispute over a real estate venture, Blake Box sued the Dallas Mexican Consulate General (Consulate) for breach of contract and related claims. The district court entered a default judgment in favor of Box, and the Consulate moved under Rule 60(b) to set aside the default judgment. The district court vacated the default judgment, concluding that it lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA). Box appealed and we remanded for limited discovery on fact issues pertinent to subject matter jurisdiction under the FSIA. On remand, the district court concluded that it had subject matter jurisdiction and reinstated the default judgment. The Consulate then moved under Rule 59(e) for a new trial or to reconsider the judgment, which the district court granted in part. Because the relevant facts were established as the law of the case, and because those facts are not jurisdictional facts, we vacate the district court's order granting the Rule 59(e) motion and remand for reinstatement of the default judgment. Box also moved in the district court for additional attorney's fees based on his status as a prevailing party. We affirm the district court's denial of these additional attorney's fees.

## I.

Box, a real estate broker, worked with Ambassador Enrique Hubbard and Mr. Hugo Juarez-Carillo (Consulate Officials) to secure a new building for the Mexican Consulate's Dallas office.[1] Box assisted the

---

[1] The facts as recited here are those alleged in Box's complaint and have all been admitted for merits purposes through the Consulate's default. *See Jackson v. FIE Corp.*, 302 F.3d 515, 525

App. 3

Consulate in locating a suitable building, and when the seller would sell the building only as part of a three-building package Box devised a transaction to purchase all three buildings and spin off one of the buildings to the Consulate. Box "identified prospective sites, enlisted contractors, met with city officials, and was involved in negotiations." Throughout this process, the Consulate Officials were in contact with the Mexican government and working through the government's lengthy official procedures for purchasing real property. Whether the Consulate Officials ever obtained actual authority to enter a joint venture with Box, or to purchase the building, is disputed by the Consulate.

After Box spent extensive time on the transaction, the Consulate partnered with a third party and purchased the same buildings in a transaction identical to the one that Box had designed. Box sued the Consulate for: (1) breach of contract; (2) fraud/ fraudulent inducement; (3) breach of fiduciary duty; (4) unjust enrichment; (5) quantum meruit; (6) promissory estoppel; (7) constructive trust; (8) attorney's fees; and (9) exemplary damages.

The Consulate, despite being properly served, did not respond to Box's complaint. Box moved for a default judgment. Before entering a default judgment, the district court assessed whether it had subject matter jurisdiction over the case under the FSIA. Under the FSIA, foreign governments are immune from suit

---

(5th Cir. 2002) (explaining that a defendant, by default, admits the plaintiff's well-pleaded allegations of fact for purposes of the merits).

App. 4

subject to certain exceptions, including a "commercial activity exception." The district court determined that because the Consulate Officials had apparent authority to purchase the building, the commercial activity exception applied, and the district court had subject matter jurisdiction over the case. The district court entered a default judgment in favor of Box for $87,500 in value of services rendered, $6,725 in costs expended on behalf of the Consulate, and $3,000,000 in compensation for Box's "joint venture interest." The district court also awarded Box attorney's fees and costs in the amount of $31,464.83.

Over five months after the entry of the default judgment, the Consulate moved under Rule 60(b)(4) to set aside the default judgment. The district court reanalyzed the FSIA's commercial activity exception to determine whether the Consulate Officials had *actual* authority to purchase the building. The actual authority requirement is not contested. The district court concluded that the Consulate Officials lacked actual authority to purchase the building and, therefore, the commercial activity exception did not apply and the district court lacked subject matter jurisdiction over the case. The district court granted the Rule 60(b)(4) motion and vacated the default judgment in its entirety.

Box appealed. On appeal, we held that "[t]he district court abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority." *Box v. Dall. Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012) (unpublished) (*Box I*). We vacated the district court's order granting the 60(b)(4) motion and remanded for

App. 5

"limited discovery" on the issue of whether the Consulate Officials had actual authority to bind the Consulate to the transaction. *Id*.

On remand, the parties conducted discovery to determine the extent of the Consulate Officials' authority and the district court again addressed the Consulate's 60(b)(4) motion. The district court analyzed the 60(b)(4) motion to determine whether it initially had an "arguable basis" for finding subject matter jurisdiction and entering the default judgment. The district court concluded that "[t]he sole issue before the [district court was] whether the Consulate Officials had actual authority to engage in a commercial activity—not just whether the Consulate Officials had actual authority to purchase the Property from Box. This lawsuit is based upon the facilitation of real estate services *and* the formation of a joint venture."

The district court analyzed the Mexican government's procedures for acquisition and/or leasing of real property assets abroad and concluded that "[t]he Mexican government indisputably authorized the Consulate to pursue the acquisition of a [sic] the property" because "the Consulate Officials were given full authority for all preliminary activities."[2] The district court distinguished between the authority to enter a joint venture and the authority to actually purchase real property, but determined that "[it] need not reach . . . whether [purchasing real property] falls within the scope of the Consulate Officials' actual authority, as [it] determined the general authorization

---

[2] The district court considered the Mexican government's specific procedures, e-mails, and deposition testimony.

App. 6

given to the Consulate for all activities leading up to the acquisition of the Property would include the retention of Box as a real estate broker." Because the district court found that there was actual authority for the Consulate Officials to agree to the transaction, the commercial activity exception applied, and the district court had subject matter jurisdiction. The district court denied the 60(b)(4) motion and left the default judgment in place.

The Consulate then moved under Rule 59(e) for reconsideration, or in the alternative, a new trial. The Consulate argued that the district court should have: (1) evaluated its subject matter jurisdiction under a *de novo* standard of review, rather than the "arguable basis" standard of review; and (2) evaluated whether a joint venture actually existed between the parties.

The district court agreed and concluded that it erred when it "assumed the existence of the joint venture." It reasoned that the existence of a joint venture was a jurisdictional fact and that even though a defendant admits a plaintiff's well-pleaded allegations as true by default—as the Consulate did here—this does not apply to jurisdictional allegations when those allegations are disputed by admissible evidence. The district court then determined that under Texas law the joint venture did not exist, so jurisdiction was improper.

The district court granted the Consulate's motion in part, vacating the default judgment in part and ordering that Box recover only $87,500 for services rendered and $6,725 for costs expended. The district court did not award Box the $3,000,000 for his share of the joint venture interest or additional attorney's fees.

App. 7

Box moved to alter or amend the judgment and the district court declined. Box then moved for attorney's fees in the amount of $265,315 based on his status as a prevailing party. While the motion for attorney's fees was pending, Box appealed the district court's partial grant of the Consulate's Rule 59(e) motion. The district court subsequently denied the motion for attorney's fees and Box appealed that judgment. Both appeals were consolidated before this court. The Consulate cross-appealed the district court's judgment leaving intact the $94,225 award, but later withdrew the cross-appeal in its response brief.

## II.

The existence of subject-matter jurisdiction under the FSIA is a question of law, reviewed *de novo*. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 214 (5th Cir. 2009). Whether the law-of-the-case doctrine or its related doctrines, including the waiver doctrine, foreclose any of the district court's actions on remand is also a question of law that this court reviews *de novo*. *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011).

## III.

Box argues that the district court erred for three reasons: (1) a joint venture existed under the law of the case, thus the district court could not reexamine this fact; (2) on remand, the district court impermissibly went beyond the scope of our mandate; and (3) the existence of a joint venture is a merits question, not a jurisdictional fact.

The law-of-the-case doctrine provides that ordinarily "an issue of fact or law decided on appeal

App. 8

may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184 (5th Cir. 2012) (internal quotation marks omitted). Box contends that the existence of the joint venture became the law of the case after *Box I* because the Consulate failed to raise or brief the non-existence of a joint venture in *Box I* and our decision in *Box I* recognized the existence of the joint venture. The Consulate argues that it never conceded the existence of a joint venture and that we did not address the existence of a joint venture in *Box I*. The Consulate also argues that as the appellee in *Box I*, it had no obligation to challenge the joint venture's existence because it was only defending the ruling below, which Box only challenged on the issue of actual authority.

In *Box I*, the Consulate's briefing repeatedly refers to the joint venture as the "alleged" joint venture and maintains its non-existence. However, the Consulate's arguments only addressed whether there was actual authority for the joint venture; they did not directly attack its existence. The Consulate never argued that the joint venture's non-existence defeated subject matter jurisdiction. The only issue in *Box I* was whether the Consulate Officials had actual authority to agree to the transaction. Whether subject matter jurisdiction existed turned only on the actual authority issue.

As for the Consulate's argument that as appellee it did not need to raise the issue in *Box I*, the Consulate raised numerous challenges to the district court's jurisdiction in *Box I*, including a lack of personal jurisdiction based on flawed service and "multiple

App. 9

meritorious defenses" that we considered and rejected. Despite raising multiple arguments regarding subject matter jurisdiction during *Box I*, the Consulate chose not to raise this one. Moreover, the Consulate did not raise its lack-of-joint-venture-as-jurisdictional-fact argument in its initial 60(b)(4) motion before the district court.

Our opinion in *Box I* treated actual authority as the only jurisdictional issue to be addressed on remand. Nothing in either the district court's 60(b)(4) order or our opinion in *Box I* considered the existence of the joint venture as a contested jurisdictional fact. For these reasons, the existence of a joint venture for jurisdictional purposes became the law of the case after *Box I*.[3]

Box next asserts that the district court exceeded its authority under our mandate in *Box I* when it reconsidered the joint venture's existence. The mandate rule relates closely to the law-of-the-case doctrine. Under the "mandate rule," on remand the district court "must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *Demahy*, 702 F.3d at 184 (internal quotation marks omitted). On remand, a district court may only "consider whatever

---

[3] Even if the existence of a joint venture is a jurisdictional fact, subject matter jurisdiction does not create an exception to the law-of-the-case doctrine. *See Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272–73 (5th Cir. 1999) (citing *Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996) *cert. denied*, 519 U.S. 1122 (1997) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction.")).

App. 10

this court directs—no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below." *United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998). In *Marmolejo*, we cited "justice as well as judicial economy" as the reasons to "require a defendant to raise all relevant and appealable issues at the original [proceeding]." *Id.*

In *Box I*, the "discrete issue [on remand was whether] Hubbard and Juarez were authorized to purchase the consulate building, which if true would establish FSIA jurisdiction." 487 F. App'x at 885. The Consulate argues that "[a]bsent limitation in the remand, the district court [is] free to admit additional evidence and conduct all necessary review of the claims on any grounds before it." *See United States v. Wilson*, 322 F.3d 353, 360 (5th Cir. 2003). *Wilson* addressed whether the district court may consider additional *evidence* to decide a question on remand. Here, the district court considered an entirely *new question*. We remanded *Box I* "because actual authorization is a discrete issue conducive to limited discovery" and "[t]he district court abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority." 487 F. App'x at 885, 887. While consideration of additional evidence was appropriate, nothing in *Box I* gave the

App. 11

district court permission to extend its inquiry beyond the question of the Consulate Officials' authority.[4]

Even assuming *arguendo* that the district court was permitted to consider the existence of a joint venture on remand, the existence of a joint venture is not a jurisdictional fact.[5] Federal claims litigation and admiralty law both provide useful analogies because in both areas a district court must often determine jurisdictional facts prior to addressing the merits of a claim. Box cites *Pure Power!, Inc. v. United States*, 70 Fed. Cl. 739, 742 (Fed. Cl. 2006) and *S.C. State Ports Auth. v. Silver Anchor, S.A.*, 23 F.3d 842, 847 (4th Cir. 1994) (*Silver Anchor II*) in support. In *Pure Power!*, the government defendant argued that the Court of Federal Claims, a court of limited jurisdiction, lacked jurisdiction over the plaintiff's contract claim because there was no contract. *Pure Power!* held that "if the existence of a contract is well-pleaded, the court has

---

[4] *S.C. State Ports Auth. v. Silver Anchor, S.A.*, 23 F.3d 842, 847 (4th Cir. 1994) (*Silver Anchor II*), discussed *infra* regarding the jurisdictional question, is also analogous on the scope-of-the-mandate issue. 23 F.3d at 847 ("[W]e note that our [previous opinion] was premised on the assumption that there *was* a contract between [the parties]. We instructed the district court to determine only whether that contract was maritime or non-maritime in nature. We did not instruct the lower court to engage in a freewheeling inquiry about whether any contract even existed.").

[5] The parties dispute whether the district court should have employed a *de novo* standard of review for assessing subject matter jurisdiction on a Rule 60(b)(4) motion or review for whether the court had "any arguable basis" for exercising subject matter jurisdiction. Because we hold that the district court properly had subject matter jurisdiction under either standard, we express no opinion as to the proper standard of review.

App. 12

the jurisdiction to determine, on the merits, if a valid contract actually exists" and "a claim is not beyond the subject matter jurisdiction of the [court] merely because the [defendant] asserts that it never had a contract with the plaintiff." 70 Fed. Cl. at 742. Put another way, the district court does not lack jurisdiction to determine whether a contract exists simply because the ultimate answer is that it does not.

*Silver Anchor II* is also persuasive. In *Silver Anchor II*, the district court dismissed a maritime contract case on the basis that there was no contract because there was no personal guaranty of payment from the defendant, a required contract component. The Fourth Circuit held that the existence of "a personal guaranty [was] dispositive on the merits," so "[t]o the extent that [the defendant] was challenging the court's jurisdiction on the ground that he gave no personal guaranty, he was also challenging the very existence of the [plaintiff's] cause of action." 23 F.3d at 847. Similarly here, because the Consulate challenges subject matter jurisdiction on the ground that there was no joint venture, the Consulate is also challenging the very existence of Box's cause of action.

The Consulate attempts to distinguish *Silver Anchor II* because in *Silver Anchor II* "the existence of a contract went so much to the heart of the merits that it would be unfair to adjudicate it at the motion to dismiss stage," whereas here, the Consulate "is seeking to set aside a default judgment under Rule 60(b)(4) *after* the underlying merits have been established." If anything, this distinction weighs in favor of Box. In *Silver Anchor*, the court held that it was improper to dismiss the case for what was essentially a merits issue

App. 13

in "the guise of a jurisdictional dispute, much to [the] advantage" of the defendant, before reaching the motion to dismiss or summary judgment stage, where the facts would be viewed in the light most favorable to the plaintiff. Here, it is not just that the facts would be viewed in the light most favorable to Box in later proceedings, but they have been conclusively admitted through the Consulate's default.

The Consulate next argues that the district court may always determine the jurisdictional facts as necessary to determine if it has jurisdiction, *even if* those facts have been admitted by a default for purposes of the merits inquiry. This is correct—the district court must decide whether it has jurisdiction and must weigh evidence and assess the merits insofar as they weigh on jurisdiction—but that is not the issue here. That the district courts must answer jurisdictional questions does nothing to determine exactly which questions are jurisdictional. The Consulate relies heavily upon *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002) and *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994) to argue that "facts presumed for purposes of the merits of the default can be revisited in the context of subject matter jurisdiction," and "at least in the context of the FSIA, those factual determinations can extend to the merits." The Consulate seeks more from *Jackson* and *Moran* than they give. Both cases stand for the proposition that a district court *is not barred* from deciding a jurisdictional fact simply because that fact is intertwined with, or also is, a merits fact. But this does not support treating otherwise exclusively merits facts as part of the jurisdictional inquiry, nor does it have any relevance to the question of whether the joint

App. 14

venture's existence is a jurisdictional fact under the FSIA.

In *Jackson*, after a default judgment was entered against a foreign gun manufacturer, the manufacturer moved under Rule 60(b)(4) to vacate the judgment, arguing that the district court had lacked personal jurisdiction over the defendant manufacturer because under Louisiana's long-arm statute the defendant must have placed the gun in the stream of commerce for personal jurisdiction to be proper. 302 F.3d at 520. We held that a fact's admission by default for merits' purposes does not automatically admit that fact for jurisdictional purposes and remanded for a determination of the jurisdictional question of whether the defendant put the gun into the stream of commerce. *Id.* at 531. *Jackson* merely says that a district court must assess jurisdictional facts to determine if jurisdiction is proper, even if those facts are admitted by default for merits' purposes. *Jackson* sheds no light upon whether the existence of a joint venture is a jurisdictional fact here.

In *Moran*, a FSIA case, the plaintiff sued the Kingdom of Saudi Arabia following a Mississippi car accident with two Saudi government personnel. Under the relevant law, Saudi Arabia was only subject to jurisdiction under the FSIA if the officials were acting within the scope of their employment at the time of the accident. 27 F.3d at 173. Whether the officials were acting within the scope of their employment also bore on the merits of the case. The district court concluded that the officials were not acting within the scope of their employment and therefore dismissed the case because the court lacked jurisdiction under the FSIA.

App. 15

*Id*. We held that the district court acted properly by resolving Saudi Arabia's 12(b)(1) motion "before other challenges since the court must find jurisdiction before determining the validity of a claim." *Id*. at 172 (internal quotation marks omitted).

The Consulate argues that the question of whether a joint venture existed is analogous to the question of whether the officials in *Moran* were acting within the scope of their employment, but the Consulate overreads *Moran*. The question of whether the Saudi officials were acting within the scope of their employment, unlike the question of the existence of the joint venture here, was a *required* part of the jurisdictional analysis. Here, the FSIA exception applies to an "action [that] is based upon a commercial activity." 28 U.S.C. § 1605(a)(2). The analogous attack here would be that, for instance, the activity was not commercial, not that the activity did not occur. *Moran* demonstrates that jurisdictional facts will sometimes overlap with merits inquiries, but cannot be stretched to redefine what is jurisdictional in the first instance.

The Consulate insists that the Consulate Officials logically could not have authority to enter a joint venture that did not exist, but this is incorrect. It is entirely plausible that, for example, a government could give officials actual authority to spend a certain dollar amount to acquire a building, with no further oversight. In such a scenario, there would be no question that the officials had actual authority to enter into a contract within those particular parameters. Whether the officials actually did enter a contract would be an entirely different question. As an alternative example, if the Consulate Officials had

App. 16

authority to purchase a building within Dallas city limits, or within a certain time frame, actual authority would exist—a separate question from whether the Consulate Officials exercised that authority. Because the authorization process here occurred contemporaneously with the creation of the joint venture, the Consulate attempts to conflate the two issues. But whether the Consulate Officials had authority from the Mexican government to form a joint venture is a separate question from whether they exercised that authority in their dealings with Box. Simply put, here, the first question was answered by the district court on remand in *Box I* and the second question was defaulted by the Consulate.

## IV.

In Box's second appeal, he appeals the denial of his additional attorney's fees in the amount of $265,315. We review the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*. *T.B. ex rel. Debbra B. v. Bryan Indep. Sch. Dist.*, 628 F.3d 240, 243 (5th Cir. 2010). The district court's interpretation of a statute is a question of law reviewed *de novo*. *Id.*

Box argued that he was entitled to additional attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code based on his status as a prevailing party. The Consulate responded that Box was not entitled to attorney's fees because Chapter 38 does not provide for attorney's fees against foreign governments. The district court agreed with the Consulate and denied the motion.

App. 17

We agree with the Consulate and the district court that Chapter 38 does not entitle Box to the $265,315 in attorney's fees. Chapter 38 specifically permits recovery of attorney's fees from an "individual or corporation" on certain types of claims. Tex. Civ. Prac. & Rem. Codes § 38.001. A foreign government or a foreign government's agent or instrumentality is not covered by the plain text of the statute. *See id.* Moreover, Texas courts have interpreted the provision to prohibit collection of attorney's fees from municipal governments, specifically citing the statute's word choice excluding government entities. *See, e.g.*, *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.); *Dall. Area Rapid Transit v. Plummer*, 841 S.W.2d 870, 875 (Tex. App.—Dallas 1992, writ denied). Neither the plain text of § 38.001 nor the Texas courts' interpretation of it permits a party to recover attorney's fees from a foreign governmental entity. Thus, the district court correctly denied Box's motion for $265,315 in additional attorney's fees.

## V.

For the foregoing reasons, the district court's order granting the Consulate's Rule 59(e) motion and revised judgment is VACATED. This case is REMANDED with instructions to the district court to REINSTATE the original default judgment in full. The district court's order denying Box additional attorney's fees is AFFIRMED.

App. 18

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

### No. 14-10744 & 14-10953
### D.C. Docket No. 3:08-CV-1010

### [Filed August 19, 2015]

| | |
|---|---|
| BLAKE BOX, doing business as Blake Box Company, | ) ) ) |
| Plaintiff - Appellant, | ) ) |
| v. | ) ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) ) ) |
| Defendant - Appellee. | ) ) |

Appeals from the United States District Court for the Northern District of Texas, Dallas

Before KING, SMITH, and ELROD, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and vacated in part, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

App. 19

IT IS FURTHER ORDERED that each party bear
its own costs on appeal.

App. 20

_____

## APPENDIX B
_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**Civil Action No. 3:08-cv-1010-O**

**[Filed March 14, 2014]**

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are Dallas Mexican Consulate General's Sealed Motion for New Trial and Reconsideration and Brief in Support ("Motion for Reconsideration") (ECF No. 91), filed November 27, 2013; Plaintiff's Response (ECF No. 92), filed December 18, 2013; and Dallas Mexican Consulate General's Sealed Reply (ECF No. 93), filed December 30, 2013. Having reviewed the motion, related briefing, and the applicable law, the Court finds the Motion for

App. 21

Reconsideration should be and is hereby **GRANTED in part** and **DENIED in part**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this case, which are set out fully in the Court's Memorandum Opinion and Order. *See* Mem. Op. & Order, Oct. 30, 2013, ECF No. 90. Accordingly, a brief summary of the pertinent background follows. Plaintiff Blake Box d/b/a Blake Box Company ("Box") is a licensed real estate broker who worked with Defendant Dallas Mexican Consulate General ("Consulate") in its search for a new consulate location in Dallas, Texas. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Box contends he found a building (the "Property") for the Consulate to purchase, which was located at 1210 River Bend Drive and was part of a complex consisting of three buildings. *See id.* Box further alleges that when the owner of the three-building complex refused to subdivide the complex to permit the Consulate to acquire the Property, the Consulate officials agreed to enter a joint venture arrangement with Box whereby Box and possibly a third-party investor would buy the complex, subdivide it, and sell the Property to the Consulate. *Id.* at 4; *see also* Part III.B.2. *infra*. Ultimately, however, the Consulate purchased the Property from a third-party, Setco. *Id.* at 4-5. Box then filed suit against the Consulate contending the Consulate: (1) failed to pay Box for his real estate services and (2) breached the parties' joint venture agreement. *See generally id.*

After the Consulate failed to file any responsive pleading or otherwise defend the lawsuit, the Clerk of

App. 22

Court entered default against the Consulate. Clerk's Entry Default, ECF No. 10. On January 7, 2009, Box moved for default judgment. *See generally* Pl.'s Mot. Default J. & Mem. Supp., ECF No. 13. After a hearing, the Court granted Box's motion and entered final judgment the same day. Order, Sept. 30, 2009, ECF No. 16; Final J., ECF No. 17. On March 23, 2010, the Consulate filed its Motion to Set Aside Default Judgment (ECF No. 22).

The Consulate asserted that it was immune from suit under the Foreign Sovereign Immunities Act ("FSIA"). Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22. In granting default judgment, the Court relied on the commercial activity exception to the FSIA as its basis for subject matter jurisdiction. The Consulate contended the commercial activity exception did not apply because the Consulate officials lacked actual authority to transact with Box.[1] Mot. Set Aside

---

[1] The FSIA is the sole source of subject matter jurisdiction in lawsuits against foreign states. *Dale v. Colagiovanni*, 443 F.3d 425, 427-28 (5th Cir. 2006) (citing *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-39 (1989)). Generally, foreign states are immune from jurisdiction in United States' courts unless a FSIA exception applies. *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-33 (5th Cir. 1992) (citing 28 U.S.C. § 1605). The "commercial activity" exception is at issue in this case and provides that foreign states are not immune if the action is based upon "commercial activity that has a jurisdictional nexus with the United States." *Id.* at 533 (citing 28 U.S.C. § 1605(a)(1)-(2)).

Importantly, courts must determine whether the commercial activity is attributable to the foreign state. *See Dale*, 443 F.3d at 429. Under the FSIA, "foreign state" includes an agent of the foreign state. *See Bd. of Regents of Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp.*, 478 F.3d 274, 278 (5th Cir. 2007) (citing

App. 23

Default J. & Br. Supp. 9-12, ECF No. 22.

Box requested discovery to prove subject matter jurisdiction existed but, after conducting a hearing, the Court denied Box's request to conduct discovery and granted the Consulate's motion. *See* Pl. Suppl. Br. Opp'n Mot. Set Aside Default J. 7-8, ECF No. 34; Order, Dec. 23, 2010, ECF No. 36. The Court agreed that the Consulate was immune from suit under the FSIA because there was no evidence the Consulate officials were authorized to engage in the commercial activity at issue in this case. Order 10-15, Dec. 23, 2010, ECF No. 36; Final J., ECF No. 37.

Thereafter, Box appealed the Court's ruling to the United States Court of Appeals for the Fifth Circuit. Pl.'s Notice Appeal, ECF No. 38. On August 21, 2012, the Fifth Circuit held that this Court abused its discretion in denying Box discovery on the issue of whether the Consulate officials had actual authority to pursue the transaction at issue. *See Box*, 487 F. App'x at 884-85. The Fifth Circuit remanded for limited discovery noting the fact that "the Consulate subsequently purchased the exact property suggests that some form of actual authority might have existed for the transaction." *Id.* at 885 n.6, 886. In compliance with the Fifth Circuit's directive, this Court issued its order finding that the Consulate's original Motion to Set Aside Default Judgment stands and ordering discovery as to whether the Consulate officials had

---

28 U.S.C. § 1603(b)). The FSIA, however, requires "actual authority . . . to trigger the commercial activity exception." *Dale*, 443 F.3d at 428.

App. 24

actual authority to engage in commercial activity. Order, Dec. 7, 2012, ECF No. 49.

After the parties took discovery and fully briefed the motion to set aside default judgment, the Court issued its Memorandum Opinion and Order denying the Consulate's motion. On November 27, 2013, the Consulate filed the instant motion to reconsider. Box filed his response on December 18, 2013, and the Consulate filed its reply on December 30, 2013. Accordingly, this matter has been fully briefed and is ripe for determination.

## II.    LEGAL STANDARD

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 366 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "[It] is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Instead, a Rule 59(e) motion may address manifest errors of law or newly discovered evidence. *Id.*

"A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill.1997)); *cf. Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (defining "manifest error" in appellate review context as "one that is plain and indisuputable, and

App. 25

that amounts to a complete disregard of the controlling law." (quoting *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) (internal quotation marks omitted) (citing *Andreiu v. Ashcroft*, 253 F.3d 477, 490 (9th Cir. 2001) (Beezer, J., concurring); *LaCombe v. A–T–O, Inc.*, 679 F.2d 431, 435 (5th Cir. 1982); *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F. Supp. 2d 698, 713 (N.D. Tex. 1998)). Thus, Rule 59(e)allows courts to correct their own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)) (internal quotation marks omitted).

Courts have significant discretion in deciding whether to grant a motion to reconsider under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353, 355 (5th Cir. 1995). Nevertheless, grantinga motion for reconsideration is "an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. Thus, in determining whether to grant a motion to reconsider, courts must balance the following judicial imperatives: (1) "the need to bring litigation to an end" and (2) "the need to render just decisions on the basis of all the facts." *Id.*

## III.   ANALYSIS

The Consulate contends the Court committed manifest errors by: (1) applying the arguable basis rather than de novo standard to the 60(b)(4) motion, (2) assuming the joint venture existed, (3) placing the burden of proof on the Consulate rather than Box to disprove the commercial activity exception, and

App. 26

(4) finding actual authority for the provision of services or the joint venture. *See generally* Def.'s Mot. New Trial, ECF No. 91. For these reasons, the Consulate contends the Court should set aside the default judgment for lack of jurisdiction under the FSIA. *Id.* Box argues the Consulate "merely recycles its earlier briefing and argument—and therefore fails to support a new trial or reconsideration . . . ." Pl.'s Resp. 1, ECF No. 92.

For the reasons discussed below, the Court finds that it should have applied the de novo standard and should have evaluated the existence of the joint venture. Accordingly, the Court must reconsider whether the default judgment should be set aside as void. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (explaining motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."(citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)).

## A. Standard of Review for a 60(b)(4) Motion in the FSIA Context

In determining whether the default judgment should be set aside, the Court applied an arguable basis standard of review. *See* Mem. Op. & Order 4-7, Oct. 30, 2013, ECF No. 90. Shortly after the Court issued its Memorandum Opinion and Order, the United States Court of Appeals for the District of Columbia Circuit decided *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013). In

App. 27

*Bell*, the D.C. Circuit applied the de novo standard to a 60(b)(4) challenge to a default judgment in a FSIA case. *Id.* at 1181 ("A judgment remains void even after final judgment if the issuing court lacked subject-matter jurisdiction, regardless of whether there existed an 'arguable basis' for jurisdiction."). Although this precedent is not controlling, the D.C. Circuit applied existing case law to reach this outcome. *See id.* at 1182 (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 260 (3d Cir. 2008); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 437-40 (6th Cir. 2002); *MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658, 661-64 (5th Cir.1996); *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1469-71 (9th Cir. 1995); *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 (10th Cir. 1990)).

The Fifth Circuit has not addressed this issue but has expressed an analogous sentiment in a different context. In *MCI Telecommunications Corp. v. Alhadhood*, the Fifth Circuit explained that, by deferring a jurisdictional challenge, the foreign sovereign "only loses its right to defend on the merits." 82 F.3d 658, 662 (5th Cir. 1996); *see also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Rep. of Venez.*, 575 F.3d 491, 503 (5th Cir. 2009) ("[I]n disputes involving foreign sovereigns, this Court has long favored the resolution of legal issues on the merits where possible." (citing *MCI Telecommunications Corp.*, 82 F.3d at 662)). In light of this, the Court finds that the Fifth Circuit will likely follow the D.C.

App. 28

Circuit's approach in *Bell*. Accordingly, the Court finds that the proper standard of review for a 60(b)(4) challenge based on the FSIA is de novo.[2]

## B. Existence of the Joint Venture

Box asserts claims arising out of: (1) his provision of real estate services and (2) the parties' alleged joint venture. Under the FSIA commercial activity exception, the Court has jurisdiction over Box's claims if the action is based upon "commercial activity that has a jurisdictional nexus with the United States." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing 28 U.S.C. § 1605(a)(1)-(2)). Activity of an agent is only attributable to the foreign state if the agent was acting with actual authority. *Dale v. Colagiovanni*, 443 F.3d 425, 428-29 (5th Cir. 2006). In analyzing whether the Consulate officials had actual authority to enter into a joint venture with Box, the Court assumed the existence of the joint venture. *See generally* Mem. Op. & Order, Oct. 30, 2013, ECF No. 90. Thus, the Consulate now argues that the Court erred in assuming the existence of the joint venture because the foreign state cannot give actual authority for a transaction that did not exist. Moreover, the Consulate contends that the evidence does not support a finding of actual authority for the joint venture. The Court discusses each argument in turn.

---

[2] The Court reaches the same result as to the provision of services under the de novo standard of review, *see* Part III.D. *infra*, and vacates its finding as to the joint venture claim for an independent reason discussed in Part III.B. *infra*.

App. 29

### 1. <u>Did the Court Err in Accepting the Existence of the Joint Venture?</u>

In denying the motion to set aside the default judgment, the Court expressed that it accepted Box's well-pleaded allegations of fact for the merits of Box's claims but not for the existence of subject matter jurisdiction. *See* Mem. Op. & Order 2 n.2, Oct. 30, 2013, ECF No. 90 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002)). In application, however, the Court assumed the existence of the joint venture. *See generally id.* The Consulate contends "the question of whether the joint venture existed, and in what form it existed, is intrinsic to the analysis of actual authority. The Consulate could never have authorized a joint venture that never existed and even if a joint venture did exist, the terms of the venture are critical to deciding what, if anything was authorized." Def.'s Mot. Recons. 9, ECF No. 91.

Ordinarily, by defaulting, a defendant admits the plaintiff's well-pleaded factual allegations. *See, e.g.*, *Jackson*, 302 F.3d at 524 (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In reviewing a 60(b)(4) motion in the FSIA context, however, the Court is not required to accept the jurisdictional allegations in the complaint as true when those allegations are disputed by admissible evidence. *See Morgan Equip. Co. v. Novokrivorogsky State Ore Mining &Processing Enter.*, 57 F. Supp. 2d 863, 868-69 (N.D. Cal. 1998) ("If the Court were to assume the truth of the disputed factual allegations in Morgan's complaint, the Court might affirm an earlier decision that it lacked subject matter jurisdiction to render.").

App. 30

In *Morgan*, the United States District Court for the Northern District of California relied on cases in the motion to dismiss context. *See id.* (citing *Adler v. Fed. Rep. of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)); *see also Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C. Cir. 2004) ("If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the FSIA exceptions to immunity invoked by the plaintiff. But if the defendant challenges the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." (citations omitted) (internal quotation marks omitted)); *O'Bryan v. Holy See*, 556 F.3d 361, 376-77 (6th Cir. 2009) (explaining that foreign sovereign could make a factual attack to prove that a FSIA exception did not apply).

Although the Fifth Circuit has not addressed this precise issue, it has held that a defendant may attack the merits for the purpose of establishing that a court lacked personal jurisdiction to enter judgment. *Jackson*, 302 F.3d at 524-29. Moreover, in the motion to dismiss context, the Fifth Circuit has also held that a court is not required to accept the jurisdictional allegations in the complaint as true when the defendant makes a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also*

App. 31

*Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. Unit A Sept. 1981) ("Unlike in a facial attack where jurisdiction is determined upon the basis of the allegations of the complaint, accepted as true when a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."). Accordingly, the Court finds that the Fifth Circuit would likely support the rationale of *Morgan*.[3] Here, the Consulate presented a factual attack as to the existence of the joint venture. *See generally* Def.'s Reply, ECF No. 77. Accordingly, the Court should have inquired into whether a joint venture was actually formed and will do so now.

## 2.   Did the Alleged Joint Venture Exist?

In light of the foregoing, the Court reviews whether a joint venture existed between Box and the Consulate under a de novo standard of review. If the parties did not enter into a joint venture, there is no commercial activity upon which the Court may invoke the commercial activity exception to the FSIA. In other words, the Court only has jurisdiction over the claims arising out of the purported joint venture if: (1) a joint venture was actually formed between the Consulate and Box and (2) the Consulate officials had actual

---

[3] Although the Fifth Circuit rejected the Consulate's attempt to argue the merits of this case, the Fifth Circuit's discussion related to the Consulate's 60(b)(1) and 60(b)(6) challenges. 487 F. App'x at 887 ("Litigating such substantive arguments at this late hour is untimely and unfair."). In fact, the Fifth Circuit distinguished an attack on the merits from an attack rooted in the Court's jurisdiction. *Id.* (citing *Jackson*, 302 F.3d at 522).

App. 32

authority to enter into the joint venture. The Consulate centered its attack on the permissiveness of joint ventures under Mexican law. *Id.* at 5-6 (stating Mexican law requires joint venture agreement to be in writing and does not allow joint ventures with foreign entities).[4] The Court, however, finds that the inquiry begins and ends with the creation of the alleged joint venture. Accordingly, the Court must first determine the relevant law governing the formation of the purported joint venture.

The Consulate contends that the Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the "Procedures") is the sole source of actual authority for the purchase of real property.[5] *See* Mot. Set Aside Default J. 6, ECF No. 22. The Procedures, however do not address the formation of a joint venture. When the proponent of foreign law fails to prove the foreign law, the law of the forum controls. *See Banque Libanaise Pour Le Commerce v.*

---

[4] As noted previously, these requirements are not found in the Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the "Procedures"), which the Consulate offers as the sole source of authority for the purchase of property. *See* Mem. Op. & Order 11 n.7, Oct. 30, 2013, ECF No. 90. The Court need not reach this issue, however, as it resolves the question of whether the Consulate gave actual authority for the joint venture on the issue of formation.

[5] The Consulate also originally referenced the Internal Standards for the Administration of Mexican Representation's Real Property Assets Abroad ("Standards"), but the Court finds that the Standards were not in effect at the time of the transaction between Box and the Consulate officials. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 102-03, ECF No. 78-1.

App. 33

*Khreich*, 915 F.2d 1000, 1006-07 (5th Cir. 1990); *see also Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Bostrom*, 347 F.2d 168, 174 n.3 (5th Cir. 1965) ("Modern commentators are more or less in general agreement that the law of the forum should apply when foreign law is not proved."(citing Nussbaum, The Problem of Proving Foreign Law, 50 Yale L.J. 1018 (1941); Currie, On the Displacement of the Law of the Forum, 58 Cal. L. Rev. 964 (1958); Ehrenzweig, Conflict of Laws 366 (1962); Nussbaum, Proving the Law of Foreign Countries, 3 Am. J. Comp. L. 60 (1954); Stern, Foreign Law in the Courts: Judicial Notice and Proof, 45 Calif. L. Rev. 23 (1957)). Accordingly, the Court will apply Texas law on the issue of whether a joint venture was formed.

A joint venture must be based on an express or implied agreement, and its existence is a question of law for the court. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 319 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 879 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). In addition to the intention of the parties, the elements of a joint venture are: "(1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise." *Smith v. Deneve*, 285 S.W.3d 904, 913 (Tex. App.—Dallas 2009, no pet.) (citing *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981)); *Ingram v. Deere*, 288 S.W.3d 886, 894 (Tex. 2009) (citing *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978)) (stating intention of the parties is a "prime element" in determining whether a joint venture exists).

App. 34

Generally, joint ventures are indistinguishable from partnerships on the question of formation, and both are governed by the rules applicable to partnerships. *Id.*; *Ingram*, 288 S.W.3d at 894 n.2; Tex. Bus. Orgs. Code Ann. § 152.051(b) (stating"an association of two or more persons to carry on a business for profit as owners creates a partnership" regardless of whether the association is called a "joint venture"); *see also Pitts & Collard, L.L.P.*, 369 S.W.3d at 319 (citing *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 713 (Tex. App.—Houston [1st Dist.] 1988, writ denied)); *Harrington v. Harrington*, 742 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1987, no writ)) ("A joint venture is similar to a partnership, but it is ordinarily limited to a particular transaction or enterprise.").

The Texas Business Organizations Code ("TBOC") sets forth the following factors, which indicate the existence of a partnership:

    (1)    receipt or right to receive a share of profits of the business;

    (2)    expression of an intent to be partners in the business;

    (3)    participation or right to participate in control of the business;

    (4)    agreement to share or sharing:

        (A)    losses of the business; or

        (B)    liability for claims by third parties against the business; and

    (5)    agreement to contribute or contributing money or property to the business.

App. 35

Tex. Bus. Orgs. Code Ann. § 152.052(a).[6]

The "most important factors" are the sharing of profits and control over the business. *See Ingram*, 288 S.W.3d at 896; *Big Easy Cajun Corp. v. Dall. Galleria Ltd.*, 293 S.W.3d 345, 348 (Tex. App.—Dallas 2009, pet. denied). Courts, however, must examine the totality of the circumstances to determine whether a partnership exists. *Rojas v. Duarte*, 393 S.W.3d 837, 841 (Tex. App.—El Paso 2012, pet. denied) (citing *Ingram*, 288 S.W.3d at 898). No single factor is determinative and evidence in support of these factors is to be considered on a "continuum":

> On one end of the continuum, a partnership exists as a matter of law when conclusive evidence supports all five statutory factors. . . . On the other end of the continuum, a partnership does not exist as a matter of law when there is no evidence as to any of the five factors, and conclusive evidence of only one factor will normally be insufficient to establish the existence of a partnership. . . . Points on the evidentiary continuum between these two ends are where the challenge lies in applying the totality-of the circumstances test."

*Rojas*, 393 S.W.3d at 841 (citations omitted); *see also*

---

[6] On January 1, 2010, the Texas Revised Partnership Act ("TRPA") expired and the TBOC now applies to all partnerships regardless of their formation date. *See Ingram*, 288 S.W.3d at 894 n.4. The TBOC's rules for determining partnership formation "are substantially the same" as those under the TRPA. *Id.*; *see also Malone v. Patel*, 397 S.W.3d 658, 670 n.4 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

App. 36

*Ingram*, 288 S.W. 3d at 898 (explaining "difficulty of uniformly applying a totality-of-the-circumstances test"); *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 166 (Tex. App.—Houston [1stDist.] 2011, pet. denied) (noting all factors should be considered and no single factor is determinative) (citing *Ingram*, 288 S.W.3d at 896-97).

In his affidavit in support of damages, Box attested that he formed "a partnership with a selected equity source" to purchase the three-building complex and planned to "simultaneously spin off [the Property] to the Consulate for purchase so that they could use that single building as the Dallas Mexican Consulate." Aff. Box ¶ 7, ECF No. 11. Box further attested:

> I created a partnership with Provident Realty Advisors for the express purpose of purchasing the River Bend Complex as part of a joint venture with the Consulate to enable the Consulate to obtain [the Property] . . . . Upon completion of the purchase of the River Bend Complex, the joint venture would immediately sell [the Property] to the Dallas Mexican consulate for $3,800,000, while the joint venture partnership would retain ownership interest in the two remaining buildings making up the River Bend Complex.

*Id.* ¶ 9. Lastly, Box attested, "as part of the joint venture agreement, I would have retained the other two buildings comprising the River Bend Complex . . . . My interest in the joint venture that would have owned the other two building [sic] was 50%." *Id.* ¶ 15.

App. 37

On the face of his affidavit it is not clear whether Box formed a joint venture with the third-party investor or the Consulate or both entities. In his April 8, 2013 deposition, Box testified that his partner in the joint venture was Provident Realty Advisers ("PRA") and no one else. App. Def.'s Reply Ex. 7 (Box Dep.), App. 780, ECF No. 78-10. In a later deposition, Box testified "PRA was going to buy all three buildings," and "we put together the investor group to purchase all three buildings relying on, of course, the Mexican Consulate to subsequently follow through and, in the joint venture, purchase one of the three buildings." Suppl. App. Def.'s Suppl. Br. Ex. 1 (Box Dep.), App. 12, ECF No. 85. Box then clarified that the Consulate was not purchasing the property *from* the joint venture but as a part of the joint venture.[7] *Id.* at 20. Box testified, "[t]he joint venture was between me and my company and the Consulate to purchase one building. The other two buildings would be retained by Provident Realty Advisors, the investor group." *Id.* at 25; *see also id.* at 27 ("The investor group was prepared to execute a contract and close and subsequently close in reliance upon, you know, the Consulate being able to acquire the [Property]."); *id* at 28 ("Provident Realty Advisors, PRA River Bend, would purchase all three buildings and then subsequently sell one of three."). Box testified that his objective in the joint venture was to "find an investor group to purchase the three buildings in order for the joint venture—the Consulate to be able to attain or obtain the [Property]." *Id.* at 51.

---

[7] Box's differing explanations of the alleged joint venture causes the Court to discount his credibility on this issue.

App. 38

The party seeking to prove the existence of the joint venture bears the burden of proving the matter. *See, e.g.*, *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 195 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Ben Fitzgerald Realty Co. v. Muller*, 846 S.W.2d 110, 120 (Tex. App.—Tyler 1993, writ denied); *Gutierrez v. Yancey*, 650 S.W.2d 169, 171 (Tex. App.—San Antonio 1983, no writ)). Further, the proponent must present evidence that *both* parties expressed an intent to be partners. *See Ingram*, 288 S.W.3d at 900; *Rojas*, 393 S.W.3d at 842; *Westside Wrecker Serv.*, 361 S.W.3d at 168; *see also* Tex. Bus. Org. Code § 152.052(a)(2) ("Factors indicating that persons have created a partnership include *the persons'. . . expression of an intent to be partners . . . .*" (emphasis added)). Evidence of expressions of intent include "the parties' statements that they are partners, one party holding the other party out as a partner on the business's letterhead or name plate, or in a signed partnership agreement." *Ingram*, 288 S.W.3d at 900.

Box has not shown any expression by the Consulate of an intent to enter a joint venture with him. He could not produce any writing demonstrating a joint venture among himself, the Consulate, and PRA to purchase the three-building complex. *See* Suppl. App. Def.'s Suppl. Br. Ex. 1 (Box Dep.), App. 14-18, 23, ECF No. 85. Box did submit an email from a Consulate official that alludes to the need to subdivide the complex: "Fortunately an investor appeared who is going to acquire the real estate package and agreed to sell each building separately. . . ." App. Pl.'s Resp. Ex. 4 (Email), App. 74, ECF No. 70-1. This email, however, is consistent with the finding that the Consulate merely agreed to purchase the Property, not to enter a joint

App. 39

venture with the purpose of acquiring the three-building complex. Although the absence of this factor is not determinative, the Court finds that Box has failed to present evidence on the remaining factors as well.

The transaction most clearly outlined by Box, *see* note 6 *supra*, entails Box and the third-party investor purchasing the three-building complex and selling the Property to the Consulate. Box and/or the third-party investor would retain an interest in the remaining two buildings. Suppl. App. Def.'s Suppl. Br. Ex. 1 (Box Dep.), App. 25, ECF No. 85 ("The other two buildings would be retained by Provident Realty Advisors, the investor group."); Aff. Box ¶ 15, ECF No. 11. ("[A]s part of the joint venture agreement, I would have retained the other two buildings comprising the River Bend Complex . . . . My interest in the joint venture that would have owned the other two building [sic] was 50%."). The Consulate would not have any interest in the remaining two buildings. Thus, based on the foregoing factors, the joint venture, if any, was between Box and the third-party investor, not Box and the Consulate.

Notably, the Procedures require legal review prior to the execution of any contract for the purchase of real property. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 226-28, ECF No. 78-1. Accordingly, the Consulate was not authorized to enter a contract for the purchase of the Property absent approval by the legal department. *Id.* at 221 ("The Mexican Representations Abroad Holder [sic] must not sign any letter of intent, pure and financial sales and leasing contracts, without the opinion of Legal Counsel

App. 40

and the authorization of the Chief Clerk on behalf of the General Office of Real Property Assets and Material Resources."). As discussed more fully in the Court's Memorandum Opinion and Order, the Consulate officials never submitted any contract to purchase the Property from Box or PRA, the third-party investor, for legal review. *See* Mem. Op. & Order. 13-16, Oct. 30, 2013, ECF No. 90. Instead, the Consulate obtained approval for a contract to purchase the Property from Setco. Mot. Set Aside Default J. Ex. 5 (Steps), App. 394, ECF No. 78-3.

Based on the foregoing, it is apparent why Box framed his claim as a joint venture rather than a straight purchase of the Property from Box—the Consulate officials lacked actual authority under the Procedures to enter into a contract for the Purchase of the property from Box. Nevertheless, Box bears the burden of proving that a joint venture existed, and he has failed to do so. Because a joint venture between Box and the Consulate was never formed, the Consulate could not have received actual authority for the transaction. Thus, the formation of the joint venture was not commercial activity that would except this claim from the FSIA's general provision of immunity, and the Court must dismiss this claim for lack of subject matter jurisdiction.

### C. Burden of Proof

The Consulate also challenges the Court's allocation of the burden of proof. Although the Court alluded to the arguable basis standard in placing the burden on the Consulate, the Court finds that the Consulate nevertheless bears the ultimate burden under the de novo standard of review. "The FSIA begins with a

App. 41

presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies, and once shown, the sovereign bears the ultimate burden of persuasion to show the exception does not apply." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013) (citation omitted); *see also See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 390 n.14 (5th Cir. 1991)). Here, Box met his initial burden of showing the commercial activity exception applied. The burden then shifted to the Consulate to show the exception did not apply. Accordingly, the Court finds that the burden of proof was properly placed on the Consulate.

### D. Actual Authority for the Provision of Real Estate Services

Lastly, the Consulate argues the Court erred in finding the Consulate had actual authority to engage Box as a real estate agent. For the reasons set forth in the Court's Memorandum Opinion and Order, the Court rejects this argument. *See* Mem. Op. & Order. 13-16, Oct. 30, 2013, ECF No. 90; *see also* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 285-89, ECF No. 78-2 (authorizing the Consulate "to start the activities prior to the acquisition" of the Property); *id.* Ex. 2 (Guzman Dep.), App. 72-74, ECF No. 78-1 (stating authorized activities included "expenses and the retention or hiring of what needs to be hired; the things that need to be, or that are needed during the process of purchase."). Because the Consulate presents no manifest error or newly discovered evidence, its motion for reconsideration

App. 42

must be denied on this ground. *See Templet v. HydroChem Inc.*, 366 F.3d 473, 478 (5th Cir. 2004) (stating a 59(e)motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that it should have applied a de novo standard of review to the 60(b)(4) motion and should have inquired into the existence of the joint venture. Because these errors change the Court's decision, the Motion for Reconsideration is **GRANTED in part** and **DENIED in part**. The Memorandum Opinion and Order denying the motion to set aside default judgment is **VACATED in part**.

The default judgment entered against the Consulate on the joint venture claim is set aside. The default judgment entered against the Consulate on the provision of real estate services stands. The final judgment entered in this case is **VACATED**. An amended final judgment will issue separately.

**SO ORDERED** on this **14th day** of **March, 2014**.

/s/_____
          Reed O'Connor
          UNITED STATES DISTRICT JUDGE

App. 43

_____

**APPENDIX C**
_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**Civil Action No. 3:08-cv-1010-O**

**[Filed March 14, 2014]**

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**FINAL JUDGMENT**

The Court entered its Memorandum Opinion and Order granting in part Defendant's Motion for Reconsideration (ECF No. 91); vacating in part the Court's October 30, 2013 Memorandum Opinion and Order (ECF No. 90); and vacating the Final Judgment (ECF No. 17).

Consistent with the Court's Memorandum Opinion and Order, it is **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff Blake Box d/b/a Blake Box

App. 44

Company recover from Defendant Dallas Mexican Consulate General $94,225 representing $87,500 for services rendered and $6,725 in costs expended on behalf of Defendant.

It is further **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff's claims arising out of the alleged joint venture are dismissed for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act.

**SO ORDERED** on this **14th day** of **March, 2014**.

/s/_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

App. 45

_____

**APPENDIX D**
_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**Civil Action No. 3:08-cv-1010-O**

**[Filed October 30, 2013]**

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

   This case is on remand from the United States Court of Appeals for the Fifth Circuit to permit the parties to conduct discovery and file additional briefing concerning the Court's jurisdiction over this lawsuit under the Foreign Sovereign Immunities Act ("FSIA"). *See generally Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880 (5th Cir. 2012). At this stage of the litigation, Defendant Dallas Mexican Consulate General's

App. 46

("Consulate") Motion to Set Aside Default Judgment (ECF No. 22) is pending before the Court. Following discovery, Plaintiff Blake Box d/b/a Blake Box Company ("Box") and the Consulate filed their respective response, reply, sur-reply, and any supplemental information they wished to be considered.[1] Therefore, the Motion to Set Aside Default Judgment has been fully briefed and is ripe for determination.

## II.    FACTUAL BACKGROUND

Plaintiff Box is a licensed real estate broker who worked with the Consulate in its search for a new Consulate location. *See* Pl.'s Original Compl. 2-3, ECF

---

[1] Before the Court are: the Consulate's Motion to Set Aside Default Judgment and Brief in Support (ECF No. 22), filed March 23, 2010; Plaintiff's Response to the Consulate's Motion to Set Aside Default Judgment (ECF No. 69), filed May 8, 2013; Appendix to Plaintiff's Response to the Consulate's Motion to Set Aside Default Judgment (ECF No. 70), filed May 8, 2013; the Consulate's Sealed Reply in Support of Motion to Set Aside Default Judgment (ECF No. 77), filed May 29, 2013; Sealed Appendix to the Consulate's Sealed Reply in Support of Motion to Set Aside Default Judgment (ECF No. 78), filed May 29, 2013; the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 84), filed July 24, 2013; Supplemental Appendix in Support of the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 85), filed July 24, 2013; Plaintiff's Response to the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 86), filed August 14, 2013; Appendix to Plaintiff's Response to the Consulate's Supplemental Brief in Support of Motion to Set Aside Default Judgment (ECF No. 87), filed August 14, 2013; and Plaintiff's Sealed Sur-Reply to the Consulate's Sealed Reply in Support of Motion to Set Aside Default Judgment (ECF No. 89), filed September 17, 2013.

App. 47

No. 1. Hugo Juarez-Carillo and former Ambassador Enriqué Hubbard Urrea ("Consulate Officials") hired Box in 2006 to provide various real estate services related to identifying and securing a new Consulate building in Dallas.[2] *See id.* Initially, Box was to help the Consulate Officials secure a lease for the new facility, but the parties decided to look for a property to purchase instead. *See id.* at 3. Ultimately, Box found a building (the "Property") for the Consulate to purchase, which was located at 1210 River Bend Drive and was part of a complex consisting of three buildings. *See id.* When the owner of the three-building complex refused to subdivide the complex to permit the Consulate to acquire the Property it desired, the Consulate Officials agreed to enter a joint venture arrangement with Box whereby Box would buy the complex, subdivide it, and sell back to the Consulate the Property it needed. *Id.* at 4. Sometime in December 2007, Box learned that the Consulate purchased the Property from a third party, Setco, in a transaction almost identical to the one Box had arranged. *Id.* at 4-5. Ultimately, the Consulate Officials refused to pay Box and refused to abide by the terms of the joint venture. *Id.* Therefore, Box filed this

---

[2] The Court accepts Box's well-pleaded allegations of fact for the merits of Box's claims but not for the existence of subject matter jurisdiction. *See Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002). The only fact that is dispositive of the Rule 60(b)(4) motion, and therefore in dispute, is whether the Consulate Officials had actual authority to transact with Box, not whether the Consulate Officials merely contracted with Box. Accordingly, the Court will disregard the Consulate's attempts to argue the merits of the judgment, including the existence of the joint venture. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012).

App. 48

suit against the Consulate on June 16, 2008. *See generally id.*

In his complaint, Box asserted the following causes of action against the Consulate: (1) breach of contract, (2) fraud/fraudulent inducement, (3) breach of fiduciary duty, (4) unjust enrichment, (5) quantum meruit, (6) promissory estoppel, (7) constructive trust, (8) attorneys' fees, and (9) exemplary damages. *See generally id.* These claims arise out of Box's provision of real estate services *and* the subsequent formation of the joint venture. *See generally id.* The Consulate was served with summons and Box's Original Complaint on July 11, 2008. Pl.'s Mot. Default J. & Mem. Supp. ¶ 4, ECF No. 13. After failing to file any responsive pleading or otherwise defend the lawsuit, the Clerk of Court entered default against the Consulate. Clerk's Entry Default, ECF No. 10. On January 7, 2009, Box moved for default judgment. *See generally* Pl.'s Mot. Default J. & Mem. Supp., ECF No. 13. After a hearing, the Court granted Box's motion on September 20, 2009, and entered final judgment the same day. Order, Sept. 30, 2009, ECF No. 16; Final J., ECF No. 17.

On March 23, 2010, the Consulate filed its Motion to Set Aside Default Judgment (ECF No. 22). The Consulate asserted that it was immune from suit under the FSIA because the commercial activity exception to the FSIA did not apply to the Consulate's agreements with Box. Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22. Specifically, the Consulate argued that the Consulate Officials lacked actual authority to enter into the alleged agreements with Box, which is a prerequisite to applying the FSIA's commercial activity exception. *Id.* Box requested discovery to prove subject

App. 49

matter jurisdiction existed but, after conducting a hearing, the Court denied Box's request to conduct discovery and granted the Consulate's motion. *See* Pl. Suppl. Br. Opp'n Mot. Set Aside Default J. 7-8, ECF No. 34; Order, Dec. 23, 2010, ECF No. 36. The Court agreed that the Consulate was immune from suit under the FSIA because there was no evidence the Consulate Officials were authorized to engage in the commercial activity at issue in this case. Order 10-15, Dec. 23, 2010, ECF No. 36; Final J., ECF No. 37.

Thereafter, Box appealed the Court's ruling to the Fifth Circuit. Pl.'s Notice Appeal, ECF No. 38. On August 21, 2012, the Fifth Circuit held that this Court abused its discretion in denying Box discovery on the issue of whether the Consulate Officials had actual authority to pursue the transaction at issue. *See Box*, 487 F. App'x at 884-85. The Fifth Circuit remanded for limited discovery noting the fact that "the Consulate subsequently purchased the exact property suggests that some form of actual authority might have existed for the transaction." *Id.* at 885 n.6, 886. In compliance with the Fifth Circuit's directive, this Court issued its order finding that the Consulate's original Motion to Set Aside Default Judgment stands and ordering discovery as to whether the Consulate Officials had actual authority to engage in commercial activity. Order, Dec. 7, 2012, ECF No. 49.

Having reviewed the foregoing pleadings and evidence, the Court concludes that the Motion to Set Aside Default Judgment is **DENIED** for the following reasons.

App. 50

## III.   LEGAL STANDARD

### A. Relief under Federal Rule of Civil Procedure 60(b)(4)

Under Rule 60(b)(4), a party may obtain relief from a final judgment, order, or proceeding if the underlying judgment is void. Fed. R. Civ. P. 60(b)(4). A judgment is void and may be set aside under Rule 60(b)(4) if the court lacked subject matter or personal jurisdiction or if the court acted in a manner inconsistent with due process of law. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998). Rule 60(b)(4) "embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.'" *Jackson v. FIE Corp.*, 302 F.3d 515, 522 (5th Cir. 2002) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)).

However, "[a] Rule 60(b)(4) challenge to jurisdiction should be sustained only where there is a 'clear usurpation of power' or 'total want of jurisdiction.'" *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 64-65 (2d Cir. 1986)). When a court has both subject matter and personal jurisdiction, the "only inquiry is whether the district court acted in a manner so inconsistent with due process as to render the judgment void." *Id.* at 210 (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996)). Furthermore, "[w]hen . . . the motion is based on a void judgment under [R]ule 60(b)(4), the district court has no discretion—the judgment is either void or it is not."

App. 51

*Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) (citations omitted); *see also Magness v. Russ. Fed'n*, 247 F.3d 609, 619 n.19 (5th Cir. 2001). Thus, if the judgment is void, "the district court *must* set it aside." *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988) (citations omitted).

### 1. Rule 60(b)(4) Standard of Review

A judgment is not void simply because it may have been erroneous. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *see also Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938)) ("[E]rror in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction."). Likewise, a Rule 60(b)(4) motion is not a substitute for appeal. *Kansas City S. Ry. Co.*, 624 F.2d at 825 n.4. "[I]f a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997) (citing *Kansas City S. Ry. Co.*, 624 F.2d at 825 n.4); *see also Elgin Nat'l Watch Co. v. Barrett*, 213 F.2d 776, 779-80 (5th Cir. 1954); *Holston Inv. Inc. B.V.I. v. LanLogistics, Corp.*, 766 F. Supp. 2d 1327, 1329-30 (S.D. Fla. 2011) (noting higher standard of review applies to Rule 60(b)(4) motion unless defendant files timely appeal).

Accordingly, when analyzing a Rule 60(b)(4) motion that asserts a court lacked subject matter jurisdiction, a court must determine whether it at least had an

App. 52

"arguable basis" for exercising its jurisdiction. *See United Student Aid Funds, Inc.*, 559 U.S. at 271 (acknowledging that federal courts apply the arguable basis standard to Rule 60(b)(4) motions); *Pierce v. Kyle*, No. 12-15675, 2013 WL 4477856, *2 (11th Cir. Aug. 22, 2013) (applying arguable basis standard); *Wendt v. Leonard*, 431 F.3d 410, 413 (4th Cir. 2005) (same); *Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005) (same); *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 187 (2d Cir. 2003) (same); *In re G.A.D., Inc.*, 340 F.3d 331, 336 (6th Cir. 2003) (same); *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) ("[Rule 60(b)(4)] is narrowly tailored, such that a lack of subject matter jurisdiction will not always render a final judgment 'void.' Only when the jurisdictional error is 'egregious' will courts treat the judgment as void."); *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) (applying arguable basis standard); *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997) (same); *see also* 12 *Moore's Federal Practice* § 60.44 (Matthew Bender 3d ed.). *Contra Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*, 441 F. App'x 822, 824-25 (3d Cir. 2011) ("'[C]lear usurpation standard' for vacating an order affirming an arbitration award only applies in circumstances in which the parties have had their day in court on the issue of jurisdiction such that re-litigation of the issue is barred by principles of res judicata."). Thus, courts should grant a Rule 60(b)(4) motion "only if the absence of jurisdiction was so glaring as to constitute a 'total want of jurisdiction' or a 'plain usurpation of power' so as to render the judgment void from its inception." *Kocher*, 132 F.3d at 1230 (citing *Kansas City S. Ry. Co.*, 624 F.2d at 825).

App. 53

Here, as noted by the Fifth Circuit, the Consulate was aware of the lawsuit in time to file an appeal but chose not to do so. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 n.10 (5th Cir. 2012). Instead, the Consulate chose to proceed by way of a Rule 60(b)(4) motion. Accordingly, the Consulate's Motion to Set Aside Default Judgment should be granted only if the Court concludes it had no arguable basis to believe the FSIA conferred subject matter jurisdiction over this lawsuit.[3] *See Kocher*, 132 F.3d at1230.

## 2.  Burden of Proof

It is not entirely clear who bears the burden of proof on subject matter jurisdiction in the specific context of a Rule 60(b)(4) motion. *See Jackson v. FIE Corp.*, 302 F.3d 515, 520-21 & n.6 (5th Cir. 2002) (noting the district court placed the burden on the defendant in a Rule 60(b)(4) challenge to personal jurisdiction but declining to reach the issue as it was not challenged on appeal); *Semtek Intern., Inc. v. Info. Satellite Sys.*, No. 09-10183-RWZ, 2012 WL 831475, at *3-4 (D. Mass. Mar. 9, 2012) (placing "high burden" on defendant to establish that prior default judgment was void under Rule 60(b)(4) asserting lack of subject matter jurisdiction under the FSIA). Ordinarily, under the FSIA, once a defendant alleges that it is a "foreign

---

[3] The Parties briefed the arguable basis standard of review before the Fifth Circuit, but the Fifth Circuit did not address this issue given its decision to remand to permit discovery. Br. Appellant at 17, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 2603742 at *18; Br. Appellee at 17, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 9522997 at *17-18. Alternatively, if the appropriate standard is *de novo*, the Court finds that it would reach the same result.

App. 54

state," the plaintiff must produce facts showing that the commercial activity exception applies, "but the defendant retains the ultimate burden of proof on immunity." *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 390 n.14 (5th Cir. 1991)). Even if a foreign state does not appear, however, the district court must still determine whether immunity is available under the FSIA. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 492 n.20 (1962).

In light of the "arguable basis" standard, the Court finds that, in this context, the burden is properly placed on the defendant.[4] *See In re Diet Drugs Prods. Liab. Litig.*, 434 F. Supp. 2d 323, 333 (E.D. Pa. 2006) ("The burden on [the Rule 60(b)(4)] movants here is a heavy one because of the strong interest in the finality of judgments."). However, the Court's decision would be the same even if the burden is properly placed on Plaintiff.

### B. Foreign Sovereign Immunities Act

The FSIA is the sole source of subject matter jurisdiction in lawsuits against foreign states. *Dale v. Colagiovanni*, 443 F.3d 425, 427-28 (5th Cir. 2006) (citing *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-39 (1989)). Generally, foreign states

---

[4] The Parties also briefed the appropriate burden of proof for consideration by the Fifth Circuit, but the Fifth Circuit did not address this issue given its disposition of the case. Br. Appellant at 17, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 2603742 at *17; Br. Appellee at 19, *Box*, 487 F. App'x 880 (No. 11-10126), 2011 WL 9522997 at *19.

App. 55

are immune from jurisdiction in United States' courts unless a FSIA exception applies. *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-33 (5th Cir. 1992) (citing 28 U.S.C. § 1605). The "commercial activity" exception is at issue in this case and provides that foreign states are not immune if the action is based upon "commercial activity that has a jurisdictional nexus with the United States." *Id.* at 533 (citing 28 U.S.C. § 1605(a)(1)-(2)). Commercial activity means:

> either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

*Id.* (citing 28 U.S.C. § 1603(d)). A sufficient "jurisdictional nexus" can be demonstrated in one of the three following ways: "(1) a commercial activity carried on in the United States; (2) an act performed in the United States in connection with a commercial activity carried on outside the United States; or (3) a commercial activity carried on outside the United States that has a direct effect in the United States." *Id.* (citing *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 386 (5th Cir. 1991)). Importantly, courts must determine whether the commercial activity is attributable to the foreign state. *See Dale*, 443 F.3d at 429. Under the FSIA, "foreign state" includes an agent of the foreign state. *See Bd. of Regents of Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp.*, 478 F.3d 274, 278 (5th Cir. 2007) (citing 28 U.S.C.§ 1603(b)).

App. 56

The FSIA requires "actual authority . . . to trigger the commercial activity exception."[5] *Dale*, 443 F.3d at 428. When a government agent's actions are limited by statute, any action beyond those limitations is not attributable to the foreign state. *Doe v. Qi*, 349 F. Supp. 2d 1258, 1282 (N.D. Cal. 2004). Thus, the Court must determine whether the Consulate Officials were acting within their "official mandate" when they transacted with Box. *Id.* (citing *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1472 n.8 (9th Cir.1994)).

## IV.   MOTION TO SET ASIDE DEFAULT JUDGMENT

The Consulate contends that the default judgment entered in this case is void because the Court lacked subject matter jurisdiction to consider the case. Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22. The Consulate argues jurisdiction does not exist because it is a foreign state generally immune from suit under the FSIA and that the commercial activity exception to immunity does not apply because the Consulate Officials did not have actual authority to transact with Box. *Id.*; *see also Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532-33 (5th Cir. 1992) (citing 28 U.S.C. § 1605). Box, on the other hand, contends that the Consulate Officials had actual authority or, at minimum, that there is an arguable basis for the Court

---

[5] The Consulate does not dispute that the Consulate Officials are agents of the Mexican government; rather, the Consulate contends that the Consulate Officials did not have actual authority to transact with Box. Mot. Set Aside Default J. & Br. Supp. 9-12, ECF No. 22.

App. 57

to find actual authority. *See generally* Pl.'s Resp. Mot. Set Aside Default J., ECF No. 69; *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (acknowledging that federal courts apply the arguable basis standard to Rule 60(b)(4) motions). Specifically, Box points to the subsequent purchase of the same property under similar conditions as an indication that the Consulate Officials were authorized to pursue the transaction with him. Pl.'s Resp. Mot. Set Aside Default J. 17, ECF No. 69

## A. Scope of Review

In entering default judgment, the Court found that it had subject matter jurisdiction under the commercial activity exception. Mem. Op. & Order 2-6, Sep. 30, 2009, ECF No. 16. It is undisputed that this action is based upon the facilitation of real estate services and the formation of a joint venture between Box and the Consulate—commercial activity that occurred in the United States. *See id.*; Final J., Sept. 30, 2009, ECF No. 17 (awarding $87,500 for services rendered by Box to the Consulate; $6,725 in costs expended by Box on behalf of the Consulate; and $3,000,000 in lost profits on the joint venture agreement). The only issue for the Court to determine at this stage is whether the Consulate Officials had actual authority to transact with Box. *See generally Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880 (5th Cir. 2012). If they had authority to do so, there was an arguable basis for the exercise of subject matter jurisdiction. Importantly, the Court may not re-examine the merits of any of Box's claims. *See id.* at 887. Instead the scope of review is limited to determining whether the Court had an arguable basis to conclude that the commercial activity

App. 58

exception to the FSIA conferred subject matter jurisdiction.

### B. The Consulate Officials Had Actual Authority to Engage in a Commercial Activity on the Consulate's Behalf

The Court concludes that the Mexican government authorized the Consulate Officials to engage in a commercial activity that forms the basis of Box's claims. The Consulate contends that the Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the "Procedures") is the sole source of actual authority for the purchase of real property.[6] *See* Mot. Set Aside Default J. 6, ECF No. 22. The Consulate further argues that Box and the Consulate Officials failed to comply with the Procedures in relation to the purchase of the Property and, therefore, this failure deprived the Consulate Officials of actual authority to transact with Box.[7] *See*

---

[6] The Consulate also originally referenced the Internal Standards for the Administration of Mexican Representation's Real Property Assets Abroad ("Standards"), but the Court finds that the Standards were not in effect at the time of the transaction between Box and the Consulate Officials. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 102-03, ECF No. 78-1.

[7] The Consulate relies heavily on the Procedures for its contention that the Consulate Officials lacked actual authority, yet the Consulate's corporate representative, Ivonne Lopez Guzman, testified that the steps set forth in the Procedures "are not followed chronologically." *See id.* (Guzman depo.), App. 112, ECF No. 78-1. On one hand, the Consulate asserts that the Procedures are the ultimate source of authority. *See* Reply Supp. Mot. Set Aside Default J. 4, ECF No. 77. On the other hand, the Consulate

App. 59

*id.* at 4-7.

The Court, however, finds the Consulate's description of the authorization required to transact with Box to be too narrow. The sole issue before the Court is whether the Consulate Officials had actual authority to engage in a commercial activity—not just whether the Consulate Officials had actual authority to purchase the Property from Box. This lawsuit is based upon the facilitation of real estate services *and* the formation of a joint venture. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Thus, the Court will look to the Procedures to determine whether the Consulate Officials had actual authority to contract with Box for the provision of real estate services *or* for the joint venture. Importantly, this finding corresponds with the FSIA in that the crucial inquiry is whether this Court had an arguable basis for finding that the Consulate Officials had actual authority to engage in *a commercial activity* on the Consulate's behalf. *See*

---

contends that the steps in the Procedures are not followed in the order set forth in the Manual *and* that there are additional requirements to purchase real property, which are not in the Procedures. *See id.* at 6-7 (stating the following additional requirements not in the Procedures: (1) any agreement must also be in writing; (2) Mexican officials cannot obtain approval to purchase property from someone other than the present owner; (3) the Mexican government cannot enter joint ventures; and (4) although the Procedures contemplate authorization of a "maximum" purchase price, the Consulate could not purchase Property for less than that amount authorized). From the Consulate's point of view, the Procedures are flexible when it benefits the Consulate but rigid when it pertains to Box. This inconsistency diminishes the Consulate's credibility when it argues the Procedures must be followed precisely before authority exists.

App. 60

*Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992) (citing 28 U.S.C. § 1603(d)). Accordingly, the Court may look to the entire "course of commercial conduct." *See* 28 U.S.C. § 1603(d).

### 1. The Procedures

The general objective of the Procedures is to "[e]stablish a standards guide that allows the Mexican Representation holder abroad . . . to follow a [sic] ordered and systematic procedure for the acquisition and/or leasing of property abroad."[8] App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 217, ECF No. 78-1. The Policies section of the Procedures states: "The holder of the Mexican Representation Abroad will exercise the ownership rights and obligations of the property's acquisition . . . on behalf of the Ministry." *Id.* at 221. The Policies further provide: "In Order to formally begin any transaction for the property's acquisition . . . the budget resources authorized . . . must be taken into account." *Id.* Lastly, the Policies state that "[t]he Mexican Representations Abroad Holder must not sign any letter of intent, pure and financial sales and leasing contracts, without the opinion of Legal Counsel and the authorization of the Chief Clerk on behalf of the General Office of Real Property Assets and Material Resources." *Id.*

Thereafter, the Procedures contain twenty-eight steps for the "acquisition and/or leasing of real property

---

[8] The Procedures, as cited and quoted by the Court, are the translations from Spanish to English supplied by the Consulate. *See* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 212, ECF No. 78-1 (affidavit of accuracy).

App. 61

assets abroad." *Id.* at 222-28. The steps include submitting a formal request, ensuring technical specifications are met, securing a budget and, if the negotiations are successful, allocating funds and obtaining legal review prior to the execution of a contract.[9] *See generally id.*

In this case, the facts demonstrate that the Consulate submitted a formal request to acquire a new building, which outlined three potential properties under step one of the Procedures. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 271, ECF No. 78-2. GDRIM[10] issued a technical report and concluded that the Property was the most suitable location pursuant to step two. *Id.* at 275-82. GDIRM provided that the Property "will be submitted to the consideration of the superiors starting the negotiations for its acquisition immediately, beginning with making an appraisal." *Id.* at 282. GDIRM also noted that it would be necessary to investigate the Property to determine whether it was subject to debts, lawsuits, or mortgages. *Id.* In steps five through seven, the appropriate Mexican officials *authorized* the Consulate "to start the activities prior to the acquisition" of the Property. *Id.* at 285-89. These authorized activities included "expenses and the retention or hiring of what needs to be hired; the things that need to be, or that are needed during the process of purchase." App. Consulate's Reply Supp. Mot. Set

---

[9] A more comprehensive outline of the steps can be found in the appendix to this order.

[10] The Court assumes that, in translation, the GDIRM is the equivalent of the DGBIRM.

App. 62

Aside Default J. Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1. Notably, this authorization placed no limitation on whom the Consulate Officials may engage to complete these tasks nor did it exclude engaging Box. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 274, ECF No. 78-2. The Consulate also conducted a cost-benefit study and report regarding the Property pursuant to step nine. *Id.* at 291-378.

In step ten, the General Director notified the Consulate that "to start the acquisition process, it is necessary to do an appraisal . . ." *Id.* at 380-81. Pursuant to steps eleven and twelve, Mexican officials made inquiries into the availability of resources to acquire the Property and confirmed the resources existed. *Id.* at 383-89. In step sixteen, the Consulate submitted the appraisal for the Property, and the Deputy General Director commented:

> [T]he amount indicated in the appraisal . . . will be applied for the acquisition of the property located at 1210 River Bend Drive, Dallas, Texas [(the Property)]. Such being the case, I would appreciate the confirmation of the agreement of the owner with this figure.

*Id.* at 391-92. Finally, in step seventeen the Consulate submitted the proposed real estate agreement for legal review, which indicated that the Consulate intended to purchase the Property from Setco rather than Box. *Id.* at 394.

App. 63

2. <u>Actual Authority for a Commercial Activity</u>

A review of the undisputed facts demonstrates that Box provided real estate services to the Consulate Officials. *See* Pl.'s Original Compl. 2-3, ECF No. 1. Specifically, Box searched for properties that the Consulate could lease and, at the Consulate's direction, later searched for a property for the Consulate to purchase. *Id.* at 3. After Box located the Property, the appropriate Mexican officials determined it was the best location for the Consulate's needs. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 275-82, ECF No. 78-2. Box identified prospective sites, enlisted contractors, met with city officials, and was involved in negotiations. *See* Pl.'s Original Compl. 3, ECF No. 1. When the owner of the complex refused to subdivide to allow for the individual purchase of the Property, Box and the Consulate Officials agreed to enter a joint venture whereby Box would facilitate the Consulate's acquisition of the Property. *See id.* at 4.

The Mexican government indisputably authorized the Consulate to pursue the acquisition of a Property. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 5 (Steps), App. 285-89, ECF No. 78-2 (authorizing the Consulate "to start the activities prior to the acquisition"); *id.* Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1 (stating authorization for preliminary activities includes "expenses and the retention or hiring of what needs to be hired; the things that need to be, or that are needed during the process of purchase"). The evidence shows this authorization was not limited to hiring a particular individual or entity.

App. 64

The Consulate points to the draft contract, submitted under step seventeen of the Procedures, as an indication that the Consulate Officials only had authority to deal with Setco. *See* Consulate's Reply Supp. Mot. Set Aside Default J. 6-7, ECF No. 77. However, the evidence shows that prior to the contract with Setco, the Consulate Officials were given full authority for all preliminary activities and this authorization did not exclude hiring Box *or* specify the hiring of some other entity or person. *See* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1. Instead, the evidence clearly shows that the Consulate Officials were authorized to hire *whomever* needed to be hired *to complete the things that needed to be completed* to purchase the Property. *See id.* Pursuant to this authorization, the Consulate Officials engaged Box to carry out these necessary preliminary activities to acquire the Property. Based on the foregoing, the Court finds that the Consulate Officials had actual authority to engage Box as the Consulate's real estate broker in its pursuit of a new Consulate location, which was a commercial activity carried on in the United States under the provisions of the FSIA.

3.  <u>Extent of Subject Matter Jurisdiction</u>

The Court recognizes that this scenario is complicated in that the transaction which forms the basis of this action constitutes two distinct activities: (1) the provision of real estate services and (2) the formation of a joint venture that was intended to acquire real estate. While the Court finds that the Consulate Officials had actual authority to engage in all preliminary activities in pursuit of a new Consulate

App. 65

location (i.e., the retention of Box as the Consulate's real estate broker to acquire the Property), the joint venture poses a more difficult question because its purpose was to acquire real property. The Court need not reach, however, whether fulfilling the purpose of the joint venture falls within the scope of the Consulate Officials' actual authority, as the Court has determined the general authorization given to the Consulate for all activities leading up to the acquisition of the Property would include the retention of Box as a real estate broker.[11] Therefore, the commercial activity exception

---

[11] Even if the Court needed to decide whether forming the joint venture to obtain the Property was authorized, the Court would conclude that the Consulate was authorized to do so. The facts show the Consulate could not obtain the Property it desired outright, and it is undisputed that the only way the Consulate could acquire the Property it desired was to agree to structure the transaction as Box, and later Setco, did. Therefore, the Consulate agreed to form the joint venture with Box because it appeared to be the only way to obtain the Property. This agreement between Box and the Consulate Officials easily fits within Mexico's express authorization that directed the Consulate to complete the things needed to be completed to purchase the Property, in this instance to form a joint venture with Box. *See* App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 2 (Guzman depo.), App. 72-74, ECF No. 78-1. As stated above, the things that needed to be completed and the identities of those whom the Consulate would engage to complete them were not specified or limited. That Box's substantive cause of action for breach of the joint venture to actually acquire the Property may have encountered difficulties on the merits cannot be litigated here. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012); *see also Kocher*, 132 F.3d at 1230. Based on the facts of this case, the only activity not authorized was the actual purchase of the Property from Box.

App. 66

provides an arguable basis for the Court's exercise of subject matter jurisdiction over this lawsuit.

The Consulate asserts that these facts are similar to cases in which courts have found government agents lacked actual authority, but the Court finds this situation to be distinguishable. Specifically, the cases cited by the Consulate deal with scenarios in which the single activity at issue was not authorized. *See generally Allfreight Worldwide Cargo Inc. v. Ethiopian Airlines Enter.*, 307 F. App'x 721 (4th Cir. 2009) (execution of contract); *Dale v. Colagiovanni*, 443 F.3d 425 (5th Cir. 2006) (plan to purchase insurance companies); *Velasco v. Gov't of Indon.*, 370 F.3d 392 (4th Cir. 2004) (issuance of promissory notes).[12] Here, the Court is tasked with determining whether actual authority to engage in *a* commercial activity permits the exercise of subject matter jurisdiction over the entire transaction at issue. With no clear direction on this point, the Court will look to other situations for guidance.[13]

---

[12] It is also notable that the cases cited by the Consulate were not decided in the context of a Rule 60(b)(4) motion.

[13] In *Stena Rederi AB v. Comision de Contratos*, the Fifth Circuit noted:

> [W]e need not resolve the troublesome question whether the FSIA authorizes pendent claim jurisdiction; *i.e.*, whether the FSIA permits the district court to exercise jurisdiction over all of the plaintiff's claims so long as the plaintiff can establish a commercial activities jurisdictional nexus to at least one of its claims.

923 F.2d 380, 389 n.12 (5th Cir. 1991). The Fifth Circuit's discussion dealt with the jurisdictional nexus between the claims and commercial activity rather than the issue of actual authority.

App. 67

In *Saudi Arabia v. Nelson*, the United States Supreme Court explained that the "based upon" language of the commercial activity exception requires that the commercial activity form the basis of the lawsuit. *See* 507 U.S. 349, 356-57 (1993); *see also* 28 U.S.C. § 1605(a)(2) (stating the commercial activity exception applies when "the action is based upon a commercial activity carried on in the United States by the foreign state"). The Supreme Court cited with approval a Fifth Circuit case that stated the proper focus is on the "gravamen of the complaint." *Saudi Arabia* , 507 U.S. at 357 (citing *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 (5th Cir. 1985)). In other words, the commercial activity exception applies so long as the commercial activity constitutes one element of the plaintiff's claim. *Id.* at 357 (citing *Santos v. Compagnie Nationale Air Fr.*, 934 F.2d 890, 893 (7th Cir. 1991)); *see also Kirkham v. Societe Air Fr.*, 429 F.3d 288, 295-96 (D.C. Cir. 2005). Thus, in regard to the nexus required between the commercial activity and the claims asserted, courts recognize that the scope of subject matter jurisdiction may be broader than the commercial activity itself.

The Court also emphasizes the procedural posture of this action. While one district court doubted whether the FSIA authorizes "pendent claim jurisdiction," the Court cannot approach this issue in the same manner because the Consulate did not timely appear in this suit. *See Dar El-Bina Eng'g & Contracting Co., Ltd. v. Rep. of Iraq*, 79 F. Supp. 2d 374, 386 n.97 (S.D.N.Y. 2000). Because of the procedural posture of this case,

---

Nonetheless, the Court finds this footnote merits mention as it deals with pendent claim jurisdiction under the FSIA.

App. 68

the Court's sole task is deciding the Rule 60(b)(4) motion. Under Rule 60(b)(4), a judgment is void for lack of subject matter jurisdiction only if the Court acted in "'*total* want of jurisdiction.'" *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 64-65 (2d Cir. 1986)) (emphasis added). Thus, the Court's inquiry ended the moment it determined it had an arguable basis for the exercise of subject matter jurisdiction based on the retention of Box as a real estate broker. *See supra* Part IV.B.2. The Court risks overstepping the Fifth Circuit's mandate by conducting any inquiry beyond whether an arguable basis existed for the exercise of subject matter jurisdiction. *See Box v. Dallas Mex. Consulate Gen.*, 487 F. App'x 880, 887 (5th Cir. 2012).

For these reasons, the Court concludes that its finding that the Consulate Officials had actual authority to retain Box as the Consulate's real estate broker is a sufficient arguable basis for the exercise of subject matter jurisdiction over this lawsuit. This commercial activity, which occurred in the United States, forms the basis of Box's lawsuit and, as such, warrants application of the FSIA's commercial activity exception.[14] That the Consulate may have had meritorious defenses to Box's claims is irrelevant given the Consulate's decision to refrain from defending itself

---

[14] As noted in footnote 11, the Consulate Officials and Box were also authorized to enter into the joint venture. Therefore, this activity would independently support application of the commercial activity exception. The only activity the Consulate had no authority to engage in with Box was the actual purchase of the Property.

App. 69

after being notified of this lawsuit. *See Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997). Accordingly the Motion to Set Aside Default Judgment is **DENIED**.

## VI.   CONCLUSION

For these reasons, the Court finds that it had an arguable basis for the exercise of subject matter jurisdiction under the commercial activity exception of the Foreign Sovereign Immunities Act. Accordingly, it is **ORDERED** that the Motion to Set Aside Default Judgment is **DENIED** and the Default Judgment entered in this case stands.

**SO ORDERED** on this **30th day** of **October, 2013**.

/s/_____
      Reed O'Connor
      UNITED STATES DISTRICT JUDGE

App. 70

## APPENDIX

The twenty-eight steps in the Procedures can be summarized as follows:

- In step one, the General Office of Real Property Assets and Material Resources (DGBIRM) receives the Mexican Representative Abroad's (RME) written application for the acquisition of real property. App. Consulate's Reply Supp. Mot. Set Aside Default J. Ex. 3 (Procedures), App. 223, ECF No. 78-1.

- In step two, DGBIRM issues a technical report that determines whether the property "complies with the basic requirements." *Id.*

- If the property covers the basic requirements, the Procedures skip to step five in which the Associate General Office of Real Estate ("Associate General") "[p]resents the proposal's analysis to the Chief Clerk for his approval." *Id.* at 223-24.

- In step six, the Chief Clerk receives the Associate General's request for authorization, and the Chief Clerk conveys his decision in writing. *Id.* at 224.

- In step seven, the Associate General receives notice from the Chief Clerk regarding the acquisition of the property. *Id.*

- If the acquisition was approved by the Chief Clerk, the Procedures skip to step nine, which entails a written request for budget resources. The Procedures note that "[o]btaining the

App. 71

resources to perform the acquisition is essential to initiate any formal transaction with the property's owner." *Id.*

- In step ten, the Associate General requests that the RME perform an appraisal of the property and, in step eleven, the General Office of Programming, Organization, and Budget receives the written transaction authorization request of budgetary resources. *Id.* at 225.

- Step twelve also involves a written request for authorization of budget resources, and if the resources are authorized, the Procedures skip to step sixteen. *Id.* at 225-26. At this point, the Associate General "[i]nform[s] the RME of the authorization and maximum sales and/or leasing price, in order to carry out the last negotiation with the property owner regarding the price and sales price conditions and indicate that once the agreement is closed to remit the sales contract project . . . ." *Id.* at 226.

- Generally, the remaining steps entail legal review and execution of the final sales contract. *Id.* at 226-28.

App. 72

———————

**APPENDIX E**

———————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**No. 11-10126**

**[Filed August 21, 2012]**

———————————————————

| | |
|---|---|
| BLAKE BOX, doing business as Blake Box Company, | ) |
| | ) |
| | ) |
| Plaintiff - Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) |
| | ) |
| | ) |
| Defendant - Appellee. | ) |
| | ) |

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC 3:08-CV-1010

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

———————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

App. 73

Blake Box appeals the district court's ruling that its earlier default judgment against the Dallas Mexican Consulate General was void for lack of subject matter jurisdiction. Because we conclude that the district court abused its discretion in denying Blake Box the opportunity for limited discovery on the issue of whether the Consulate's officials lacked actual authority, we VACATE and REMAND for additional proceedings consistent with this opinion.

I.

In 2006, the Mexican Consulate in Dallas began searching for new office space. Appellant Blake Box alleges the former Ambassador Enriqué Hubbard Urrea (Hubbard) and then Assistant Consul Hugo Juarez-Carillo (Juarez) hired Box on behalf of the Consulate to provide various real estate services in connection with their desire to identify and acquire a new consulate building. Box ultimately located a suitable building within a three-building complex at River Bend Drive.

When the River Bend property owner refused to sell just one of the buildings, the Consulate allegedly agreed to enter a joint venture arrangement in which Box and his investors would buy the entire property and sell back one of the buildings to the Consulate. Box accordingly formed a partnership with investors, negotiated a deal with the property owner, and obtained space plans, construction proposals, and appraisal information, which he provided to the Consulate. In May 2007, the Consulate sent all of Box's documents to Mexico City for approval, and in August, the Consulate communicated with Box to receive additional appraisal information. Then in December

App. 74

2007, Box learned that the Consulate used Box's plans to complete the same River Bend transaction but with a third-party investor.

On March 11, 2008, Box's lawyer sent a demand letter to Ambassador Hubbard at the Consulate. Two days later, the Consulate's Dallas lawyer Pablo Alvarado responded on behalf of the Consulate, and the lawyers exchanged several letters about Box's demand.

Box sued the Consulate in federal district court on June 16, 2008, alleging breach of contract, fraudulent inducement, breach of fiduciary duty, unjust enrichment, quantum meruit, promissory estoppel, constructive trust, attorney fees, and exemplary damages. On June 22, 2008, a Consulate spokesman told reporters that the Consulate had knowledge of the lawsuit. Box served the Consulate on July 11, 2008 by delivery of both an English and Spanish translation of the Summons and the Original Complaint to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos in Mexico City as required by Article 15 of the Hague Convention.[1] When the Consulate failed to answer or appear, Box's counsel notified Alvarado, the Consulate's Dallas counsel, of the lawsuit and prior service, attaching copies of all the documents served.

On September 19, 2008, the Consulate had still not appeared, and Box requested entry of default judgment. The district court held an evidentiary

---

[1] As discussed below, the parties dispute whether the service complied with all of the conditions of the Hague Convention. Specifically, the Consulate argues that the Mexican government never issued a certificate acknowledging receipt of service.

App. 75

hearing on September 30, 2009, and signed a default judgment that same day. The district court determined that the elements of the commercial activity exception to the Foreign Sovereign Immunities Act (FSIA) existed because the activity was commercial in nature and there was a sufficient nexus between the activity and the United States. *See* 28 U.S.C. § 1605(a)(2) ("A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . .").

After the entry of default judgment, Ambassador Hubbard left his position as Head of Mission on October 7, 2009. The new consular general, Ambassador Cué-Vega (Cué), was appointed on November 16, 2009. At a press conference that same day, Cué learned of the default judgment for the first time.[2]

On March 23, 2010, the Consulate moved to set aside the default judgment. Specifically, the Consulate argued that the judgment was void under Rule 60(b)(4) because the district court lacked subject matter and personal jurisdiction, and that the judgment was the

---

[2] As evidence of the incoming Cué's lack of knowledge, the Consulate relies on an affidavit from Deputy Consul General Alberto Bernal Acero (Bernal), who served as the Acting Consul General during the interim, that states Cué "was previously unaware of the Default Judgment." However, Bernal's affidavit does not say that former Ambassador Hubbard or Bernal himself had been unaware of the proceedings. Indeed, the Consulate conceded to the district court that it was not challenging that it had received actual notice of the lawsuit.

App. 76

result of mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1). As to subject matter jurisdiction, the Consulate argued that the commercial activity exception requires the state actor to possess actual authority from the foreign government, that Mexican law predicates actual authority to purchase real estate on officials in Mexico City authorizing the purchase, and that Mexico City never authorized any transaction with Box.

The Consulate introduced the following evidence to show that the Consulate officials lacked the authority to act on behalf of the Mexican government: (1) Mexico's Internal Standards for the Administration of Mexican Representation's Real Property Abroad (the Standards); (2) Mexico's Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the Procedures); and (3) an affidavit by Deputy Consul General Bernal.

The Standards provide:

It is mandatory that not only RME's[3] follow and apply these Standards, but also the Ministry personnel involved in the process of acquisition and leasing of property and of contracting public works and their related services. . . .

All acquisition of property as well as leasing or any other transaction involving the disposition of property, regardless of the amount they

---

[3] RME is an abbreviation for "Mexican Representations Abroad" or the Consulate.

App. 77

represent, will require the OM's[4] authorization.

The Procedures state that the Consulate "must not sign any letter of intent, pure and financial sales and leasing contracts" involving real property "without the opinion of Legal Counsel and the authorization of the Chief Clerk."[5]

The Bernal affidavit quoted the above Standards and Procedures and explained that compliance with them is mandatory under Mexican law. Then, the affidavit made the following statements: "The Chief Clerk of the General Office of Real Property Assets and Material Resources never approved of any agreement with Blake Box" and "[n]either former Ambassador Enriqué Hubbard Urrea, Mr. Hugo Juarez-Carillo, or anyone else at the Consulate had authority to bind the Consulate or the government of Mexico to a contract with Blake Box." The Consulate relied on this affidavit to show that its officials lacked actual authority for a transaction with Box.

The district court agreed, setting aside the default judgment for lack of subject matter jurisdiction. The district court did not reach the Consulate's alternative arguments of lack of personal jurisdiction due to improper service or of the judgment resulting from

---

[4] OM is an abbreviation for the Chief Clerk of the General Office of Real Property Assets and Material Resources.

[5] The Consulate argues in its brief that the Standards and Procedures require "express written approval from the proper Mexican authority." Nothing in the cited portions of the Standards and Procedures or the accompanying affidavit state that the approval must be written.

App. 78

mistake or excusable neglect. Finally, the district court denied Box's request for limited discovery on subject matter jurisdiction "[b]ecause the Court did not place the burden on Plaintiff to establish subject matter jurisdiction."

## II.

Box argues the district court erred in denying limited discovery on the issue of subject matter jurisdiction. He maintains that the answer to the question of whether the Chief Clerk authorized the transaction "lies within the exclusive custody or control of the defendant." The district court ruled that "[b]ecause the Court did not place the burden on Plaintiff to establish subject matter jurisdiction, Plaintiff's alternative request to conduct discovery to prove subject matter jurisdiction is DENIED." This rationale for denying discovery conflicts with the district court's ruling against Box that "Plaintiff provides no evidence of authorization or approval from the Chief Clerk, nor does he aver that such approval exists."

District courts enjoy "broad discretion in all discovery matters" and "such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000) (internal quotation marks omitted). Nevertheless, when "there is a factual question regarding a foreign sovereign's entitlement to immunity [under the FSIA], and thus a factual question regarding a district court's jurisdiction, the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence

App. 79

of jurisdiction." *Hansen v. PT Bank Negara Indon. (Persero), TBK*, 601 F.3d 1059, 1063-64 (10th Cir. 2010) (internal quotation marks omitted); *see also McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996) ("When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss."). The Consulate responds that extensive jurisdictional discovery must be limited in the sovereign immunity context to protect the government's immunity from the costs of litigation. *Kelly v. Syria Shell Petroleum Dev. B. V.*, 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992) ("Several courts have observed the tension between permitting discovery to substantiate exceptions to statutory sovereign immunity and protecting a sovereign's . . . legitimate claim to immunity from discovery."). Box replies that in each of the cases cited by the Consulate to illustrate the need to limit discovery in the FSIA context the district courts had in fact allowed some tailored form of jurisdictional discovery.

The Consulate cites *Arriba* for the proposition that district courts have the discretion to deny discovery on jurisdiction. In that case, the plaintiff brought "generalized conspiratorial allegations" that could not "be proved without massive, intrusive discovery in Mexico on highly sensitive domestic issues." *Arriba*, 962 F.2d at 536. The court held that the plaintiff failed to allege a commercial activity, and distinguished cases

App. 80

that allowed limited jurisdictional discovery where the plaintiffs had alleged specific facts that would establish FSIA jurisdiction. *Id.* at 537. "At the very least, discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Id*. at 534. Unlike the case in *Arriba*, Box disputes and seeks discovery on the discrete issue that Hubbard and Juarez were authorized to purchase the consulate building, which if true would establish FSIA jurisdiction.

The Consulate also cites *Kelly* as a Fifth Circuit case that emphasizes the importance of limiting discovery when dealing with FSIA immunity. There, the plaintiffs argued that the district court should have allowed additional jurisdictional discovery prior to dismissal. *Kelly*, 213 F.3d at 855. However, this court affirmed the district court's denial of more discovery because the plaintiffs "did *not* take advantage of the ample opportunity to conduct discovery" earlier in the proceedings and the district court must only provide "an *opportunity* for discovery." *Id.* (emphasis in original). Rather than supporting the Consulate's position, *Kelly* suggests abuse of discretion where the district court did not provide an opportunity for limited discovery in the first instance.

We are cognizant of the district court's broad discretion over discovery issues and the heightened concern in the FSIA immunity context. Nevertheless, we hold that the district court abused its discretion here because actual authorization is a discrete issue conducive to limited discovery, the relevant documents reside exclusively with the defendant, and Box never received an opportunity for even narrowly tailored

App. 81

discovery.[6] To hold otherwise would allow any foreign government to escape jurisdiction by simply attesting in an affidavit that the requisite authorization was never provided. Finally, the district court's stated rationale for denying discovery—that the plaintiff did not bear the burden—contradicts the court's subsequent focus on the plaintiff's lack of evidence of actual authority.

### III.

The Consulate also argued to the district court that the default judgment was void under Rule 60(b)(4) for lack of personal jurisdiction, and that the judgment could be set aside under Rule 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect. The district court did not reach these arguments, and the Consulate reiterates them on appeal as alternative grounds for affirming the district court.

### A.

First, the Consulate contends that the district court lacked personal jurisdiction because Box's service was inadequate under the Hague Convention. Specifically, the Consulate complains that although Box sent the correct documents to the correct agency, the Hague Convention requires the foreign state to issue a

---

[6] We also note that the fact the Consulate subsequently purchased the exact property suggests that some form of actual authority might have existed for the transaction. Interestingly, the Bernal affidavit produced by the Consulate does not unequivocally deny that the Chief Clerk authorized the transaction more generally, but rather narrowly emphasized that the Chief Clerk "never approved of any agreement with Blake Box." Given these circumstances, limited discovery is all the more appropriate.

App. 82

certificate indicating service on itself, which Mexico never did in this case. Thus, the sole argument for lack of personal jurisdiction is that the Mexican government did not issue this certificate.

Service of process under the FSIA is governed by 28 U.S.C. § 1608. The relevant provision allows Box to serve the Consulate "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." § 1608(a)(2). Moreover, "plaintiffs must strictly comply with the statutory service of process provisions" of § 1608(a), and actual notice is insufficient. *Magness v. Russian Fed'n*, 247 F.3d 609, 616 (5th Cir. 2001).

The Consulate argues that the Hague Convention, as the applicable international convention, requires the Central Authority of the foreign government to complete a certificate stating "that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered." Hague Convention Art. 6, Nov. 15, 1966, 20 UST 361. The Convention allows for default judgment without the certificate if "every reasonable effort has been made to obtain it through the competent authorities." *Id.* Art. 15. The Consulate cites two district court cases from California where failure to acquire the certificate rendered the service of process incomplete. *See OGM, Inc. v. Televisa, S.A. de C.V.*, 2009 WL 1025971, at *3 (C.D. Cal. April 15, 2009); *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 660083, at *4 (N.D. Cal. Feb. 28, 2007) (finding that a "single call" to the Antigua Governor's office does not constitute "every reasonable effort" to

App. 83

obtain the certificate). In both of these cases, however, the plaintiffs sought to serve a complaint against foreign corporations Father than the foreign government itself, rendering the certificate explaining service to the corporation more important than explaining service on itself. More importantly, the fact that the foreign government is the defendant—whose lawyer had already contacted Box's legal counsel about this dispute—means that any direct communication with Mexican officials would constitute an ethical violation. Tex. R. Prof. Conduct 4.02. Therefore, Box made "every reasonable effort" when it took the only step ethically permitted by informing Mr. Alvarado of the case and providing him a duplicate of all the service documents, making service proper under the Hague Convention.

Moreover, we note that courts have found "that service of process was properly perfected under the Hague Convention, notwithstanding the failure of the Central Authority to return a Certificate" when the plaintiff attempts in good faith to comply with the Hague Convention and the defendant had sufficient notice "that no injustice would result." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2nd Cir. 2005) (citation omitted). After all, "[i]t was certainly not [Box's] fault that the [Mexican] authorities did not return a formal Certificate." *Id.* The Consulate does not dispute that Box sent the correct documents to the correct office, and the record indicates that both Mexico and the Consulate had notice of the lawsuit and an

App. 84

ability to defend.[7] In fact, Box argues that the Consulate's own motion to set aside the default judgment violates Article 16 of the Hague Convention that authorizes judges to relieve defendant from failure to appeal only if the defendant "did not have knowledge of the [service] in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal." Hague Convention Art. 16(a).[8]

---

[7] On October 2, 2008, the Assistant Director of International Jurisdiction for Mexico, Bertha Sanchez Miranda, wrote a letter to the process server acknowledging receipt of service but claiming she lacked the means to notify the consulate because the Consulate was not "within the jurisdiction." The Consulate spokesman had already acknowledged its awareness of the lawsuit. At the district court, the Consulate admitted that they had knowledge of the lawsuit:

> The Court: So do you disagree that Bertha Sanchez-Miranda received this packet? Ms. McComas: Somebody there received it and gave it to her, or she received it herself. I don't know. I don't know how it got to her. Clearly, someone in that office received it, and I don't dispute that. I want to make one other thing clear. I'm also not disputing we had knowledge of the lawsuit, and I think that's clear from what we just said. Because I think Mr. Dennis misunderstood me when he said no knowledge of the lawsuit until 2009. What I'm saying is that I can't tell you why they didn't act on it. I think they did have knowledge.

[8] "When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled—(a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to

App. 85

B.

Finally, the Consulate argues the judgment should be set aside for mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1), or "for any other reason that justifies relief" under Rule 60(b)(6).

Under this heading, the Consulate seeks to raise what it claims are "multiple meritorious defenses to Box's claims." These include the statute of frauds for the oral agreement, failure to receive Secretary of State approval via the Foreign Missions Act,[9] and excessiveness of the damages award. Litigating such substantive arguments at this late hour is untimely and unfair. "Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Although a defendant in federal court "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment *on jurisdictional grounds*," *Jackson,* 302 F.3d at 522 (emphasis added) (citation

---

defend, or knowledge of the judgment in sufficient time to appeal, and (b) the defendant has disclosed a prima facie defense to the action on the merits." Hague Convention Art. 16.

[9] "The Secretary shall require any foreign mission . . . to notify the Secretary prior to any proposed acquisition, or any proposed sale or other disposition, of any real property by or on behalf of such mission. The foreign mission (or other party acting on behalf of the foreign mission) may initiate or execute any contract, proceeding, application, or other action required for the proposed action [only after giving notification]." 22 U.S.C. § 4305(a)(1).

App. 86

omitted), the defendant should not be able to sandbag a default judgment with ordinary defenses on the merits.[10]

## IV.

The district court abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority. For this reason, we VACATE the district court's ruling that its earlier default judgement was void for lack of subject matter jurisdiction, and REMAND for limited discovery and further proceedings in accordance with this opinion.

---

[10] The Consulate suggests in its brief that the new Ambassador responded expeditiously when he entered office and learned of the past default judgment. However, the Consulate concedes that it had actual notice of the lawsuit since the initial filing in 2008. There is simply no basis on this record for arguing surprise or excusable neglect.

App. 87

_____

**APPENDIX F**
_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**CIVIL ACTION NO. 3:08-CV-1010-O**

**[Filed December 23, 2010]**

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX, COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant Dallas Mexican Consulate General's Motion to Set Aside Default Judgment with Brief and Appendix in Support (ECF No. 22) filed March 23, 2010; Plaintiff Blake Box's Response (ECF No. 25) filed April 22, 2010 and Appendix in Support ("Pl. App.") (ECF No. 26); Defendant's Reply (ECF No. 27) filed May 5, 2010; Defendant's Supplemental Document (ECF No. 33) filed August 20, 2010; Plaintiff Box's Supplemental

App. 88

Brief in Opposition to Defendant's Motion to Set Aside (ECF No. 34) filed August 20, 2010; and Defendant's Response to Plaintiff Box's Brief in Opposition (ECF No. 35) filed August 24, 2010.

Having considered the filings, oral argument, and applicable law, the Court finds the motion to set aside the default judgment should be and is hereby **GRANTED** because the Court lacks subject matter jurisdiction.

I.    Factual and Procedural Background

This action arises from an agreement between Plaintiff Blake Box ("Plaintiff" or "Box") and the Dallas Mexican Consulate General ("Defendant" or "Consulate") regarding the purchase of a new consulate building within Dallas city limits. Plaintiff, a licensed real estate broker, asserts that former Ambassador Enriqué Hubbard Urrea ("Ambassador Hubbard") and Hugo Juarez-Carillo ("Juarez"), acting on behalf of the Consulate, hired him in 2006 to provide real estate services, real estate analysis, space planning and other various services related to identifying and securing a new Consulate building. Initially, the Consulate retained Plaintiff to aid in searching for a lease arrangement. Plaintiff claims that sometime thereafter, the terms of the agreement changed from services related to leasing a building to services for purchasing a building for the Consulate. Plaintiff further asserts that when the owner of a three-building complex located in Dallas refused to subdivide the property, Ambassador Hubbard and Juarez agreed to enter a joint venture arrangement on behalf of the Consulate under which Plaintiff and his investors would buy the property, subdivide it, and sell back one

App. 89

of the buildings to the Consulate. Sometime in December 2007, Plaintiff learned that the Consulate purchased the building from a third-party individual.

Plaintiff sued the Consulate on June 16, 2008 asserting claims for breach of contract, fraud/ fraudulent inducement, breach of fiduciary duty, unjust enrichment, quantum meruit, promissory estoppel, constructive trust, attorneys' fees, and exemplary damages. Compl. ¶¶ 22-42, ECF No. 1. Plaintiff alleges that the Consulate violated agreements relating to his services by failing to compensate him for his work, by essentially stealing his work product, and by secretly negotiating with another entity to complete the very transaction Box engineered.

Defendant was served on July 11, 2008 by delivery of both an English and Spanish translation of the Summons and Plaintiff's Original Complaint to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos, Ave. Juarez #20 (Plaza Juarez), Colonial Centro, 06010 Mexico D.F. *See* Pl. Req. to Clerk for Entry of Default, ECF No. 7; Aff. of Rick Hamilton, ECF No. 7-3.

When the Consulate failed to answer or otherwise appear, Plaintiff filed a request for the clerk's entry of default on September 19, 2008. *Id.* The clerk made an entry of default on October 20, 2008. Clerk's Entry of Default, ECF No. 10. Plaintiff then moved the Court for entry of a default judgment. Pl.'s Mot. for Default J., ECF No. 13. The Court held a hearing on Plaintiff's motion on September 30, 2009. That same day, the Court entered a default judgment against the Consulate for $3,125,689.83 plus interest accruing at

App. 90

the rate of 0.40% per annum. Mem. Op. & Order, ECF No. 16; Final J., ECF No. 17.

The Consulate filed the instant motion to set aside the default judgment on March 23, 2010. Def. Mot. to Set Aside Default J., ECF No. 22. The Court held a hearing on August 13, 2010 and allowed the parties to submit additional briefing thereafter.

II.     Discussion

The Consulate moves to set aside the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b).[1] The Consulate moves for relief from the judgment on two grounds: first, that it is void under Rule 60(b)(4), and second, that it was the result of mistake, inadvertence, surprise or excusable neglect under Rule 60(b)(1).

## A. Relief Under Rule 60(b)(4)

The Consulate asserts that the judgment is void under Rule 60(b)(4) based on two grounds: first, that this Court lacked subject matter jurisdiction when the judgment was entered and, second, that the Court lacked personal jurisdiction because of ineffective service of process.

A motion for relief under Rule 60(b)(4) allows a party to receive relief from a final judgment, order, or proceeding if the underlying judgment is void. Rule 60(b)(4) states, "[o]n a motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or

---

[1] Rule 55(c) states that a district court may set aside a default judgment "in accordance with rule 60(b)." Fed. R. Civ. P. 55(c).

App. 91

proceeding for the following reasons . . . (4) the judgment is void." Fed. R. Civ. P. 60(b)(4). The Fifth Circuit has recognized two circumstances in which a judgment may be set aside under Rule 60(b)(4): (1) if the court lacked subject matter or personal jurisdiction; and (2) if the court acted in a manner inconsistent with due process of law. *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998), cert. denied, 525 U.S. 1041, S. Ct. 591, 142 L. Ed. 2d 534 (1998). The Fifth Circuit explains that Rule 60(b)(4) "embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.'" *Jackson v. FIE Corp.,* 302 F.3d 515, 522 (5th Cir. 2002) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)). "When . . . the motion is based on a void judgment under Rule 60(b)(4), the district court has no discretion - the judgment is either void or it is not." *Recreational Props., Inc. v. Sw. Mortgage Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) (citations omitted); *see also Magness v. Russ. Fed'n*, 247 F.3d 609, 619 n. 19 (5th Cir. 2001). If the judgment is void, "the district court *must* set it aside." *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind* , 841 F.2d 646, 649 (5th Cir. 1988) (citations omitted).

Plaintiff raises two procedural arguments for why the Consulate's motion should fail. First, Plaintiff argues that the Consulate's motion is untimely. Second, Plaintiff argues that the Consulate improperly seeks to raise a factual issue related to jurisdiction, namely the authority of its agents.

App. 92

Motions brought pursuant to Rule 60(b)(4) have no set time limit. *Carter,* 136 F.3d at 1006. "There is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142-43 (5th Cir. 1996) (quoting *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993)). Therefore, the Court finds that the Consulate's Rule 60(b)(4) motion is timely.

Next, Plaintiff argues that the Consulate, by its default, admitted the plaintiff's "well-pleaded allegations of fact . . . ." Pl. Resp. 6, ECF No. 25. As support for this argument, Plaintiff cites to *Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.*, 401 F.3d 603, 606-607 (5th Cir. 2005). In *Dial One*, the court denied a Rule 60(b) motion holding that "'[t]hese motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" 401 F.3d at 606-07 (citations omitted). In *Dial One,* the court denied the motion following a bench trial, not a default judgment. *See id.* In addition, a jurisdictional challenge did not form the basis of the motion in *Dial One*. Therefore, the Court does not find *Dial One* persuasive as to Plaintiff's argument that the Consulate waived its jurisdictional challenge. Even if a new theory has been raised, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 96 S. Ct. 1202, 47 L. Ed. 2d 435 (1976);

App. 93

*see also Hester Int'l Corp. v. Fed. Rep. of Nigeria*, 879 F.2d 170, 175 (5th Cir. 1989) (analyzing jurisdiction related to a foreign sovereign in the context of a Rule 60(b) motion).

In a related vein, Plaintiff asserts that the factual issue of the extent of authority is not properly before the Court in light of the default judgment. However, in *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission,* the Second Circuit considered the issue of authority brought up under a Rule 60(b) motion after entry of a default judgment against a foreign entity. 877 F.2d 189, 194-95 (2d Cir. 1989). In setting aside the default judgment, the Second Circuit recognized that "a decision concerning subject matter jurisdiction under the FSIA may require the resolution of substantive issues." *Id.* at 195. Thus, the Court finds that a district court may consider the issue of authority after entry of a default judgment when subject matter jurisdiction is later challenged by the foreign state.

Even though a default judgment was entered, the Court is not required to assume the truth of all facts alleged in the complaint in making its subject matter jurisdiction analysis upon a Rule 60(b)(4) motion. *See Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enter.,* 57 F. Supp. 2d 863, 868-869 (N.D. Cal. 1998). In setting aside a default judgment, the district court in *Morgan Equip Co.* held that "in the context of an FSIA case: 'a district court may properly look beyond the complaint's jurisdictional allegations and view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists.'" 57 F. Supp. 2d at 868 (quoting

App. 94

*Adler v. Fed. Rep. of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997) (citing *Bowyer v. U.S. Dept. of Air Force*, 875 F.2d 632 (7th Cir. 1989), cert. denied, 493 U.S. 1046, 107 L. Ed. 2d 840, 110 S. Ct. 846 (1990)). Therefore, the Court finds that if admissible evidence establishes a lack of subject matter jurisdiction, the Court must set aside the default judgment.

## B. The Foreign Sovereign Immunities Act "FSIA"

This case is governed by the FSIA, 28 U.S.C. §§ 1602-1611. Title 28 U.S.C. § 1330(a) grants to the federal courts original jurisdiction over suits against a foreign state where the foreign state is not entitled to immunity under §§ 1605-1607 of the FSIA. Section 1330(b) provides that personal jurisdiction exists as to such claims where service has been made under § 1608. 28 U.S.C. § 1330(b). Thus, the Court's first inquiry, whether subject matter jurisdiction exists, entails application of the substantive provisions of the FSIA to determine whether an exception to sovereign immunity applies. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983). Subject matter jurisdiction, or competence, cannot be waived; even if the foreign state has not appeared the district court must determine whether immunity is unavailable under the FSIA. *Id.* at 494, n.20.

### 1. Legal Standard

The FSIA provides the sole source of subject matter jurisdiction in suits against a foreign state. *Dale v. Colagiovanni*, 443 F.3d 425, 427-28 (5th Cir. 2006); *see also Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-39, 109 S. Ct. 683, 102 L. Ed. 2d 818

App. 95

(1989). "The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts." *Byrd v. Corporacion Forestal y Industrial De Olancho S.A.,* 182 F.3d 380, 388 (5th Cir. 1999) (quoting *Moran v. The Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994) (citing 28 U.S.C. § 1604)). "However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply." *Id.* Therefore, the Consulate is subject to jurisdiction if one of the FSIA's exceptions apply.

The party seeking immunity bears the initial burden of establishing a prima facie showing that it qualifies as a foreign state under the FSIA. *Morgan,* 57 F. Supp. at 869 (citing *Phaneuf v. Rep. of Indon.*, 106 F.3d 302, 305 (9th Cir. 1997); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1463 (9th Cir. 1995), cert. denied, 516 U.S. 869 (1995) (citations omitted)). Once the prima facie case is established, the burden shifts to the plaintiff to offer evidence that an exception to the FSIA applies. *Phaneuf*, 106 F.3d at 307. If the plaintiff meets this standard, the burden shifts back to the party seeking immunity to demonstrate by a preponderance of the evidence that the exception does not apply. *Id.*

2.  Foreign State / Agency or Instrumentality of a Foreign State

The FSIA defines some entities as "foreign states", and others as "agencies or instrumentalities of foreign states". 28 U.S.C. § 1603. Section 1603(a) provides: "A 'foreign state', except as used in Section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Section

App. 96

(b) defines an "agency or instrumentality" of a foreign state as:

> any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the law of any third country.

28 U.S.C. § 1603(b).

The FSIA draws a distinction between a foreign state and an agency or instrumentality of a foreign state with regard to service of process. *See* 28 U.S.C. § 1608(a) & (b); *Magness,* 247 F.3d at 615-16. Proper service upon a foreign state, detailed in § 1608(a), is only satisfied by strict compliance, whereas service upon an agency or instrumentality of a foreign state, detailed in section § 1608(b), can be accomplished through substantial compliance. *Id.*

The parties dispute whether the Consulate is a foreign state or an agency or instrumentality of a foreign state. Plaintiff argues that the Consulate is an agency or instrumentality of a foreign state, relying on the Court's previous order granting Plaintiff's motion for default judgment. *See* Memo. Op. & Order 2, ECF No. 16. The Consulate disagrees and argues that it is properly characterized as a foreign state under the FSIA.

In *Gray v. Permanent Mission of People's Republic of Congo,* the district court, after reviewing the

App. 97

legislative history of the FSIA, concluded that a consulate is a "foreign state". *See* 443 F. Supp. 816, 820 (S.D.N.Y.), *aff'd,* 580 F.2d 1044 (2d Cir. 1978). "[T]he House Report states that "such buildings [including diplomatic and consular missions] are those of the foreign state itself." *Id.* (citing to H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. 15, reprinted in [1976] U.S. Code Cong. & Admin. News 6604, 6614 ("House Report"). Further, "[t]he legislative history of the FSIA states:

> As a general matter, entities which meet the definition of an 'agency or instrumentality' of a foreign state could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name."

*Gerritsen v. Escobar y Cordova*, 721 F. Supp. 253, 257-58 (C.D. Cal. 1988) (citing 1976 United States Administrative News & Code at 6614) (quotations omitted). In *Gerritsen*, the district court held that the Mexican Consulate in Los Angeles must be served in strict compliance under Section 1608(a) of the FSIA, the provision governing service upon a "foreign state". *Id.*

Finally, in *Marlowe v. Argentine Naval Com.* the court held that the Argentine Naval Commission ("ANC"), headquartered in Washington, D.C., qualified as a "foreign state" under the FSIA based on the ANC's role in its government. 604 F. Supp. 703, 706-07

App. 98

(D.D.C. 1985). Citing to *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 398 (E.D. Va. 1984), the court recognized that the ANC maintained an office in the District of Columbia staffed exclusively by active duty Argentine Naval officers who were treated as diplomatic agents and reported directly to the Argentine ambassador. *Id.* In addition, all contracts were negotiated at the express decision and directive of the Argentine Navy itself, and ANC's offices were located in a building owned by Argentina which flew the Argentine flag. *Id.* The court concluded that ANC was "part and parcel of the Argentine Navy thereby qualifying as a foreign state or a political subdivision of the Argentine government." *Id.* at 707 (citations omitted).

In this case, Plaintiff provides no basis for differentiating the Consulate's existence as separate from the United Mexican States. The Consulate is more like the Congo Mission in *Gray* and the ANC in *Marlowe,* rather than the commercially-related entities listed as examples of agencies or instrumentalities in the FSIA's legislative history. *See Gerritsen*, 721 F. Supp. at 257-58 (citing to legislative provision listing examples of agencies or instrumentalities). Therefore, the Court vacates its previous holding that the Consulate is an "agency or instrumentality of a foreign state" and finds that the Consulate is a "foreign state" under the FSIA.

### 3. Commercial Activity Exception

As a foreign state, the Consulate is immune from suit unless one of the FSIA's exceptions apply. Section 1605(a) lists the exceptions to the general rule of immunity under the FSIA. 28 U.S.C. § 1605 (a)(1)-(6).

App. 99

Plaintiff asserts that subject matter jurisdiction exists in this case based on the commercial activity exception. *See* 28 U.S.C. § 1605(a)(2). The commercial activity exception provides that a foreign state shall not be immune in any action:

> . . . based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

In the Fifth Circuit, a district court must address three questions in order to determine whether the commercial activity exception applies. *De Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985). First, the Court must identify the activity that forms the basis of the suit. *Id.* Next, the Court must determine whether the activity is commercial or governmental in nature. *Id.* Finally, the Court must determine whether there is a sufficient nexus between the commercial activity and the United States. *Id.*

The Court previously found that all three prongs in *De Sanchez* were met when granting Plaintiff's motion for default judgment. Mem. Op. & Order 3-6, ECF No. 16. The Court therefore concluded that subject matter jurisdiction existed based on the commercial

App. 100

activity exception. *Id.* The Consulate does not move to set aside the Court's default judgment on any of these findings.

Rather, the Consulate moves to set aside the default judgment based on the issue of authority. The Fifth Circuit holds that a "plaintiff must demonstrate that the agent acted with the actual authority of the state to trigger the commercial activity exception." *Dale,* 443 F.3d at 428-29. Apparent authority is insufficient. *Id.* at 429. In *Dale,* the Fifth Circuit held that a plaintiff could not hold the Vatican liable for an insurance scheme by one of its agents based on the Vatican representative's apparent authority. *Id.* at 428-29. The Fourth and Ninth Circuit have also concluded that conduct by an agent acting with apparent authority is insufficient to trigger the commercial activity exception and give a basis for jurisdiction. *Id.; see Velasco v. Gov't of Indonesia*, 370 F.3d 392, 399-400 (4th Cir. 2004); *Phaneuf,* 106 F.3d at 307-308.

The Consulate argues that Ambassador Hubbard and Juarez had no actual authority to bind the Consulate or the government of Mexico to any agreements with Plaintiff. Plaintiff asserts that actual authority is not required when suing an agency or instrumentality of a foreign state. Plaintiff also asserts that even if the Consulate is not considered an agency or instrumentality, Ambassador Hubbard and Juarez had actual authority to enter into the agreements with him based on the subsequent purchase of the building from another seller.

Plaintiff urges the Court to interpret *Dale* as only requiring actual authority when a plaintiff sues a foreign state as opposed to an agency or

App. 101

instrumentality of a foreign state. Having determined that the Consulate is a "foreign state" under the FSIA, the Court finds that this argument is no longer applicable. *See supra* at 8. Even if the Consulate were an agency or instrumentality, *Dale* does not distinguish cases involving suit against an agency or instrumentality versus a foreign state on agency grounds. *See Dale*, 443 F.3d at 429. Rather, *Dale* distinguishes cases addressing the presumption of separate, juridical status of governmental instrumentalities, which do not address agency in the commercial activity exception context. *Id.* at 429 (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983); *Hester,* 879 F.2d at 176-81. Therefore, the Court finds that actual authority is required in order for the commercial activity exception to apply.

Having found that actual authority is required, the Court must determine whether the agents had actual authority to enter into any agreements with Plaintiff. In *First Fidelity Bank,* Antigua sought relief from a default judgment under Rule 60(b)(4), arguing that the court lacked subject matter jurisdiction because its ambassador lacked authority to waive its sovereign immunity. 877 F.2d at 194-95. The Second Circuit set aside the default judgment on the basis of Rule 60(b)(6), concluding that Antigua should have an opportunity to defend on the merits. *Id.* at 196. Not having sufficient information about the facts regarding authority, the parties were ordered to proceed to discovery and possibly trial before the district court could rule on either substance or jurisdiction. *Id.* at 196-97.

App. 102

Unlike the case in *First Fidelity*, it is clear from the evidence submitted by the Consulate that Ambassador Hubbard and Juarez did not have actual authority to bind the Consulate to any agreements with Plaintiff. Plaintiff essentially claims two agreements were made: one to provide broker services and another to facilitate the purchase of the property from Plaintiff and his investors – the joint venture agreement. *See* Pl. Compl. ¶ 23, ECF No. 1. In order for the Consulate to enter into an agreement for services or a joint venture for the purchase of property, the agreement would have to be approved by the appropriate authorities in Mexico. Bernal Decl. ¶¶ 8-11, Def. App. 2-3, ECF No. 22-2.[2] The approval process to acquire or lease property is set out in detail in (a) the Internal Standards for the Administration of Mexican Representation's Real Property Assets Abroad (the "Standards") and (b) the Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the "Procedures"). Bernal Decl. ¶¶ 9-11, Def. App. 2-3, ECF No. 22-2; Def. App. 14, 47, 57, ECF No. 22-2. The mandatory standards provide that any transaction involving the acquisition or disposition of property requires the authorization of the Chief Clerk of the General Office of Real Property Assets and Material Resources in

---

[2] Alberto Bernal Acero ("Bernal") currently serves as the Deputy Consul General of the Dallas Mexican Consulate. *Id* at ¶ 2. Mr. Bernal took the position of Acting Consul General when Ambassador Hubbard left the position of Head of the Mission on October 7, 2009. *Id.* at ¶ 4. Mr. Bernal served as Acting Consul General of the Consulate from October 7, 2009 to November 16, 2009. *Id.* at ¶ 3.

App. 103

Mexico.[3] Bernal Decl. ¶ 10, Def. App. 3, ECF No. 22-2; Def. App. 22, 25, ECF No. 22-2. The Procedures state that a Mexican representative abroad "must not sign any letter of intent, pure and financial sales and leasing contracts, without the opinion of Legal Counsel and the authorization of the Chief Clerk on behalf of the General Office of Real Property Assets and Material Resources." Bernal Decl. ¶ 11, Def. App. 3, ECF No. 22-2; Def. App. 55, ¶ 25, ECF No. 22-2. Bernal testifies that the Chief Clerk never approved of any agreements with Plaintiff. Bernal Decl. ¶ 12, Def. App. 3, ECF No. 22-2.

Plaintiff provides no evidence of authorization or approval from the Chief Clerk, nor does he aver that such approval exists. In contrast, Plaintiff states that Consulate officials were allegedly "indicating that our joint venture was still in the works" and that officials were advising that "the Dallas Mexican Consulate was waiting for final approval from Mexico." Box Aff. ¶ 11, Pl. App. 90-91, ECF No. 26. An email from Juarez to Plaintiff on May 25, 2007 states: "Today we sent all the documents to our offices in Mexico City. Lets hope for the best." Pl. App. 10, ECF No. 26. Thus it is clear that the agents did not have actual authority to enter into any agreements with Plaintiff without authorization from Mexico.

---

[3] Specifically, the Standards provide: "All acquisition of property as well as leasing or any other transaction involving the disposition of property, regardless of the amount they represent, will require the OM's [i.e., Chief Clerk] authorization." Def. App. 25, ECF No. 22-2.

App. 104

Plaintiff argues that the subsequent purchase and sale of the property from the third-party seller confirms that the agents had actual authority to complete the sale. But this does not establish that the agents had actual authority to enter into any agreements with Plaintiff, nor does it establish that any such agreements received the requisite approval from Mexico.

Therefore, the Court finds that the Consulate has met its burden of demonstrating by a preponderance of the evidence that the agents did not have actual authority to enter into any agreements with Plaintiff. Absent actual authority, the Court must dismiss the case without prejudice for lack of subject matter jurisdiction.

## C. Other Grounds for Relief

The Consulate also moves to set aside the default judgment under Rule 60(b)(4) based on a lack of personal jurisdiction, arguing that service was not completed in proper compliance with the FSIA. In addition, the Consulate moves to set aside the default judgment under Rule 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect.

Having found that dismissal is appropriate for lack of subject matter jurisdiction, the Court need not reach the Consulate's alternate grounds for setting aside the default judgment.

III.     Conclusion

Because the Consulate is immune from suit under the FSIA and the commercial activity exception does not apply, Plaintiff's claims against the Consulate are

App. 105

**DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Because the Court did not place the burden on Plaintiff to establish subject matter jurisdiction, Plaintiff's alternative request to conduct discovery to prove subject matter jurisdiction is **DENIED.**

**SO ORDERED** on this **23rd** day of **December, 2010.**

/s/_____
    Reed O'Connor
    UNITED STATES DISTRICT JUDGE

App. 106

_____

## APPENDIX G
_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**CIVIL ACTION NO. 3:08-CV-1010-O**

**[Filed December 23, 2010]**

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX, COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) ) ) |
| Defendant. | ) ) ) |

## FINAL JUDGMENT

The Court has granted Defendant Dallas Mexican Consulate General's Motion to Set Aside Default Judgment (ECF No. 22) filed March 23, 2010.

**IT IS THEREFORE ORDERED, ADJUDGED,** and **DECREED** that all claims presented in this case are hereby dismissed without prejudice for the reasons stated therein.

App. 107

**SO ORDERED** on this **23rd** day of **December, 2010.**

/s/_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

App. 108

—————————

**APPENDIX H**
—————————

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**CIVIL ACTION NO. 3:08-CV-1010-O**

**[Filed September 30, 2009]**

—————————————————————

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX, COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) ) ) |
| Defendant. | ) ) |

—————————————————————

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment (Doc. #13) filed January 7, 2009 (the "Motion") and supporting documents. For the reasons explained below, the Motion is GRANTED.

**I.       Background Facts**

Plaintiff Blake Box ("Plaintiff") filed this action against Defendant Dallas Mexican Consulate General ("Consulate" or "Defendant") on June 16, 2008. Plaintiff

App. 109

alleges that the Defendant hired him in 2006 to provide real estate services, specifically, real estate analysis, space planning and various other services related to identifying and securing a new Consulate building for Defendant within Dallas city limits.

Plaintiff further alleges that Defendant violated agreements relating to these services by failing to compensate Plaintiff for his work, by essentially stealing Plaintiff's work product, and by secretly negotiating with another entity to complete the very transaction that Plaintiff engineered. Plaintiff asserts claims for: (1) breach of contract, (2) fraud/fraudulent inducement, (3) breach of fiduciary duty, (4) unjust enrichment, (5) quantum meruit, (6) promissory estoppel, (7) constructive trust, (8) attorneys' fees, and (9) exemplary damages.

Plaintiff filed this Motion under Federal Rule of Civil Procedure 55 seeking actual damages in the amount of $3,094,225.00 and attorney's fees and costs in the amount of $31,464.83.

Before resolving the Motion, the Court must address three threshold issues: (1) whether the Foreign Sovereign Immunities Act ("FSIA") applies, (2) whether the Court has subject matter jurisdiction over the case under FSIA, and (3) whether the Court has personal jurisdiction over the defendant under FSIA.

## II.   Jurisdiction and the Foreign Sovereign Immunities Act ("FSIA")

### A. Applicability of FSIA

This case is governed by FSIA, 28 U.S.C. §§ 1602-1611. FSIA applies to suits against a foreign state and

App. 110

generally defines "foreign state" as including "an agency or instrumentality of a foreign state..." 28 U.S.C. § 1603(a).

"An 'agency or instrumentality of a foreign state' means any entity— (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof..., and (3) which is neither a citizen of a State of the United States... nor created under the laws of any third country." 28 U.S.C. § 1603(b).

The Defendant in this case is a separate legal entity, is an organ of Mexico, and is neither a citizen of a State of the United States nor created under the laws of a third country. *See Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1517 (9th Cir. 1987) (holding that the Mexican Consulate meets the test for an "agency or instrumentality" and falls within FSIA's definition of a foreign state). Thus, the Defendant is an "agency or instrumentality of a foreign state" and is a "foreign state" for purposes of FSIA. *Id.* Therefore, FSIA governs the case.

## B. Subject Matter Jurisdiction under FSIA

### 1. General Rule- Immunity

FSIA is the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities. *See* 28 U.S.C. § 1330(a); *Shapiro v. Republic of Bol.*, 930 F.2d 1013, 1017 (2nd Cir. 1991). Generally, FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States..." 28 U.S.C. § 1604. Unless an exception applies in this case, the Defendant is immune from the jurisdiction of this Court.

App. 111

## 2. *Commercial Activity Exception*

The commercial activity exception to FSIA immunity applies in this case. Under FSIA, "[a] foreign state shall not be immune from the jurisdiction of the courts of the United States…in any case– … in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).

Three questions must be answered to determine whether the commercial activity exception applies. *De Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985). First, identify the activity that forms the basis of the suit. *Id.* Next, determine whether the activity is commercial or governmental in nature. *Id.* Finally, determine whether there is a sufficient nexus between the commercial activity and the United States. *Id.*

### a. The Activity that Forms the Basis of the Suit

In the present case, the underlying activity involved a contract for services related to the purchase or lease of real estate–specifically, of office space–meeting the Defendant's criteria. At Defendant's direction, the Plaintiff searched for and identified a suitable building for the Defendant. At Defendant's instruction, Plaintiff consulted architects, contractors, and city officials about the proposed site. Plaintiff also commissioned space and construction plans and reviewed them with representatives for the Defendant.

As the parties' business relationship evolved, they decided to enter into a joint venture for the purchase of a particular office complex, and Plaintiff negotiated

App. 112

with the seller on behalf of the joint venture. Defendant represented to Plaintiff that they were waiting for funds from Mexico to complete the transaction, but in fact, without Plaintiff's knowledge or consent, Defendant began negotiations with a third-party investor to complete the real estate transaction. Using Plaintiff's plans and work product, Defendant and the third-party investor successfully completed the very transaction that Plaintiff had engineered. Plaintiff learned of this only after the transaction was complete.

b. Commercial or Governmental Nature of the Activity

Commercial activity under FSIA is defined as "either a regular course of commercial conduct or a particular transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d); *MCI Telecomm. Corp. v. Alhadhood*, 82 F.3d 658, 662–63 (5th Cir. 1996). Therefore, we look to the nature of the parties' transactions— here, a real-estate-services-turned-joint-venture agreement— rather than the purpose of the parties' transaction— to secure a Mexican Consulate building.

An activity is commercial in nature for purposes of the exception to FSIA immunity if it "is of a type that a private person would customarily engage in for profit." *MCI Telecomm. Corp.*, 82 F.3d at 663; *see also Walter Fuller Aircraft Sales, Inc. v. Republic of the Phil.*, 965 F.2d 1375, 1384 (5th Cir. 1992) ("courts typically hold that contracts for the procurement of...services are commercial rather than governmental

App. 113

in nature"); *Segni v. Commercial Office of Spain*, 835 F.2d 160, 164–65 (7th Cir. 1987) (employment contract under which employee would market country's wines is commercial); *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 581 (7th Cir. 1989) (contract for purchase of medical services is commercial); *Practical Concepts, Inc. v. Republic of Bol.*, 811 F.2d 1543, 1550 (D.C. Cir. 1987) (contract for developing rural areas is commercial).

In this case, Defendant's actions were commercial in nature for the purposes of the FSIA commercial activity exception. The Plaintiff, a commercial real estate professional, and the Defendant,[1] an entity seeking new office space, reached an agreement whereby Plaintiff, in exchange for financial gain, would assist Defendant in locating and securing suitable real estate. An arrangement of this nature is customarily engaged in by private persons for profit. Moreover, the arrangement is not the type that is peculiarly governmental in nature. *See*, *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, ___F.3d___, 2009 WL 2634575 (5th Cir. 2009) (commercial activities exception does not apply to a contract for personnel to train and provide support to military forces, since the nature of such activity is peculiarly governmental. However, the exception does apply to a contract for repair services for military aircraft components, as the nature of such transaction is commercial rather than uniquely governmental); *see also,Tucker v. Whitaker Travel, Ltd.*, 620 F.Supp. 578, 584 (E.D. Pa.

---

[1] Defendant acted through Assistant Consul Hugo Juarez-Carillo and Ambassador Enrique Hubbard-Arrea during the transactions that form the basis of this lawsuit.

App. 114

1985)(foreign government's "decisions whether and how to regulate an industry, [or] police the activities of its citizens... are peculiarly governmental and may not be subjected to scrutiny in the United States courts").

c. <u>Sufficient Nexus with the United States</u>

Finally, the commercial activity must have a jurisdictional nexus with the United States as outlined by 28 U.S.C. § 1605(a)(2). This prong is met when the suit is based upon: (1) a commercial activity carried on in the United States; (2) an act performed in the United States in connection with a commercial activity elsewhere; or (3) a direct effect in the United States of commercial activity elsewhere. 28 U.S.C. § 1605(a)(2); *De Sanchez*, 770 F.2d at 1391.

In this case, the commercial activities were carried on in Dallas, Texas. Therefore, the commercial activities were carried on in the United States, and the third and final prong to the commercial activity exception to immunity under FSIA is met.

Because the commercial activities exception to sovereign immunity under FSIA applies in this case, Defendants are not immune to this Court's subject matter jurisdiction. However, the Court must also have personal jurisdiction over this defendant.

## C. Personal Jurisdiction under FSIA

Under FSIA, a court has personal jurisdiction over a defendant when the court has subject matter jurisdiction over the case and the defendant was validly served with process in accordance with 28 U.S.C. § 1608. 28 U.S.C. § 1330(b); *Shapiro*, 930 F.2d at 1020.

App. 115

The Court has subject matter jurisdiction in this case as explained *supra*. Therefore, the Court must now determine whether the Defendant was validly served with process.

FSIA provides several avenues for serving a defendant. *See* 28 U.S.C. § 1608(a) & (b). The record of this case shows that Plaintiff has complied with at least one method for providing Defendant with valid service under § 1608(b).[2]

Section 1608(b)(2) provides that service may be made, "by delivery of a copy of the summons and complaint...in accordance with an applicable international convention on service of judicial documents." The applicable international convention here is the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Convention"). *See* Fed. R. Civ. P. 4(j)(1); 28 U.S.C. § 1608(b); The Hague Convention on Service Abroad of Judicial and

---

[2] Plaintiff asserts that service was made in accordance with 28 U.S.C. § 1608(a). *See, e.g., Plaintiff's Request to Clerk of Court for Entry of Default*, p. 2–3 (Doc. # 7) filed September 19, 2008. However, subsection (a) applies to service upon a "foreign state" defendant as the term is used in § 1608. Unlike the rest of FSIA, § 1608 differentiates between a "foreign state" defendant and a defendant that is an "agency or instrumentality of a foreign state." The former is to be served under 28 U.S.C. § 1608(a), and the latter is to be served under 28 U.S.C. § 1608(b). As explained in part II.A. of this opinion, the Mexican Consulate is an agency or instrumentality of a foreign state. Therefore, the propriety of service in this case is analyzed under 1608(b), which applies specifically to agencies and instrumentalities of a foreign state.

App. 116

Extrajudicial Documents, November 15, 1966, 20 UST 361, 658 U.N.T.S. 163. Both Mexico and the United States are parties to the Convention.[3] *Id.*

Pursuant to the Convention, Mexico provides that documents being served on it be delivered to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos, Ave. Juarez #20 (Plaza Juarez), Colonial Centro, 06010 Mexico D.F. *See* The Hague Conference on Private International Law Handbook on the Operation of the Hague Service Convention, http://www.hcch.net/index_en.php?act=authorities.details&aid=267 (last visited September 25, 2009) (image of website on file with the Court). Mexico's own website for the Secretaria de Relaciones Exteriores lists this same address at the bottom of its webpage. Mexico Ministry of Foreign Affairs, Secretaria de Relaciones Exteriores, http://www.sre.gob.mx/english/ (last visited September 25, 2009) (image of website on file with the Court).

Defendant was served on July 11, 2008 by delivery[4] of both an English and Spanish translation of the

---

[3] The United States is an original signatory to the Convention. Mexico acceded to the Convention effective June 1, 2000.

[4] A complete list of the documents delivered, which were submitted in duplicate with Spanish translations, follows: Summons in a Civil Action, Civil Case Cover Sheet, Plaintiff's Original Complaint, Certificate of Interested Persons, Civil Filing Notice, Duty to Serve Notice of Right to Consent, Consent to Proceed Before a U.S. Magistrate Judge, Electronic Transmission of Notice, Privacy Notice, Request for Service Abroad of Judicial of Extrajudicial Documents, Summary of the Document to be Served, Certificate of Service. *Affidavit of Rick Hamilton*, pp. 1–2. (Exhibit B to Doc. #7), filed September 19, 2008.

App. 117

summons and complaint to the address listed above. *Plaintiff's Request to Clerk of Court for Entry of Default*, p.2 (Doc. #7) filed September 19, 2008; *Affidavit of Rick Hamilton*, pp. 1–2. (Exhibit B to Doc. #7), filed September 19, 2008; 28 U.S.C. § 1608(b)(2) & (c)(2).

Therefore, Plaintiff properly served Defendant with valid service of process pursuant to FSIA, 28 U.S.C. § 1608(b)(2) and this Court has personal jurisdiction over the Defendant.

Having determined that FSIA governs this case, and that this Court has both subject matter jurisdiction and personal jurisdiction, we now turn to the substance of the default judgment motion.

## III.   Default Judgment

### A. Legal Standard for Entry of Default

Under FSIA, the Defendant has sixty days after being served to file an answer or other responsive pleading to the complaint. 28 U.S.C. § 1608(d). An entry of a default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). In order to obtain an entry of default, a plaintiff may apply to the Clerk of the Court or to the Court. *See* FED. R. CIV. P. 55(b).

In the instant case, Defendant was properly served on June 11, 2008. *See supra.* After Defendant failed to respond or otherwise appear within sixty days, Plaintiff applied to the Clerk of the Court for entry of default on September 19, 2008. *See Plaintiff's Request to Clerk of*

App. 118

*Court for Entry of Default* (Doc. #7) filed September 19, 2008. The Clerk of the Court correctly issued the Clerk's Entry of Default no earlier than September 20, 2008.[5] *Clerk's Entry of Default* (Doc. #10) filed October 20, 2008; FED. R. CIV. P. 55(a); 28 U.S.C. § 1608(d) .

### B. Entry of a Default Judgment under the FSIA

Because the Defendant is in default, the Court will next examine whether entry of a default judgment should follow. Before granting a default judgment in this case, this Court will look both to generally applicable default judgment law and to FSIA's statutory requirement for the entering of a default judgment under FSIA. We explore each in turn.

#### 1. *Default Judgments Generally in the Fifth Circuit*

Under the Federal Rules of Civil Procedure, a court may enter a judgment by default against a party who has failed to respond or appear. FED. R. CIV. P. 55(b)(2). A default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). However, the Fifth Circuit has held that "[d]efault judgments are a drastic

---

[5] The Default is actually dated September 20, 2008, but was not entered on the docket until October 21, 2008. From a review of the docket, and given the fact that September 20, 2008 was a Saturday when the Clerk of the Court typically does not make entries, it appears that the Default was actually signed on October 20 rather than September 20. However, either date falls outside of the Defendant's 60 day window to enter an appearance, and the entry of default was proper regardless of whether the Clerk signed it on September 20 or October 20.

App. 119

remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Based on that legal premise, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

A district court in the Fifth Circuit looks to the following six factors when considering whether to grant a default judgment: (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a default; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if the court would think it was obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998) (holding that a district court did not commit an abuse of discretion when denying a motion for default judgment when the factors on balance weighed against granting the motion).

As of the date of this Order, Defendant has offered no suggestion that its failure to appear is the product of "a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. In fact, the Defendant has seemingly ignored the complaint.[6] The Defendant has failed to

---

[6] In addition to proper service of the complaint, the record shows that Plaintiff attempted to resolve the subject of this litigation with Defendant and Defendant's Counsel both before suit was filed and again before default judgment was sought. *See Letters dated March 11, 2008 to March 26, 2008 between attorney Edward Jason*

App. 120

appear and defend the suit as required by law. Defendant has offered no suggestion that entry of a default judgment is unduly prejudicial or unwarranted or too harsh. Through its failure, the Defendant has, by default, admitted the Plaintiff's well-pleaded allegations of fact. *See, e.g. Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In light of these admissions, there are no remaining material issues of fact in this case. Further, a review of the record shows that the grounds for the default judgment are clearly established. In light of the facts and procedural history of this case, the Court would not feel obligated to set aside a default judgment on Defendant's motion.

Thus, the Court is of the opinion that the general procedural prerequisites to entering default judgment are satisfied. We now turn to an additional prerequisite to entry of a default judgment under FSIA.

### 2. *Default Judgment under FSIA*

A default judgment may be entered against a foreign state if, after having been served in accordance with FISA, the state fails to make a timely answer or

---

*Dennis, Ambassador Enrique Hubbard Arrea, and attorney Pablo Alvarado* (Exhibits C – G to Doc. #7) filed September 19, 2008; *Letter from Attorney Edward Jason Dennis to Attorney Pablo Alvarado dated August 18, 2008* (Exhibits H-1 – H-5 to Doc. # 7) filed September 19, 2008. Additionally, the evidence before the Court suggests that Defendant had actual knowledge of the pending suit no later than June 22, 2008, as evidenced by statements of Eduardo Rea, a spokesman for Defendant, in the Dallas Morning News. *See* Alejandro Martinez, *Firm Sues Mexican Consulate, Claim Says Government Reneged on Real Estate Deal, Used Third Party*, Dallas Morning News, June 22, 2008, at 5B.

App. 121

other responsive pleading to the complaint. *Jackson v. Peoples Republic of China*, 550 F. Supp. 869, 874 (N.D. Ala. 1982); 28 U.S.C. § 1608(e). However, FSIA imposes an additional requirement before a default judgment may be entered. Specifically, FSIA mandates that, "[n]o judgment by default shall be entered by a court of the United States...against...an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Accordingly, a simple failure to reply cannot be the sole basis of a default judgment against a foreign state or its instrument. *Singleton v. Guangzhou Ocean Shipping Co.*, No. 90-5063, 1992 WL 160441, at *1 (E.D. La. Jan. 21, 1992).

Plaintiff's Original Complaint asserts a number of claims.[7] *Plaintiff's Original Complaint* (Doc. #1) filed June 16, 2008. After reviewing the Plaintiff's well-pleaded complaint and the evidence before the Court, the Court finds that the Plaintiff has established, based in part on the various promises, representations, and agreements made between the parties over the course of their lengthy relationship, claims for breach of contract, fraud/fraudulent inducement, breach of fiduciary duty, quantum meriut, promissory estoppel, and attorneys' fees by evidence satisfactory to this Court. Additionally, the Court specifically finds that

---

[7] As stated above, Plaintiff asserts claims for: (1) breach of contract, (2) fraud/fraudulent inducement, (3) breach of fiduciary duty, (4) unjust enrichment, (5) quantum meruit, (6) promissory estoppel, (7) constructive trust, (8) attorneys' fees, and (9) exemplary damages.

App. 122

default judgment is proper under Article 15 of the Convention. Therefore, entry of default judgment is appropriate.

### C. Damages

Having determined that entry of a default judgment is proper in this case, the Court must determine the proper measure of damages.

The Federal Rules of Civil Procedure provide that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). In other words, the relief prayed for in a complaint cabins the relief available on default judgment. FSIA provides that if a defendant does not enjoy immunity under FSIA, as the defendant in this case does not, then the defendant is liable in the same manner and amount as a private individual. 28 U.S.C. § 1606.

In its Motion, the Plaintiff requests the Court enter judgment for actual damages in the amount of $3,094,225 and reasonable and necessary attorneys' fees in the amount of $31,464.83,[8] and costs of court. Motion at 7; *Affidavit of Edward Dennis*, (Doc. #12) filed January 6, 2009 at pp. 2–3.

Plaintiff breaks down his claim for actual damages as a request for $87,500 in value of services rendered by Plaintiff to Defendant, $6,725 in costs expended by Plaintiff on behalf of Defendant, and $3,000,000 in lost

---

[8] This amount includes attorney fees by Edward Jason Dennis and William Kendall, as well as reimbursement of costs. *See Testimony of Edward Dennis* at September 30, 2009 hearing.

App. 123

profits on the joint venture agreement. Motion at 7; *Affidavit of Blake Box*, (Doc. #11) filed January 6, 2009, at 5–6.

Plaintiff has submitted records and an affidavit in support of its suit. *See I.d.*; *Affidavit of Edward Dennis* (Doc. #12) filed January 6, 2009. Further, the Court held a hearing on the Motion on September 30, 2009 where the Plaintiff presented further evidence to support the requested damages. *See*, *Testimony of Edward Dennis* at September 30, 2009 hearing; *Testimony of Blake Box* at September 30, 2009 hearing; Exhibits 1– 8 filed in open court at September 30, 2009 hearing.

After considering the record, including the Plaintiff's well-pleaded complaint, the affidavits submitted, and the evidence put forth at the hearing, the Court finds that the requested relief is reasonable, appropriate, and supported by the evidence.

Specifically, the Court finds that Plaintiff's request for $87,500 in value of services rendered and $6,725 in costs expended on behalf of Defendant are reasonable and supported by the evidence. *See Affidavit of Blake Box* (Doc. # 11) filed January 6, 2009. Also, Plaintiff's request for $3,000,000 in compensation for his joint venture interest is reasonable and supported by the evidence. *See Testimony of Blake Box* at September 30, 2009 hearing; Exhibits 2-8 from September 30, 2009 Hearing*; Affidavit of Blake Box* (Doc. #11) filed January 6, 2009.

Additionally, while the award of attorney's fees is a matter of the court's discretion, the Court finds that Plaintiff should be awarded attorneys' fees and costs

App. 124

pursuant to Tex. Civ. Prac. & Rem. § 38.001 (permitting the recovery of reasonable attorneys' fees, in addition to the amount of a valid claim and costs, if the claim is for, among other things, rendered services, performed labor, furnished material, or an oral contract). Plaintiff's attorney submitted an affidavit attesting the reasonableness of the request and provided an itemized accounting of the work done on behalf of Plaintiff and the rate charged. *Affidavit of Edward Dennis* (Doc. #12) filed January 6, 2009; *Billing Statements*, Exhibit 1 presented at September 30, 2009 hearing; *Testimony of Attorney Edward Jason Dennis* at September 30, 2009 hearing. In addition to the itemized billing records of Mr. Dennis, Mr. Dennis testified to the reasonableness of the rate charged by attorney William Kendall and of the 54 hours of work that Mr. Kendall has spent on the case. The Court is of the opinion that Plaintiff's requests are reasonable, supported by the evidence, and should be, and are hereby, granted.

## III.    Conclusion

Based on the foregoing analysis of facts and legal principles, the Court concludes that the Plaintiff's Motion for Default Judgment against Dallas Mexican Consulate General should be **GRANTED.** Accordingly, the Court will enter a default judgment consistent with its findings herein.

**SO ORDERED** on this **30th** day of **September, 2009**.

/s/_____
    Reed O'Connor
    UNITED STATES DISTRICT JUDGE

App. 125

––––––––––––––

**APPENDIX I**
––––––––––––––

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**CIVIL ACTION NO. 3:08-CV-1010-O**

**[Filed September 30, 2009]**

––––––––––––––––––––––––––––––

| | |
|---|---|
| BLAKE BOX d/b/a BLAKE BOX, COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) ) ) |
| Defendant. | ) ) |

––––––––––––––––––––––––––––––  )

**FINAL JUDGMENT**

The Court entered its Memorandum Opinion and Order granting Plaintiffs' Motion for Default Judgment on September 30, 2009.

Consistent with the Court's Memorandum Opinion and Order, it is **ORDERED**, **ADJUDGED** and **DECREED** that Plaintiff Blake Box d/b/a Blake Box Company recover from Defendant Dallas Mexican Consulate General **$3,125,689.83**, which consists of $3,094,225 in actual damages plus $31,464.83 in

App. 126

attorneys' fees and costs. In addition, interest on the judgment shall accrue at the rate of 0.40% per annum.

All relief not specifically granted herein is denied. All pending motions not previously ruled on are denied. This is a Final Judgment and is appealable. Pursuant to FED. R. CIV. P. 54(b), the Court expressly determines that there is no just reason for delay and directs the Clerk of the Court to enter this Final Judgment.

The Clerk shall transmit a true copy of this judgment to the parties.

SO ORDERED this 30th day of September, 2009.

/s/_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

App. 127

_____

**APPENDIX J**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**No. 14-10744
CONSOLIDATED WITH 14-10953**

**[Filed September 24, 2015]**

_____

| | |
|---|---|
| BLAKE BOX, doing business as Blake Box Company, | ) |
| | ) |
| | ) |
| Plaintiff - Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| DALLAS MEXICAN CONSULATE GENERAL, | ) |
| | ) |
| | ) |
| Defendant - Appellee. | ) |

_____ )

Appeals from the United States District Court for the
Northern District of Texas, Dallas

**ON PETITION FOR REHEARING**

Before KING, SMITH, and ELROD, Circuit Judges.

App. 128

PER CURIAM:

    IT IS ORDERED that the petition for rehearing is
DENIED.

             ENTERED FOR THE COURT:
             /s/_____
             UNITED STATES CIRCUIT JUDGE

App. 129

---

**APPENDIX K**

---

**28 U.S.C.A. § 1605**

§ 1605. General exceptions to the jurisdictional immunity of a foreign state

**(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

　　**(1)** in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

　　**(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

　　**(3)** in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the

App. 130

foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

**(4)** in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

**(5)** not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--

> **(A)** any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

> **(B)** any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

**(6)** in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the

App. 131

United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

**(7)** Repealed. Pub.L. 110-181, Div. A, § 1083(b)(1)(A)(iii), Jan. 28, 2008, 122 Stat. 341

**(b)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That--

**(1)** notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

App. 132

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

(c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

(d) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the

App. 133

provisions of chapter 313 of title 46 and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

**(e), (f)** Repealed. Pub.L. 110-181, Div. A, Title X, § 1083(b)(1)(B), Jan. 28, 2008, 122 Stat. 341

**(g) Limitation on discovery.--**

**(1) In general.--(A)** Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for section 1605A, the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

**(B)** A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

**(2) Sunset.--(A)** Subject to subparagraph (B), no stay shall be granted or continued in effect under

App. 134

paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

**(B)** After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would--

    **(i)** create a serious threat of death or serious bodily injury to any person;

    **(ii)** adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

    **(iii)** obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

**(3) Evaluation of evidence.**--The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

**(4) Bar on motions to dismiss.**--A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

**(5) Construction.**--Nothing in this subsection shall prevent the United States from seeking protective

App. 135

orders or asserting privileges ordinarily available to
the United States.